BLYTHE G. KOCHSIEK
bkochsiek@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA  90071
Telephone:  +1 213 443 4355
FACSIMILE:  +1 213 443 4310

J. MICHAEL TAYLOR (*pro hac vice*)
jmtaylor@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:  +1 202 737 0500
FACSIMILE:  +1 202 626 3737

DANIEL SCHNEIDERMAN (*pro hac vice*)
dschneiderman@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:  +1 202 661 7847
FACSIMILE:  +1 202 626 3737

CHRISTOPHER C. BURRIS (*pro hac vice*)
cburris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Telephone:  +1 404 572 4600
Facsimile:   +1 404 572 5100

Attorneys for Defendant Anvil International, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ISLAND INDUSTRIES, INC., <br><br> Plaintiff-Relator, <br><br> v. <br><br> VANDEWATER INTERNATIONAL INC.; NEIL REUBENS; ANVIL INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER & GASKET COMPANY; and JOHN DOES Nos. 1–10, <br><br> Defendants. | Case No. 2:17-CV-04393-RGK-KS <br><br> **DEFENDANT ANVIL INTERNATIONAL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF-RELATOR'S COMPLAINT** <br><br> Date:        July 29, 2019 <br> Time:        9:00 A.M. <br> Courtroom: 850 (Los Angeles) <br> Judge:       The Hon. R. Gary Klausner |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 29, 2019, at 9:00 a.m., or as soon thereafter as may be heard in Courtroom 850 of the above-entitled court, at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, before the Honorable Judge Klausner, Defendant Anvil International, LLC ("Defendant Anvil") will move, and hereby does move, this Court to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Pursuant to Local Rule 7-3, Anvil certified that this motion is made following the conference of counsel that took place on May 13, 2019, and during which counsel for Plaintiff-Relator Island Industries, Inc. indicated that the requirements of Local

Rule 7-3 have been satisfied.[1]

This motion is based on this notice of motion and motion, the accompanying Memorandum of Points and Authorities in Support of Defendant Anvil's Motion to Dismiss, all pleadings and papers filed in this matter, and such other evidence and argument as may be presented to the Court at the hearing on this motion. The motion is brought under Federal Rule of Civil Procedure Rule 12(b)(6) on the grounds that the Complaint fails to allege facts that state a claim against Defendant Anvil under the False Claims Act. Specifically, the Complaint fails to meet the requirements under Rule 9(b) to plead fraud with particularity and fails to allege facts that make it plausible that Defendant Anvil knowingly made a false record or statement to avoid an obligation to the government. The motion also is brought under Federal Rule of Civil Procedure Rule 12(b)(1) on the grounds that the Complaint is barred because no cited information concerning Anvil is other than existing, publicly disclosed information, and Plaintiff-Relator has failed materially to add any substantiated analysis or information to such publicly disclosed information.

DATED:  June 25, 2019                KING & SPALDING LLP

By: /s/

J. Michael Taylor

Attorneys for Defendant
ANVIL INTERNATIONAL, LLC

---

[1] Counsel for Island Industries, Inc. also were sent an email on June 25, 2019, notifying them that this Motion to Dismiss was being filed on that day.

BLYTHE G. KOCHSIEK
bkochsiek@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA  90071
Telephone:  +1 213 443 4355
Facsimile:   +1 213 443 4310

J. MICHAEL TAYLOR (*pro hac vice*)
jmtaylor@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:  +1 202 737 0500
FACSIMILE:  +1 202 626 3737

DANIEL SCHNEIDERMAN (*pro hac vice*)
dschneiderman@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:  +1 202 661 7847
FACSIMILE:  +1 202 626 3737

CHRISTOPHER C. BURRIS (*pro hac vice*)
cburris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Telephone:  +1 404 572 4600
Facsimile:    +1 404 572 5100

Attorneys for Defendant Anvil International, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ISLAND INDUSTRIES, INC., <br><br> Plaintiff-Relator, <br><br> v. <br><br> VANDEWATER INTERNATIONAL INC.; NEIL REUBENS; ANVIL INTERNATIONAL, LLC; SMITH COOPER INTERNATIONAL; ALLIED RUBBER & GASKET COMPANY; and JOHN DOES Nos. 1–10, <br><br> Defendants. | Case No. 2:17-CV-04393-RGK-KS <br><br> **DEFENDANT ANVIL INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF-RELATOR'S COMPLAINT** <br><br> Date:      July 29, 2019 <br> Time:     9:00 A.M. <br> Courtroom: 850 (Los Angeles) <br> Judge:   The Hon. R. Gary Klausner |

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................... 1

II.    BACKGROUND AND SUMMARY OF RELATOR'S ALLEGATIONS.................................................................................... 1

III.   ARGUMENT............................................................................................ 4

      A.    The Amended Complaint Fails To State A Claim For Relief ...................................................................................... 4

           1.    Legal Standard .................................................................... 5

           2.    The Complaint Fails To Meet The Pleading Standards Of Rule 8 And Rule 9(b)..................................... 6

      B.    The Public Disclosure Bar Requires The Dismissal Of The Claims Against Anvil............................................................ 10

           1.    Legal Standard .................................................................. 10

           2.    All of the Allegations Relating to Anvil are Based

on Publicly Disclosed Information ..................................... 11

C.    Notice Of Pending Administrative Appeals Of Scope
Proceedings Before Court Of International Trade ....................... 14

D.    CONCLUSION ............................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................. 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................. 5

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ........................................................... 5

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ................................................... 15, 16

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ......................................................... 5, 6

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................... 5

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ................................................. 6, 9, 10

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ..................................................... 5, 6, 7

*United States ex rel. Campie v. Gilead Scis., Inc.*,
    862 F.3d 890 (9th Cir. 2017) ............................................................. 5

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic
    Co.*, No. 13-2983, 2014 WL 4375638 (E.D. Pa. Sept. 4, 2014) ....................... 14

*United States ex rel. Doe v. Staples, Inc.*,
    932 F. Supp. 2d 34 (D.D.C. 2013) ................................................... 14

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
    792 F.3d 1121 (9th Cir. 2015) (en banc) ........................................... 10

*United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL
    8929246 (C.D. Cal. May 19, 2016) ................................................. 13

*United States ex rel. Mateski v. Raytheon Co.*,
   816 F.3d 565 (11th Cir. 2016) ................................................................ 11

*United States ex rel. Ruhe v. Masimo Corp.*,
   929 F. Supp. 2d 1033 (C.D Cal. 2012) ................................................... 10

*United States v. Bourseau*,
   531 F.3d 1159 (9th Cir. 2008) .................................................................. 7

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956) .................................................................................. 15

**Statutes**

19 U.S.C. § 1431 ........................................................................................ 7

19 U.S.C. § 1431(c)(1) ........................................................................ 13, 14

19 U.S.C. § 1516a (a)(2)(B)(vi) & (b)(1)(B)(i) ..................................... 15

31 U.S.C. §3729(a)(1)(G) ......................................................................... 7

31 U.S.C. §3729(a)(7) ............................................................................... 7

31 U.S.C. § 3730(e)(4) (2010) ................................................................ 10

31 U.S.C. § 3730(e)(4)(A) ................................................................. 11, 14

31 U.S.C. § 3730(e)(4)(A)(i)-(iii) ..................................................... 12, 13

31 U.S.C. § 3730(e)(4)(a) & (B) ............................................................. 10

31 U.S.C. § 3730(e)(4)(B) ....................................................................... 11

False Claims Act ................................................................... 1, 4, 5, 7, 10

False Claims Act, 31 U.S.C. § 3729(a)(1)(C) ........................................ 2

False Claims Act, 31 U.S.C. § 3729(a)(1)(G) ..................................... 2, 7

**Other Authorities**

19 C.F.R. § 103.31 ............................................................................... 7, 14

19 C.F.R. § 103.31(e)(3) .................................................................... 13, 14

19 C.F.R. §§ 141.61 and 142.11 ................................................................... 7

Federal Rules of Civil Procedure 8 and 12(b)(6) ................................... 5, 6

Federal Rule of Civil Procedure 9(b) ......................................... 1, 5, 6, 9

Federal Rule of Civil Procedure 12(b)(6) .......................................... 1, 4

## I.   INTRODUCTION

Defendant Anvil International, LLC ("Anvil") moves to dismiss the Complaint filed by Island Industries, Inc. ("Island" or Relator) against Anvil.  In this *qui tam* action, Relator alleges that Anvil, as well as a number of other defendants, evaded antidumping duties on butt-weld pipe fittings manufactured in China ("Chinese Welded Outlets") and imported into the United States by submitting customs forms that failed to report the imported goods were subject to antidumping duties.  Specifically, Island claims Anvil imported Chinese Welded Outlets but falsely claimed on the customs forms that other goods – which were not subject to an antidumping duty – actually were being imported.  The complaint must be dismissed pursuant to Rule 12(b)(6), because it fails to state a plausible claim for relief under either the standards of that rule or the more rigorous pleading standards of Rule 9(b).

The only stated bases for the claims against Anvil in Island's Complaint are contained in five sparse paragraphs.  On review, those paragraphs lack the essential allegation that must be included for liability under the False Claims Act ("FCA") – a *non-conclusory* factual allegation that Anvil knowingly made a false record or statement to avoid an obligation to the government.  Furthermore, the few details contained in those conclusory five paragraphs all come from records and information that are publicly available, and there is no information in the Complaint that reflects that the Relator is an original source or has contributed any material information or substantiated analysis regarding Anvil beyond what already is in the public domain.

## II.   BACKGROUND AND SUMMARY OF RELATOR'S ALLEGATIONS

Relator is "an American manufacturer of fire protection and steel piping system supplies" who manufactures, among other things, "carbon steel butt-weld pipe fittings."  Compl. ¶ 1

Anvil is a domestic manufacturer and distributor of butt-weld pipe fittings.

---

The remaining defendants allegedly are importers and/or marketers of butt-weld pipe fittings, and people and/or entities who may have assisted defendants.  Compl. ¶¶ 7, 9-12

Relator filed its complaint on June 13, 2017, on behalf of the United States alleging violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G), and conspiracy to violate the False Claims Act, 31 U.S.C. § 3729(a)(1)(C).  On December 3, 2018, the Government filed notice that it declined to intervene but would continue to investigate the Complaint's allegations with respect to the other defendants.  *See* D.E. 28.  Notably, however, the Government stated that it had completed its investigation with respect to Anvil and fully declined intervention. *See id.*  The Complaint was unsealed on January 30, 2019.  D.E. 34.

In the Complaint, Relator alleges generally that the defendants have used several methods to misclassify or hide their importation of Chinese Welded Outlets in order to avoid the antidumping duties that apply to that product.  These methods include falsely describing Chinese Welded Outlets as steel products; falsely claiming that Chinese Welded Outlets originated in other countries; and comingling Chinese Welded Outlets with shipments of other products not subject to antidumping duties. *See* Compl. ¶¶ 1–4.  Relator then alleges that all the defendants made false records or statements by falsely marking on Customs and Border Protection ("CBP") Form 7501 (*i.e.*, the Entry Summary) that their imported products were not subject to antidumping duties.  Compl. ¶¶ 60-61

The bulk of the Complaint describes the alleged wrongdoing of the other defendants.  The Complaint only contains five paragraphs that allege purported wrongdoing by Anvil.  Compl. ¶¶ 41-45.  Relator alleges that Anvil markets several lines of welded outlets, two sourced in the United States and "the remainder" sourced from abroad.  Compl. ¶ 41.  Relator then alleges "on information and belief" that the bulk of the "internationally sourced products are manufactured in China," and goes

on to assert that since 2012 "Anvil has imported more than $5 million of Chinese Welded Outlets every year."  Compl. ¶¶ 41-42.

The Complaint acknowledges that the import-related documents available to Relator indicate Anvil has imported *no* Chinese Welded Outlets.  Compl. ¶ 43. Rather, the Complaint alleges that those records show that "one of ANVIL's subsidiaries has been importing 'merchant coupling blanks,' 'pipe fittings,' and 'pipe nipples,'" which are "potentially beyond the scope of the antidumping duty order on Chinese Welded Outlets."  The crux of the Complaint's allegations is that these descriptions are false and that the goods being imported are really Chinese Welded Outlets.   In making this allegation, the Complaint alleges – on mere information and belief – that Anvil "avoids the antidumping duties on its Chinese Welded Outlets by, among other things, falsely describing its import products." Compl. ¶ 43.

The only "support" cited in the Complaint for the claim that an Anvil subsidiary has imported a Chinese Welded Outlet subject to antidumping duties, and that the import documentation is false, is a series of unconnected assertions:

- On information and belief, that Anvil imports coupling blanks from an unspecified Chinese factory in which Anvil has an ownership interest (Compl. ¶ 44);

- Beijing Bell, one of the manufacturers that the Complaint alleges to have sold Chinese Welded Outlets to Anvil, does not market "blank" or "semi-finished" merchant couplings (Compl. ¶¶ 42, 44);

- "Anvil has the technical ability to finish an unfinished product, which would make it easy for ANVIL to import unfinished Chinese Welded Outlets (which are subject to antidumping duties) as merchant coupling blanks or as miscellaneous pipe fittings" (Compl. ¶ 44); and

- The "volume of 'merchant coupling blanks' at issue" is consistent "with

the U.S. market share in Welded Outlets" that Anvil allegedly has taken from Relator since 2012 (Compl. ¶ 44).

The Complaint's only allegation concerning the creation of a false record or statement submitted to the CBP is notable in that it simply lumped Anvil in with the other defendants, asserting that:

> "Defendants knew that the Chinese Welded Outlets were subject to an antidumping duty order.  Nonetheless, Defendants falsely represented (or caused a broker acting on their behalf falsely to represent) that the goods qualified for Entry Type 01, meaning they were not subject to an antidumping duty.  By falsely marking the entry type, Defendants made or caused to be made a false record or statement material to their obligation to pay money to the United States." Compl. ¶ 61.

Read in the best light available to the Relator, the Complaint *speculates* that because Anvil sells welded outlets in the U.S. market, and an Anvil subsidiary has imported different products from China, then it must follow that Anvil actually must have been importing unfinished Chinese Welded Outlets and then falsely describing them as other products not subject to antidumping duties in the paperwork submitted to the CBP.  The Complaint, however, identifies not a shred of evidence to support its speculation concerning Anvil.

## III.  ARGUMENT

### A.  The Amended Complaint Fails To State A Claim For Relief

Rule 12(b)(6) requires dismissal of Relator's Complaint against Anvil, because the Complaint fails to allege with plausibility, let alone particularity, any facts showing that Anvil knowingly made a false record or statement to the CBP for the purpose of avoiding antidumping duties, or conspiring to violate the FCA.

### 1.   **Legal Standard**

A claim under the False Claims Act must both be plausible pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) and pled with particularity under Rule 9(b). *United States ex rel. Campie v. Gilead Scis., Inc*., 862 F.3d 890, 898 (9th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).   A claim is facially plausible when its factual allegations are sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*   Although the Court is required to treat the complaint's well-pled factual allegations as true, it is equally required to disregard inferences unsupported by facts set out in the complaint and legal conclusions couched as factual allegations.  *Id.*; *see United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898 (9th Cir. 2017).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

In addition, allegations of fraud such as those in an FCA case must be pled with particularity. Fed. R. Civ. P. 9(b).  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) ("The heightened pleading standard of Rule 9(b) governs FCA claims."). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019

(9th Cir. 2001)).  To satisfy this additional hurdle, the complaint must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998-999.

The Ninth Circuit held this means that "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as what is 'false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (citing *Cafasso*, 637 F.3d at 1055).  The allegations "must be specific enough to give defendant notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend the charge and not just deny that they have done anything wrong." *Id*. (quotation marks omitted).

In addition, Rule 9(b) requires that "a fraud suit against differently situated defendants must identify the role of each defendant in the alleged fraudulent scheme." *Silingo*, 904 F.3d at 677 (quotation marks omitted).  A Relator's Complaint cannot "lump" dissimilar defendants together but must differentiate the allegations as to each individual defendant. *Id*.

### 2. <u>The Complaint Fails To Meet The Pleading Standards Of Rule 8 And Rule 9(b).</u>

Far from alleging the who, what, when, where, and how concerning the allegation that Anvil submitted false records or statements to the Government, Relator's Complaint fails to set out with particularity any facts showing that Anvil made, or caused to be made, a single false record or statement to avoid antidumping duties.

To establish a reverse false claim, as alleged in the Complaint, a relator must prove:  (1) a false record or statement; (2) the defendant's knowledge of the falsity; (3) that the defendant made, used or causes to be made or used a false statement or

record; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) the materiality of the misrepresentation. *See* 31 U.S.C. § 3729(a)(1)(G); *see also United States v. Bourseau*, 531 F.3d 1159, 1164-70 (9th Cir. 2008).

"An actual false claim is the *sine qua non* of an FCA violation." *Cafasso*, 637 F.3d at 1055 (quotation marks omitted and alteration adopted). The Ninth Circuit has held that Section 3729(a)(1)(G),[2] the "reverse false claims" provision, "does not eliminate or supplant" this essential element of an FCA claim. *Id*. at 1056. Instead, it "expands the meaning of a false claim to include statements to avoid paying a debt or returning property to the United States." *Id.*

Here, the Complaint fails to allege facts showing that Anvil imports any product subject to antidumping duties, let alone any facts showing that Anvil made, or caused to be made, a false record or statement to the CBP to avoid antidumping duties. As an initial matter, it should be observed that Relator's references to Anvil's imports appear to be based on publicly available ship manifests (compiled from bills of lading) prepared by the shipper. *See* 19 U.S.C. § 1431; 19 C.F.R. § 103.31. Public ship manifests are distinct and separate from confidential entry summaries, prepared by the importer and submitted to CBP on CF-7501, which are used to determine the amount duties owed (and on which false statements may give rise to an FCA claim). *See* 19 C.F.R. §§ 141.61 and 142.11. Relator acknowledges that the ship manifests describe Anvil's imports as non-subject "merchant coupling blanks," "pipe fittings," and "pipe nipples" rather than welded outlets, but Relator claims without evidence that those descriptions are false. More importantly, Relator presents no evidence whatsoever that Anvil itself made a false statement to CBP on its CF-7501 for any

---

[2] Although the language of the reverse false claims act violation changed with the amendments to the FCA in 2010, its operative language for purposes of this case remains unchanged and the district courts continue to rely on the pre-2010 Ninth Circuit precedent. The old citation was 31 U.S.C. §3729(a)(7), the new citation is 31 U.S.C. §3729(a)(1)(G).

entry.

The Complaint alleges no facts showing that Anvil sells welded outlets manufactured in China that are subject to antidumping duties.  Rather, the Complaint merely alleges that Anvil "markets" welded outlets and alleges at least some of Anvil's welded outlets are sourced from abroad.  Compl. ¶ 41.  Relator then claims on information and belief that such allegedly-foreign-origin outlets are manufactured in China.  Although Relator attached Exhibit G, which reflects that Anvil markets welded outlets, nothing in that Exhibit supports that Anvil's welded outlets are sourced from China (which is a pre-requisite for the application of antidumping duties on butt-weld fittings).  Instead, the Exhibit merely shows that one product brand sold by Anvil (composed of many different product categories) includes some imported products.  This does not support that all of the product categories in that brand are imported, much less that all of the product categories in that brand are imported from China.

The Complaint alleges without support that "since 2012, Anvil has imported more than $5 million of Chinese Welded Outlets every year."  Compl. ¶ 42.  Instead, in a contorted effort to generate a claim, the Complaint concedes, as it must, that "the import record suggests that Anvil has not imported any Chinese Welded Outlets;" the Complaint then goes on simply to speculate that although an Anvil subsidiary has been importing different products not subject to antidumping duties – "merchant coupling blanks," "pipe fittings," and "pipe nipples," – those products actually must be unfinished Chinese Welded Outlets.  Compl. ¶ 43.  Again, the Complaint contains no particularized facts to support the claim that the products being imported are not as described in the cited "import records," and tellingly the Complaint makes no allegation that Anvil is not actually importing merchant coupling blanks, pipe fittings, and pipe nipples.  In actuality, the heart of Relator's allegation turns on a reference to *unspecified* records reflecting that an *unidentified*

Anvil subsidiary is importing *different* products that are not subject to antidumping duties, and that Relator *believes* the product actually being imported must be an unfinished Chinese Welded Outlet.  Compl. ¶ 43.

Relator asserts that "Anvil has the technical ability to finish an unfinished product, which would make it easy for ANVIL to import unfinished Chinese Welded Outlets (which are subject to antidumping duties) as merchant coupling blanks or as miscellaneous pipe fittings."  Compl. ¶ 44.  The Complaint, instead of citing factual allegations of fraud with particularity merely piles inference on inference, asserting that the "volume of 'merchant coupling blanks' at issue" is consistent "with the U.S. market share in Welded Outlets" that Anvil allegedly has taken from Relator since 2012.  Compl. ¶ 44.

Nowhere does the Complaint allege any particularized facts demonstrating that Anvil actually has imported any unfinished Chinese Welded Outlets, let alone facts showing that Anvil has submitted false records to CBP concerning products it imports.  Compl. ¶¶ 41-45, 60-61.  There is literally no allegation in the Complaint reflecting the "who, what, when, where, and how of the misconduct charged." *Silingo*, 904 F.3d at 677.

The Complaint does not identify a single individual involved in the alleged scheme to avoid antidumping duties.  There is no description of an actual scheme to avoid antidumping duties; there is only Relator's speculation about how Anvil *might* have avoided such duties.  Most significantly, the Complaint does not identify a single instance of a falsified CBP Form 7501 being completed by Anvil.   Instead, there is simply a general allegation that all of the defendants falsely represented on CBP Form 7501 that Chinese Welded Outlets purportedly imported by Anvil were not subject to antidumping duties.  Compl. ¶¶ 60-61.[3]

---

[3] Although there are more specific allegations concerning other of the defendants, Rule 9(b) requires that "a fraud suit against differently situated defendants must identify the role of each defendant in the alleged fraudulent scheme." *Silingo*, 904 F.3d at 677.  *Compare, e.g.*, Compl. ¶¶ 27-40 (allegations regarding Defendant Vandewater International

Not only does the Complaint contain no facts sufficient to state a violation of the FCA with regard to Anvil, it also contains no facts sufficient to allege a conspiracy to violate the FCA.  In order to allege a conspiracy under the FCA, the plaintiff must allege facts sufficient to identify an agreement between the parties to violate the FCA, and that Anvil committed an act in furtherance of that conspiracy. *Silingo*, 904 F.3d at 678; *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1037-38 (C.D Cal. 2012).  As discussed more fully *supra* at pages 8-10, the allegations concerning Anvil contain no specific factual allegations supporting that Anvil actually has imported any unfinished Chinese Welded Outlets or that Anvil has submitted false records to CBP concerning products it imports, let alone any factual allegations that Anvil had an agreement with anyone to do so.  Compl. ¶¶ 41-45, 60-61, 72-73.

**B.     The Public Disclosure Bar Requires The Dismissal Of The Claims Against Anvil.**

### 1.  Legal Standard.

Under the FCA, "[t]he court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" unless the Relator is an original source, meaning it has "knowledge that is independent of and materially adds to the publicly disclosed allegations." 31 U.S.C. § 3730(e)(4)(a) & (B).[4]  *See also United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1123 (9th Cir. 2015) (en banc).  This public disclosure bar is "intended to encourage suits by whistle-blowers with genuinely valuable information, while discouraging litigation by plaintiffs who have no significant information of their own

---

Inc.) with Compl. ¶¶ 41-44 (allegations regarding Anvil).

[4] Since the 2010 amendments to the FCA, the public disclosure bar is no longer a jurisdictional bar, but nonetheless mandates dismissal "unless opposed by the Government."  Compare 31 U.S.C. § 3730(e)(4) (2010), with 31 U.S.C. § 3730(e)(4) (1986).

to contribute." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (11th Cir. 2016).

"Public disclosure" occurs if the relator's action is based on substantially the same allegations as those publicly disclosed in (1) a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (2) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (3) from the news media. 31 U.S.C. § 3730(e)(4)(A).

An "original source" is statutorily defined as an individual who either "prior to a public disclosure [as defined by the statute] voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based" or "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

In the present case there is no evidence reflecting that Relator is an original source who has materially added any substantiated allegation or information to the publicly available information about Anvil.

## 2. All of the Allegations Relating to Anvil are Based on Publicly Disclosed Information.

As discussed *supra*, the Complaint acknowledges that Anvil purports to import certain products from China, which are not subject to antidumping duties. The Complaint then speculates that the actual products being imported are Chinese Welded Outlets and that Anvil has falsified the CBP Entry Summaries describing those products to avoid antidumping duties.

In support of its speculation, the Complaint alleges that:

(1) Anvil markets "several lines of Welded Outlets:  two are sourced in the United States and the remainder are sourced from abroad."  Compl. ¶ 41.

(2) "The records reflect that one of ANVIL's subsidiaries has been importing significant volumes of 'merchant coupling blanks,' 'pipe fittings,' and 'pipe nipples.'"  Compl. ¶ 42.

(3) Beijing Bell, one of the manufacturers that the Complaint alleges sells Chinese Welded Outlets to Anvil, does not market "blank" or "semi-finished" merchant couplings; Compl. ¶¶ 42, 44.

(4) "Anvil has the technical ability to finish an unfinished product, which would make it easy for ANVIL to import unfinished Chinese Welded Outlets (which are subject to antidumping duties) as merchant coupling blanks or as miscellaneous pipe fittings"; Compl. ¶ 44, and

(5) The "volume of 'merchant coupling blanks' at issue" is consistent "with the U.S. market share in Welded Outlets" that Anvil allegedly has taken from Relator since 2012.  Compl. ¶ 44.

The only sources identified in the Complaint and its attachments in support of allegations (1), (3) and (4) are marketing materials from both Anvil and Beijing Bell, a Chinese manufacturer.[5]  Compl., Exhibits C and G. The information in allegations (2) and (5) appears to be publicly available ship manifest data released by CPB.  All of that information qualifies as a public disclosure under Section 3730(e)(4)(A)(i)-(iii).

Anvil's marketing materials, attached to the Complaint as Exhibit G, are the apparent basis for the allegation that Anvil sources any welded outlets from China. (It is not clear how Relator reaches that conclusion based on those materials, but that is the only apparent basis for its claim.)  Compl. ¶ 41.  Anvil's marketing materials

---

[5] Paragraph 25 of the Complaint identifies a number of sources for Relator's allegations, including a review of "public and private import data," "information and documents from the Defendants' current and former agents, employees, and consultants," "a confidential source" and "a variety of market players."  Although the allegations against some of the other defendants do include information from potentially private sources such as former employees, or a confidential source, none of the allegations concerning Anvil indicate that they are from anything other than marketing materials or ship manifest data.  Compl. ¶¶ 41-45.

also are presumably again the source for the allegation that Anvil could finish an unfinished product, as it does domestically manufacture butt-weld outlets.    Compl. ¶ 41 & Exhibit G.

Similarly, the only apparent source of Relator's claim that Beijing Bell does not market "blank" or "semi-finished" merchant couplings are its marketing materials, attached as Exhibit C to the Complaint.  Compl. ¶¶ 23, 44 & Exhibit C.

Finally, the fact that Anvil and/or its affiliates receive imported blanks, pipe fittings, and pipe nipples (plus some general volume information about those shipments) is available from the ship manifest data.  Importantly, Relator does not allege that it is relying on actual entry documents filed by Anvil as the importer of record with U.S. Customs, which are confidential records only available to CBP and to the actual importer and its agents.  Instead, the "import records" cited by Relator appear to be publicly available ship manifest data released by CBP that provide only a general description of the goods, along with certain other data, such as the quantity and consignee.  19 U.S.C. § 1431(c)(1); 19 C.F.R. § 103.31(e)(3).

Both marketing materials and ship manifest data are publicly available information as defined by Section 3730(e)(4)(i)-(iii).

Courts have broadly considered "news media" to include "[i]nformation publicly available on the Internet." *See United States ex rel. Hong v. Newport Sensors, Inc.*, SACV 13-1164-JLS (JPRx), 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016).  In *Hong*, the court accepted faculty profiles on two university websites as "news media."  *Id*.  The Anvil marketing materials and the Beijing Bell marketing materials are both available on the Internet.  *See* Compl. at Exh. C, including materials from www.bbp.cn and Exh. G, including materials from the www.anvilintl.com.

Similarly, ship manifest data are made available by CBP in responses to

requests for public disclosure, which also are aggregated and available through multiple on-line services.  That publicly available information includes the type and volume of product being imported. 19 U.S.C. § 1431(c)(1); 19 C.F.R. § 103.31(e)(3) In *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-2983, 2014 WL 4375638, at *10 (E.D. Pa. Sept. 4, 2014), the court held that shipping manifest information made available by CBP pursuant to 19 C.F.R. § 103.31 is publicly disclosed as either "news media" or "federal reports" within the meaning of the public disclosure bar. *Id.* at *10.  The court also emphasized that CBP made the information available for purchase to the press and public itself. *See id.*  Similarly, another case found that reports published by PIERS, a company that compiles manifest information submitted to customs, qualified as "news media" for purposes of the public disclosure bar. *United States ex rel. Doe v. Staples, Inc.*, 932 F. Supp. 2d 34, 40 (D.D.C. 2013).  Relator has added no new information or substantiated analysis in its allegations against Anvil to the publicly available information, demonstrating that it does not have knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions.

Because the only information that forms the basis for the allegations against Anvil in the Complaint are unsubstantiated speculation built on publicly disclosed information, and because Relator is not an original source and has added no independent information to his allegations against Anvil (beyond conjecture and speculation), pursuant to Section 3730(e)(4)(A), the claims against Anvil must be dismissed.

**C.   <u>Notice Of Pending Administrative Appeals Of Scope Proceedings Before Court Of International Trade</u>**

If the Court finds that dismissal is not warranted, it should stay the proceedings under the doctrine of primary jurisdiction in order to allow the Court of

International Trade ("CIT") to review three administrative appeals from the U.S. Department of Commerce's scope rulings, which addressed whether butt-weld fittings imported by Vandewater, SIGMA, and Smith-Cooper International are within the scope of the antidumping duty order on certain butt-weld pipe fittings from China.  *See* Vandewater International Inc. v. United States (Ct. No. 18-00199); SIGMA Corp. v. United States (Court No. 19-00003); and Smith-Cooper International v. United States (Ct. No. 19-00011).  Anvil and Island Industries (as domestic producers) are parties in each of these three cases currently being litigated before the CIT.  The Court of International Trade is an Article III Court with specialized jurisdiction to determine, among other things, whether the Commerce Department's determinations concerning antidumping duty scope rulings are unsupported by substantial record evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a (a)(2)(B)(vi) & (b)(1)(B)(i).

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956).  It "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."  *Id.* at 64.

The Ninth Circuit has held that the doctrine of primary jurisdiction may be invoked where "a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Although there is no "fixed formula" for applying the doctrine of primary jurisdiction, the Ninth Circuit has recognized that four factors may support using the doctrine: "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* (quotation marks omitted and alteration adopted).

Whether butt-weld outlets that are the subject of Island's false claims act case even are subject to antidumping duties is squarely within the jurisdiction of the CIT and the Commerce Department, and is a question that needs to be settled before a false claims act case based on that assumption moves forward.

**D. CONCLUSION**

For the foregoing reasons, the Court should grant Anvil's motion and dismiss Relator's claims against Anvil.

DATED:  June 25, 2019                    KING & SPALDING LLP


By: :  _/s/_____
       J. Michael Taylor

       Attorneys for Defendant
       Anvil International, LLC