1   RYAN M. SALZMAN (SBN 299923)
    Ryan.Salzman@faegredrinker.com
2   FAEGRE DRINKER BIDDLE & REATH LLP
    1800 Century Park East, Suite 1500
3   Los Angeles, California 90067-1517
    Telephone:  310-203-4000
4   Facsimile:  310-229-1285

5

6   THOMAS KELLY, JR. (*pro hac vice*)
    Thomas. Kelly@faegredrinker.com
    JOSEPH RILLOTTA (*pro hac vice*)
7   Joseph.Rillotta@faegredrinker.com
    JOIE HAND (*pro hac vice*)
8   Joie.Hand@faegredrinker.com
    FAEGRE DRINKER BIDDLE & REATH LLP
9   1500 K Street NW, Ste. 1100
    Washington, DC 20005
10  Telephone:  202-230-5360
    Facsimile:  202-842-8465

11
    Attorneys for Defendants
12  *VANDEWATER INTERNATIONAL, INC. AND NEIL
    RUEBENS*

13

14          **UNITED STATES DISTRICT COURT**

15          **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  UNITED STATES OF AMERICA ex. rel. ISLAND INDUSTRIES, INC., | Case No. 2:17-cv-04393-RGK-KS |
| 18            Plaintiff, | **VANDEWATER INTERNATIONAL, INC. AND NEIL RUEBENS' NOTICE OF** |
| 19      v. | **MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND** |
| 20  VANDEWATER INTERNATIONAL, INC., et al., | **AUTHORITIES IN SUPPORT OF** |
| 21 | **MOTION FOR SUMMARY JUDGMENT** |
| 22            Defendant(s). | Judge:        Hon. R. Gary Klausner |
| 23 | Hearing Date:  May 18, 2020 Courtroom:    850 Time:          9:00 a.m. |
| 24 | |
| 25 | [All Documents Filed Concurrently Herewith are the Notice of Motion; |
| 26 | Motion for Summary Judgment; Separate Statement of Undisputed |
| 27 | Facts and Law; Declarations of Neil Ruebens, Walter Sperko and Ryan |
| 28 | Salzman; and [Proposed] Order] |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;        CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 18, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 850 of the above-entitled Court, Defendants Vandewater International, Inc. and Neil Ruebens (the "Vandewater Defendants") will and hereby do respectfully move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 in favor of the Vandewater Defendants and against Plaintiff United States of America ex. rel. Island Industries, Inc. ("Plaintiff"), as to all causes of action alleged against the Vandewater Defendants in Plaintiff's First Amended Complaint ("Complaint" or "FAC") and the Complaint as a whole.  More specifically, the Vandewater Defendants move for summary judgment as to Plaintiff's Complaint and the sole remaining cause of action alleged therein for violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G) (the "FCA"), as there is no proof, and thus no triable issue, that the Vandewater Defendants (1) made a false statement or engaged in a fraudulent course of conduct, (2) with requisite scienter, (3) that was material, and (4) deprived the government of money owed, in violation of the FCA.

This Motion is based upon this Notice, the concurrently filed Memorandum of Points and Authorities, Proposed Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Neil Ruebens ("Ruebens Decl."), Ryan M. Salzman ("Salzman Decl."), and Walter Sperko ("Sperko Decl.") and exhibits thereto, [Proposed] Order, and the pleadings and papers on file in this action, and on such other and further matters as may be presented at or before the hearing on this matter.

///

///

///

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

- 2 -

CASE NO. 2:17-cv-04393-RGK-KS

1    This motion is made following the conference of counsel pursuant to Local

2  Rule 7-3, which took place on April 1, 2020.

3

4  Dated:  April 8, 2020                    FAEGRE DRINKER BIDDLE & REATH LLP

5

6                                           By: */s/ Ryan M. Salzman*
                                               Ryan Salzman
7                                              Thomas Kelly (*pro hac vice*)
                                               Joseph Rillotta (*pro hac vice*)
8                                              Joie Hand (*pro hac vice*)

9                                           Attorneys for Defendants VANDEWATER
                                            INTERNATIONAL, INC. and NEIL
10                                          RUEBENS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;        - 3 -        CASE NO. 2:17-CV-04393-RGK-KS
MEMORANDUM ISO MOTION

# **Table of Contents**

I.     INTRODUCTION ................................................................ 1

II.    BACKGROUND ................................................................. 1

    A.    Vandewater's Importation of Welded Outlets ..................... 1

    B.    Plaintiff's Allegations ....................................................... 2

III.   LEGAL STANDARD .......................................................... 4

IV.   ARGUMENT .................................................................... 5

    A.    There is No False Statement upon which a Reverse False Claims Act Claim can be Based. ............................................ 5

    B.    Plaintiff Cannot Prove Scienter. ......................................... 8

        1.    There Is No Evidence that Anyone, Prior to Plaintiff's Lawsuit, Ever Propounded the View that Chinese Welded Outlets Were Subject to Antidumping Duties. ......................... 9

        2.    Plaintiff Does Not—and Cannot—Offer Evidence from which a Reasonable Fact-Finder Could Conclude that the Vandewater Defendants Acted in Deliberate Ignorance or Reckless Disregard as to the Truth of their Statements ........... 11

        3.    Vandewater's Retention of an Import Broker, its Full and Transparent Interactions with its Broker, and its Outreach to CBP All Underscore the Vandewater Defendants' Evident Good Faith .................................................................. 13

    C.    There is No Viable Claim for Damages, Because No Duties may be Imposed Predating the Vandewater Scope Ruling ......................... 15

    D.    All Remaining Allegations by Plaintiff Have Been Disproved and are Immaterial. ........................................... 17

        1.    Vandewater Did Not Misuse Tariff Codes for "Parts and Accessories for Motor Vehicles." ............................. 18

        2.    Vandewater Did Not Falsely Claim That Its Imports Were From South Korea ........................................... 18

        3.    Vandewater Has Never Imported Blank Welded Outlets. ....... 19

V.    CONCLUSION ............................................................... 20

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
WASHINGTON, D.C. (1500 K Street)

MEMORANDUM IN SUPPORT OF VANDEWATER
AND NEIL RUEBENS' MOTION FOR SUMMARY
JUDGMENT

- i -

CASE NO. 2:17-CV-04393-RGK-KS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allison Engine Co., Inc. v. U.S. ex rel. Sanders,*
 553 U.S. 662 (2008) ........................................................................ 5

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) .................................................................. 4, 17

*ArcelorMittal Stainless Belgium N.V. v. United States,*
 694 F.3d 82 (Fed. Cir. 2012) ......................................................... 6

*Atkore Steel Components, Inc. v. United States,*
 313 F. Supp. 3d 1374 (Ct. Int'l Trade, May 15, 2018)(Ct. Int'l
 Trade May 15, 2018) ...................................................................... 6

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) .................................................................. 4, 19

*Devereaux v. Abbey,*
 263 F.3d 1070 (9th Cir. 2001) ..................................................... 19

*Eckstrom Indus., Inc. v. United States,*
 254 F.3d 1068 (Fed. Cir. 2001) ..................................................... 7

*Gonzalez v. Ford Motor Co.,*
 No. LA CV 1900652, 2019 WL 6122554 (C.D. Cal. Oct. 23, 2019) ................. 19

*Gonzalez v. Planned Parenthood of Los Angeles,*
 759 F.3d 1112 (9th Cir. 2014) ..................................................... 12

*Polites v. United States,*
 755 F.Supp.2d 1352 (Ct. Int'l Trade 2011) .................................... 7

*Safeco Ins. Co. of Am. v. Burr,*
 551 U.S. 47 (2007) ........................................................................ 12

*U.S. ex rel. Barrick v. Parker-Miglioirini Int'l, LLC,*
 878 F.3d 1224 (10th Cir. 2017) ................................................ 6, 17

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - ii -          CASE NO. 2:17-CV-04393-RGK-KS
MEMORANDUM ISO MOTION

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................. 5, 17

*U.S. ex rel. Heffner v. Hackensack Univ. Med. Ctr.*,
   495 F.3d 103 (3d Cir. 2007) ......................................................................... 14

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
   130 F. Supp. 3d 866 (S.D.N.Y. 2015) .......................................................... 14

*U.S. ex rel. Lee v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ......................................................................... 5

*U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan for Employees of
   Hawaii Pac. Health*,
   343 F. App'x 279 (9th Cir. 2009) ................................................................. 12

*U.S. ex rel. McGrath v. Microsemi Corp.*,
   690 F. App'x 551 (9th Cir. 2017) ................................................................. 12

*U.S. ex rel. Oliver v. Parsons Co.*,
   195 F.3d 457 (9th Cir. 1999) ....................................................................... 12

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
   843 F.3d 1033 (5th Cir. 2016) ....................................................................... 5

*U.S. ex rel. Williams v. Renal Care Grp., Inc.*,
   696 F.3d 518 (6th Cir. 2012) ............................................................. 8, 12, 14

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ......................................................................... 5

*U.S. ex rel. Yannacopoulos v. Gen. Dynamics*,
   652 F.3d 818 (7th Cir. 2011) ..................................................................... 5, 8

*United States v. Southland Mgmt. Corp.*,
   326 F.3d 669 (5th Cir. 2003) ....................................................................... 14

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016 ) ................................................................. 8, 11

*United Steel & Fasteners, Inc. v. United States*,
   947 F.3d 794 (Fed. Cir. 2020) ................................................................ 16, 17

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - iii -          CASE NO. 2:17-CV-04393-RGK-KS
MEMORANDUM ISO MOTION

## STATUTES, RULES & REGULATIONS

19 C.F.R. § 159.1 ................................................................................................. 15

19 C.F.R. § 159.2 ................................................................................................. 16

19 C.F.R. § 159.11 ............................................................................................... 16

19 C.F.R. § 351.225 ....................................................................................... 16,17

51 Fed. Reg. 45101 ...................................................................................... 3, 4, 7, 9

57 Fed. Reg. 29629 ............................................................................................. 2, 6

19 U.S.C. § 1516a ................................................................................................. 3

31 U.S.C. § 3729 ........................................................................................... *passim*

Fed. R. Civ. P. 56 .................................................................................................. 4

## OTHER AUTHORITIES

S. Rep. No. 99-345 ............................................................................................. 11

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;        - iv -        CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

## I.    <u>INTRODUCTION</u>

The Vandewater Defendants move for summary judgment because Plaintiff has not proven, and cannot prove, the allegations contained in the First Amended Complaint ("FAC"). ECF 97. The question squarely before the Court is this:

> Where importers declare their products duty-free based on an interpretation of a Department of Commerce duty order that is (at the very least) objectively reasonable, and where there is no evidence that anyone—not a government entity nor any private person—had ever voiced a contrary interpretation, can the importers' declaration be the basis for False Claims Act liability?

Clearly not. Even with the benefit of full discovery, including pre-litigation investigation, the best Plaintiff can do is cast aspersion and aver that Defendants should have anticipated and acceded to Plaintiff's nakedly self-serving view of the law. This is not remotely enough to merit a trial jury's consideration. Summary judgment for Defendants should issue.

## II.    <u>BACKGROUND</u>

### A.    <u>Vandewater's Importation of Welded Outlets</u>

Vandewater is a four-employee importing business, wholly owned by Neil Ruebens, which has supplied U.S. customers with various products, including steel pipes and pipe fittings used in fire protection systems. Statement of Undisputed Material Facts ("SUF") 4. One type of fire-protection pipe fitting imported by Vandewater is the "welded outlet." A welded outlet is affixed by weld to the side of a "header" pipe in order to accommodate outflow from an opening made in that pipe. SUF 14. The end of the welded outlet affixed to the header is contoured like a saddle, so that it can fit the curvature of the header pipe and be welded to the header in a "corner joint." SUF 15. The other end of a welded outlet may be machine-threaded or grooved, so as to be connected to the next piece in the fire protection system by

means other than welding. SUF 16. Vandewater has only imported *threaded* welded outlets (which it has referred to as "threaded outlets," "pipe outlets," or "POL") and *grooved* welded outlets (referred to as "grooved outlets" or "GOL"). SUF 5, 6.

To be precise, Vandewater began importing threaded outlets from China in or about 2003. SUF 5. In or about 2013, Vandewater expanded its product line and began importing grooved outlets, also from China. SUF 6.  Prior to 2013, Vandewater had purchased grooved outlets from Plaintiff, a domestic pipe fittings manufacturer, for resale to Vandewater customers. SUF 7.

As detailed below, before Vandewater began importing welded outlets, Neil Ruebens consulted two resources whom he trusted regarding the relevant importation rules: an import broker with whom he had worked in the past, and two Customs and Border Protection ("CBP") pipe fittings import specialists. SUF 8–10. None of these people indicated that welded outlets were subject to antidumping duties. SUF 12. When Vandewater began importing welded outlets and warehousing them in Georgia, it used Atlanta-based brokers with the firm American Cargo Express ("ACE") to provide importation guidance and prepare product entry paperwork. SUF 11. ACE made no mention of antidumping duties either. SUF 12.

### B.   Plaintiff's Allegations

It is Plaintiff, by its initial complaint in this action, that first raised the notion that welded outlets imported from China were subject to antidumping duties. Plaintiff contends that these products fall within the scope of an antidumping duty ("ADD") order for "Certain Carbon Steel Butt-weld Pipe Fittings from the People's Republic of China," which was promulgated by the Department of Commerce ("Commerce") on July 6, 1992. 57 Fed. Reg. 29629 (hereinafter, the "China Order"). SUF 19.

The key term referenced in the China Order, "butt-weld pipe fittings," has a recognized meaning in the piping industry. Butt-weld pipe fittings "get their name from the fact that all the ends of these fittings are made to be butted together with pipe or other buttwelding fittings and welded together to form a permanent joint,"

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;       - 2 -       CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

commonly known as a "butt joint." SUF 14.  Butt-weld pipe fittings are thus materially different from welded outlets: "Unlike the ends of butt weld fittings, all of which are made to butt up against the end of a pipe or another butt weld fitting, one end of outlet fittings is contoured so that it sets on the outside surface of another pipe rather than butting up against the end of that pipe." SUF 14–17. The differences in form correspond to differences in function and use. Welded outlets are used where it is not necessarily known in advance of installation precisely where an outlet is needed (as they can accommodate outflow from a hole cut in the side of a header pipe). SUF 14–17.  As typically it is not welded, the outlet end opposite the header pipe can be much more easily detached from and reattached to another piece of pipe. SUF 14–17. Accordingly, welded outlets may be used for "non-permanent connections," where pipe connections may need to be "disassembled and reassembled with relative ease" (like in fire protection systems, where sprinkler heads or other parts degrade and may need to be replaced). SUF 14–17. By contrast, butt-weld pipe fittings are ideal for higher-pressure or higher-temperature applications, or where the fluid being carried is dangerous; in such applications, the overriding concern is preventing leakage, and therefore more leak-proof "permanent welded connections" are favored over threaded, grooved, or other non-permanent connections. SUF 14.

Plaintiff contends, nevertheless, that the term "butt-weld pipe fittings" in the China Order encompasses welded outlets. It argues that Commerce had construed a *different* ADD order, for "Certain Carbon Steel Butt-weld Pipe Fittings from Taiwan," 51 Fed. Reg. 45101 (Dec. 17, 1986) (the "Taiwan Order") (SUF 18), to extend to welded outlets in a "scope ruling" issued to a company named Sprink, Inc. on March 25, 1992. ECF 97-2 (hereinafter, the "Sprink Ruling").[1] However, Plaintiff never explains why the Sprink Ruling should be deemed precedential with

---

[1] A "scope ruling" is a determination made by Commerce, subject to review by the U.S. Court of International Trade, "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 3 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

respect to the (subsequently enacted) China Order, particularly given the differences in language between the Taiwan Order and the China Order. Most notably, the China Order contains narrowing language that the Taiwan Order does not, specifying that antidumping duties are only imposed on:

> formed or forged pipe fittings [] used to join sections in piping systems where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (e.g., threaded, grooved, or bolted fittings).

*Compare* China Order *with* Taiwan Order. SUF 20.

Citing the "language unique to the China Butt-Weld Order," when Commerce ruled on Vandewater's own scope ruling request (long after Plaintiff filed its initial sealed complaint in this case), Commerce noted that "we are not bound by the agency's analysis in the Sprink Scope Ruling[.]" SUF 21. On September 10, 2018, though concluding that the China Order's "scope language is ambiguous," Commerce determined that Vandewater's welded outlets were within the scope of the order. SUF 23. On September 12, 2018, Vandewater filed a complaint before the Court of International Trade (the "CIT") contesting Commerce's ruling; this litigation remains pending. SUF 24.

## III. LEGAL STANDARD

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. For there to be a "genuine issue" of material fact, there must be sufficient evidence in favor of the non-moving party to allow a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law. *Id.* A party's failure to establish necessary elements of its case, for which it bears the burden of proof, is reason to grant summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 4 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

## IV.   <u>ARGUMENT</u>

The FAC alleges that the Vandewater Defendants violated the "reverse false claims" provision of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G) (the "FCA"). FAC ¶¶ 77–85 (ECF 97). To prove this claim, Plaintiff must establish that the Vandewater Defendants (1) made a false statement or engaged in a fraudulent course of conduct, (2) with requisite scienter, (3) that was material, and (4) deprived the government of money owed. *U.S. ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011); *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011).

Plaintiff has failed to elicit evidence to make its case. Accordingly, the Court should grant the Vandewater Defendants' motion for summary judgment.

### A.   <u>There is No False Statement upon which a Reverse False Claims Act Claim can be Based.</u>

"An actual false claim is the *sine qua non* of an FCA violation." *Cafasso*, 637 F.3d at 1055. To avoid summary judgment, Plaintiff needs to present sufficient evidence to convince a reasonable fact-finder that the Vandewater Defendants "knew of facts conclusively establishing" that submissions to CBP were false. *See U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 833 (7th Cir. 2011). The statements to the government need to be an "objective falsehood" to qualify as false for purposes of the FCA. *Id.* at 836 (citing *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). Further, it must be established that the Vandewater Defendants intended false statements to be material to the government. *See Allison Engine Co., Inc. v.  U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008) (to be liable, defendant must contemplate a "direct link" between its false statement and a government decision). Finally, for a "reverse False Claims Act" claim, the alleged false statement must pertain to an obligation "to pay or transmit money or property to the Government." *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016). "[I]n order to

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;     - 5 -     CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

1   create liability, the obligation must be formally established at the time of the

2   improper conduct" alleged, not "dependent on a future discretionary act" by the

3   government, *U.S. ex rel. Barrick v. Parker-Miglioirini Int'l, LLC*, 878 F.3d 1224,

4   1232 (10th Cir. 2017), like a scope ruling.

5          The alleged false statements by Defendants at the heart of this case are their

6   declarations on customs entry forms that welded outlets imported from China are

7   duty-free, FAC ¶¶ 3–4 (ECF 97);[2] and the alleged obligations to pay to which these

8   statements pertain are the antidumping duties purportedly imposed on these

9   products by the China Order. The China Order itself does not mention "welded

10  outlets." *See* 57 Fed. Reg. 29629. Thus, both sets of allegations hinge on Plaintiff's

11  proposition that welded outlets fall within the term "butt-weld pipe fittings," as used

12  in the China Order. This is an incorrect reading of the order, for two main reasons.

13         First, where, as here, the key term in an antidumping duty order is broad and

14  reasonably subject to interpretation, it must be construed in light of industry

15  understandings of the term, including certification standards. *See Atkore Steel*

16  *Components, Inc. v. United States*, 313 F. Supp. 3d 1374, 1384 (Ct. Int'l Trade,

17  May 15, 2018)(industry standards "cannot be ignored;" Commerce errs when it

18  does so); *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88

19  (Fed. Cir. 2012) ("[A]ntidumping orders should not be interpreted in a vacuum

20  devoid of any consideration of the way the language of the order is used in the

21  relevant industry."). Indeed, the whole point of an ADD order is to put industry "on

22  notice of what merchandise is subject to duties," so "[c]ourts have long recognized

23  the importance of considering context, including industry custom, in interpreting

24  written language" within an order. *ArcelorMittal*, 694 F.3d at 88. In this case, the

25  trade usage and industry standards are undisputed. As Defendants' proffered

26

27

28

---

[2] Plaintiff makes a fleeting allegation that Vandewater falsely described its welded outlets on certain customs entry forms as "adaptors." FAC ¶ 36(e) (ECF 97). At his deposition, Plaintiff's president conceded that this is no false statement at all: as an engineering matter, a welded outlet is a type of adapter. SUF 34. Neil Ruebens confirms that in the piping industry, "'[a]dapters' is a common term." SUF 34.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;        - 6 -        CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

1    engineering and materials science expert, Walter Sperko, explained, for a host of

2    reasons ranging from the physical attributes of the products to their uses and

3    functions to the standards of design that govern them, welded outlets and butt-weld

4    pipe fittings are simply regarded as separate and distinct products. SUF 14–17.

5    Plaintiff could produce no expert to opine otherwise. The fact- and science-based

6    industry consensus as to what a butt-weld pipe fitting is—and what it is not—strongly

7    indicates that the term is properly construed to exclude welded outlets.

8        Second, the words that Commerce used in drafting the China Order matter.

9    The distinct language of the China Order cannot cavalierly be read as surplusage.

10   *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1073 (Fed. Cir.

11   2001)(rejecting "the Government's interpretation" that "renders… language mere

12   surplusage"); *Polites v. United States*, 755 F.Supp.2d 1352, 1357 (Ct. Int'l Trade

13   2011)("While Commerce has latitude in interpreting [duty orders], it may not

14   render parts of the Order 'mere surplusage.'")(citations omitted). When it

15   promulgated the China Order in July 1992, Commerce must be presumed to have

16   been aware of the Taiwan Order, and of the Sprink Ruling that expounded upon it.

17   It is only fair to conclude that Commerce's decision to use *different* language in the

18   China Order—which Commerce itself conceded was "unique" and meaningful

19   enough to preclude giving the Sprink Ruling precedential effect, Salzman Decl. ¶ 2,

20   Ex. 1 at 11—reflected an intent on behalf of the drafters of the China Order to

21   capture a different universe of products.[3] *See Polites*, 755 F.Supp.2d at 1357. And

22   the "unique language" of the China Order speaks directly to the products at issue in

23   this case—for it excludes from the order's coverage "fittings based on…fastening

24   methods [such as] thread[s and] groove[s]" as might be used where conditions do

25   not "require permanent, welded connections" between piping system components.

26   *See* China Order. Defendants' products fit within this exclusion.

27

28   _____

[3] Plaintiff offers no explanation or evidence to rebut the presumption against
deeming ADD order language surplusage. *Polites*, 755 F.Supp.2d at 1357.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 7 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

1   Accordingly, Plaintiff fails in establishing the most basic elements of a

2   reverse False Claims Act claim. There are no false statements, and there is no

3   overarching obligation to pay antidumping duties on Vandewater's welded outlets.

4   **B.      Plaintiff Cannot Prove Scienter.**

5   A party cannot violate the False Claims Act without "knowingly" making a

6   false statement. *See* 31 U.S.C. § 3729(a)(1). To act "knowingly" under the FCA, a

7   person must have "actual knowledge of the information" in question, act in

8   "deliberate ignorance" of the truth, or act with "reckless disregard" of the truth or

9   falsity of the information. 31 U.S.C. § 3729(b)(1)(A); *see also U.S. ex rel. Williams*

10  *v. Renal Care Grp., Inc.*, 696 F.3d 518, 530 (6th Cir. 2012). The FCA's scienter

11  requirement is "rigorous." *United States v. United Healthcare Ins. Co.*, 848 F.3d

12  1161, 1176 (9th Cir. 2016 ); *accord Yannacopoulos*, 652 F.3d at 832 (the FCA is

13  meant to penalize statements made with knowing falsity, not all factually inaccurate

14  statements). Even if antidumping duties applied, Plaintiff adduces insufficient

15  evidence to convince a reasonable fact-finder that the Vandewater Defendants

16  knew, believed, or were put on notice that their welded outlets were subject to such

17  duties. As such, the Court should grant summary judgment.

18  Indeed, the Vandewater Defendants have never believed, and still do not

19  believe, that their welded outlets fall under the scope of the China Order. Neil

20  Ruebens learned about "the anti-dumping duty order for butt-weld pipe fittings

21  from China" in the early 1990s, during or soon after his time as a marketing

22  employee at Hitachi Metals. SUF 13. Nonetheless, it is clear that Mr. Ruebens

23  never perceived this order to apply to welded outlets. SUF 13 (Salzman Decl. ¶ 5,

24  Ex. 4 at 124:8–9 ("[W]e were never affected by an antidumping duty order."). This

25  is because Mr. Ruebens, like virtually everyone else in his industry, perceived butt-

26  weld pipe fittings and welded outlets to be entirely distinct products. *See* SUF 13–

27  17; Sperko Expert Report at 3–13; Ruebens Decl. ¶ 7, Attachment 1 (email

28  correspondence with the American Society of Mechanical Engineers). This is a view

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;         - 8 -        CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

that Mr. Ruebens holds in good faith to this day, *see* Salzman Decl. ¶ 5, Ex. 4  at 270:19 –274:13 (detailing the differences between the two products), and this is part of what informs the arguments that Vandewater and its counsel are making before the CIT. SUF 13.

### 1.   There Is No Evidence that Anyone, Prior to Plaintiff's Lawsuit, Ever Propounded the View that Chinese Welded Outlets Were Subject to Antidumping Duties.

As discussed above, the China Order itself does not mention "welded outlets;" nor does it incorporate the Sprink Ruling that brought welded outlets into the scope of the Taiwan Order; nor does it mirror the language of the Taiwan Order itself. *Supra* at 6–8. And neither CBP nor the Department of Commerce issued any guidance bringing welded outlets within the scope of the China Order until Commerce responded to Vandewater's scope ruling request on September 10, 2018. Salzman Decl. ¶ 2, Ex. 1. So, not surprisingly, neither the CBP specialists that Vandewater reached out to before importing welded outlets nor the import brokers that it retained ever indicated to Vandewater that welded outlets fell within the ambit of the China Order. *Infra* at 13–15; SUF 12. Nor had any other importer, to Neil Ruebens' knowledge, regarded welded outlets imported from China as subject to antidumping duties. SUF 13.

Plaintiff is perhaps one of only two entities in the industry that regard Chinese welded outlets as subject to antidumping duties.[4] Plaintiff's officers purport to have come to this view in mid-2016, following Internet research and conversations with Commerce and CBP personnel. SUF 27.  But Plaintiff's president, Glenn Sanders, conceded that he never disclosed this view in any of his many conversations with the Ruebens family. SUF 27. Indeed, Plaintiff did not send Vandewater a cease-and-desist letter, petition Commerce for a ruling as to the

---

[4] The only other, to the undersigned's knowledge, is Anvil International, LLC, another domestic manufacturer, which recently took this position in opposition to Vandewater's scope ruling request. *See* Salzman Decl. ¶ 2, Ex. 1.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 9 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

1  scope of the China Order, or initiate any other manner of public proceeding to

2  attempt to establish that welded outlets from China were subject to antidumping

3  duties. Ruebens Decl. ¶ 9. Rather, Plaintiff seemed determined to contemplate and

4  pursue potential remedies in secret, lest it "alert" Vandewater and the other

5  importers of its contentions. Certainly, Vandewater received no notice from

6  Plaintiff of its expansive view of the China Order.

7        That leaves Hank Zawada, Vandewater's former sales representative, who is

8  referenced in the First Amended Complaint as "Confidential Source 1." SUF 29. In

9  sharp contrast to the way he is portrayed in the FAC, at his deposition Mr. Zawada

10 was flummoxed by the notion that he was the "confidential source" behind this

11 lawsuit.[5] SUF 30.  Hank Zawada disclaimed any knowledge or belief that

12 antidumping duties applied to Chinese welded outlets. SUF 20, 21.  No one ever

13 told him as much. SUF 31. No one ever told Neil Ruebens as much in Hank

14 Zawada's presence. SUF 31. No one ever told Hank Zawada that they informed

15 Neil Ruebens that Chinese welded outlets were subject to antidumping duties. SUF

16 31. Mr. Zawada never heard Neil Ruebens or Skip Perkins[6] or anyone else

17 associated with Vandewater ever profess a belief that welded outlets were subject to

18 antidumping duties. SUF 31. Indeed, Mr. Zawada had never heard of, or discussed

19 with Skip Perkins, the Sprink Ruling on which Plaintiff so heavily relies. *Id.* at

20 65:1–66:1. This, again, is not particularly surprising, since the ruling concerned

21 Taiwan, *supra* at 3–4, a country from which none of the parties in this case appear

22 ─────────────
   [5] Hank Zawada admitted that he provided Vandewater's cost information and
23 business records to Plaintiff's president, Glenn Sanders, in 2013, after Mr.
   Zawada's relationship with Vandewater terminated. However, Mr. Zawada had no
24 "expectation that Island was going to use it in a lawsuit against importers of welded
   outlets[.]" Salzman Decl. ¶ 6, Ex. 5 (Zawada Deposition Tr.) at 60: 21-25. Glenn
25 Sanders confirmed that he elicited this information from Mr. Zawada not to bring a
   False Claims Act suit—for he did not contemplate bringing any kind of litigation
26 until years later—but rather so that he could use this information commercially, to
   compete with Vandewater and other importers. Salzman Decl. ¶ 4, Ex. 3 (Sanders
27 Deposition Tr.) at 567:11-568:2, 574:7-580:15.

28 [6] Skip Perkins was another Vandewater sales representative. He passed away in
   2013. *See* Salzman Decl. ¶ 6, Ex. 5 (Zawada Deposition Tr.) at 40:6-17.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 10 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

ever to have imported pipe fittings. In all events, Hank Zawada never gave Vandewater notice of Plaintiff's expansive interpretation of the China Order.

### 2. Plaintiff Does Not—and Cannot—Offer Evidence from which a Reasonable Fact-Finder Could Conclude that the Vandewater Defendants Acted in Deliberate Ignorance or Reckless Disregard as to the Truth of their Statements.

To establish that the Vandewater Defendants acted in "deliberate ignorance," Plaintiff would have to show that they "failed to make simple inquiries which would alert [them] that false [statements] are being submitted." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (9th Cir. 2016) (quoting S. Rep. No. 99-345 at 21 (1986)). Query, though, in this case, what inquiry exactly would have led Defendants to conclude that the China Order covered welded outlets?

Plaintiff has long suggested that there were missed "red flags"—that if only Defendants had done sufficient diligence to uncover them, then they would have known that their welded outlets were subject to ADDs. *See* FAC ¶ 76 (ECF 97). However, when given the opportunity to identify these "red flags," Plaintiff's proffered import compliance expert, Kelli Thompson, could name not a single one. SUF 32 (further, there is nothing predating Commerce's 2018 response to Vandewater's scope ruling request that Ms. Thompson can identify as a basis for concluding that ADDs apply). Indeed, although she claims to have extensive experience as an import professional construing ADD orders, and though she reviewed a voluminous (if one-sided) set of background materials on this case, Ms. Thompson declined even to say whether welded outlets are properly within the scope of the China Order. SUF 32. She professed to have great difficulty interpreting the China Order, (SUF 33)—which is understandable to a point, because at least as Commerce read it, *supra* at 4, the scope language is ambiguous. *See* Salzman Decl. ¶ 2, Ex. 1 at 11.

This is the reason why the Ninth Circuit has held that "a good faith

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 11 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

interpretation of a regulation is not subject to [FCA] liability." *U.S. ex rel. Oliver v. Parsons Co.,* 195 F.3d 457, 464 (9th Cir. 1999); *see also U.S. ex rel. McGrath v. Microsemi Corp*., 690 F. App'x 551, 552 (9th Cir. 2017)(FCA complaint "cannot establish [] scienter as a matter of law" in the context of a defendant's reasonable interpretation of the law). It is not the correctness of the interpretation *per se*, or the ultimate validation of the proffered interpretation, that protects a defendant from liability under the FCA; rather, it is the good faith reflected in a reasonable assessment of legal obligation that forecloses the necessary mental state. *See Parsons*, 195 F.3d at 464; *U.S. ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan for Employees of Hawaii Pac. Health*, 343 F. App'x 279, 281 (9th Cir. 2009).

As the U.S. Supreme Court confirmed, even "reckless disregard" is impossible to establish in such circumstances. Where the relevant law "allow[s] for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007); *see also Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014)("differences in interpretations are not false certifications under the [False Claims] Act"). For all of the reasons detailed above, the Vandewater Defendants' interpretation of the China Order is, if not the correct interpretation, then certainly a reasonable one. And it is this good faith, reasonable interpretation—which every other importer shared, and which every Defendant continues to advance in CIT litigation—that precludes a finding of recklessness. *Williams*, 696 F.3d at 518, 530–31 ("[t]o deem such behavior 'reckless disregard'…imposes a burden…far higher than what Congress intended when it passed [the FCA]").

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;                - 12 -                CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

**3.      Vandewater's Retention of an Import Broker, its Full and Transparent Interactions with its Broker, and its Outreach to CBP All Underscore the Vandewater Defendants' Evident Good Faith.**

Plaintiff alleges a decades-long scheme whereby Vandewater "knowingly and intentionally evaded and avoided… substantial antidumping duties[.]" FAC ¶ 4 (ECF 97). How peculiar, then, that Vandewater hired a licensed import broker to prepare its product entry documentation—and, undisputedly, shared with that broker all of the details of its importation, including the full panoply of backup documentation (commercial invoices, bills of lading, *etc*.) that describes Vandewater's products and traces them from factory to port-of-entry. In fact, as noted above, Vandewater consulted multiple brokers, and it contacted CBP personnel before it began importing welded outlets from China. Not a single one of these individuals raised any issue or concern regarding antidumping duties. SUF 8–11. Vandewater's outreach to and collaboration with importation specialists render implausible Plaintiff's allegations of customs duty evasion.

Plaintiff's proffered compliance expert (herself a licensed import broker) explained the quintessential functions of a broker: to "facilitate and provide guidance [on] rules and regulations to importers" who are bringing product into the United States. SUF 35. Licensed import brokers are experts in their field, screened through a selective customs brokers exam. SUF 35. They provide guidance to importers on a range of topics, including "[product] classification" and applicable "rates of duty." SUF 35. They are trained and expected to raise issues with clients when there "may seem to be a misclassification [of a product]" or when "they feel that an inappropriate duty amount is being reported[.]" SUF 36.

When a government contractor or regulated entity hires such professional advisors, provides them with necessary information, and follows their advice, this is recognized, powerful evidence of good faith—an integral piece of a body of proof

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 13 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

that precludes False Claims Act liability. *See*, *e.g.*, *U.S. ex rel. Heffner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 110 (3d Cir. 2007) (defendant's "lack of recklessness is also demonstrated, at least indirectly, by its hiring [a consultant] to help it improve its compliance");  *Williams*, 696 F.3d at 531 ("a defendant is not reckless when, in the face of ambiguous regulations, [it] follows industry practice, consults and relies on advice of counsel, and was forthright with the government about its conduct"); *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 130 F. Supp. 3d 866, 875 (S.D.N.Y. 2015) (granting summary judgment for defendant where defendant hired compliance consultant). Likewise, "[t]he government's knowledge and acquiescence in [the defendant's] actions is highly relevant to show that [the defendant] did not [make statements] in deliberate ignorance or reckless disregard of their truth or falsity." *Kirk*, 130 F. Supp. 3d at 880 (citing *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 (5th Cir. 2003)(alterations omitted); *accord Williams*, 696 F.3d at 531.

Before Vandewater began importing welded outlets, Neil Ruebens consulted with CBP import specialists Paula Ilardi and April Avalone about the product. SUF 10. Mr. Ruebens also spoke with Elena Torrey of New York-based broker Charles Happel & Co. to determine the proper HTS code for these products. SUF 8. Mr. Ruebens believes that he asked Happel whether the welded outlets were subject to antidumping duties. SUF 10; Salzman Decl. ¶ 5, Ex 4 at 102:1–10 ("You know, we always want to know that before we brought in a new product."). In all events, neither the CBP nor the Happel brokerage firm raised any issues or concern that these products might be subject to the 1992 China Order. SUF 12.

When Vandewater actually began importing welded outlets, it worked with Atlanta-based brokers at ACE. *Supra* at 2; SUF 11. It is clear from Vandewater's extensive correspondence with ACE over the years that ACE personnel understood what Vandewater's products were and where they came from. SUF 11. Vandewater sent ACE comprehensive documentation for its welded outlets imports, which ACE

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;        - 14 -        CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

in turn made available for CBP inspection. SUF 11. Yet no one at ACE raised the China Order with Vandewater either. SUF 12.  Neither did any of the CBP personnel who processed and inspected Vandewater's shipments over the years. SUF 12.

Of course, the reason why neither CBP pipe fitting import specialists nor any of the above brokers raised the China Order is because the order applies to "butt-weld pipe fittings," whereas Vandewater was importing welded outlets; and the two types of products are clearly distinct, as evident from their respective physical attributes, industry standards, trade usage, and tariff classifications. *Supra* at 3. But in all events, the involvement of all of these import professionals, and their agreement in Vandewater's product classifications and duty position, further evidence Vandewater's good faith and decisively belie Plaintiff's allegations of duty evasion.

### C.     There is No Viable Claim for Damages, Because No Duties may be Imposed Predating the Vandewater Scope Ruling.

As discussed above, in accepting Vandewater's scope ruling request and adjudicating the request under subsection (k)(1) of the scope rulings regulation, Commerce concluded that "the scope language [of the China Order] is ambiguous," and that further analysis would have to ensue to determine "whether the product in question is covered by the order."[7] Salzman Decl. ¶ 2, Ex. 1 at 3. In such situations, Commerce's regulation bars the government from imposing duties predating the scope ruling. This rule in and of itself precludes any judgment in favor of Plaintiff.

In the federal importation rules, "the final computation or ascertainment of duties on entries" of merchandise is referred to as "liquidation". 19 C.F.R. § 159.1. Merchandise must typically be "liquidated" by CBP—*i.e.*, duties must typically be

---

[7] By contrast, summarizing what is colloquially referred to as a "k(0)" analysis, Commerce noted that where it is "able to determine whether the product in question falls within or outside the scope based solely on the language of the order, the unambiguous language of the scope governs." Salzman Decl. ¶ 2, Ex. 1 at 3.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 15 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

assessed—within one year of entry. 19 C.F.R. §§ 159.2, 159.11. Commerce may direct CBP to suspend this liquidation process in certain circumstances. Nevertheless, in the context of a scope determination, Commerce has limited prospective authority. 19 C.F.R.§ 351.225(l)(3). Specifically, where liquidation has not otherwise been suspended, and Commerce issues a scope ruling under subsection (k)(1) of the scope rulings regulation, the regulation is clear that "the Secretary will instruct the Customs Service to suspend liquidation…*on or after* the date of initiation of the scope inquiry." *Id*. (emphasis added). Thus, at the earliest, Commerce may reserve the government's rights to assess duties as of Vandewater's scope ruling. September 10, 2018. *See* Salzman Decl. ¶ 2, Ex. 1 at 1.

The U.S. Court of Appeals for the Federal Circuit recently confirmed that Commerce exceeds its regulatory authority where it directs that liquidations be suspended "retroactively," so as to potentially impose duties prior to this date. *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 801 (Fed. Cir. 2020). In *United Steel and Fasteners*, the Federal Circuit specifically rejected Commerce's argument that "a scope ruling… merely 'confirm[s]' the scope of an antidumping duty order," such that liquidation may be suspended back to the date of the ADD order itself. *Id.* at 802–03. Rather, in interpreting 19 CFR § 351.225(l) in the context of a (k)(1) scope determination, the Federal Circuit held that Commerce's scope determination was effective as of the date when Commerce issued the *final* scope ruling (Commerce issued its final scope ruling in this case without initiating a formal scope inquiry). The Court noted that suspension of liquidation of the entries in question had not occurred prior to that time and explained that "[w]hen liquidation has not been suspended, Customs, and perhaps the Department as well, have viewed the merchandise as not being within the scope of an order, importers are justified in relying upon that view, at least until the Department rules

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;       - 16 -       CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

otherwise."[8] *Id.* at 803.

Just as in *United Steel and Fasteners*, Commerce issued its final ruling in this case without initiating a formal subsection (k)(2) scope inquiry. Because Vandewater did not import welded outlets from China subsequent to the September 10, 2018 ruling date (SUF 25), Vandewater owes no importation duties to the government. As such, there can be no FCA claim. *See supra* at 5–6; *U.S. ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1232 (10th Cir. 2017) ("in order to create liability, the obligation must be formally established at the time of the improper conduct" alleged). Accordingly, in addition to all of the other reasons why Plaintiff's claims fail, they are barred by 19 C.F.R. § 351.225(l)(3).

### D.   All Remaining Allegations by Plaintiff Have Been Disproved and are Immaterial.

The First Amended Complaint is littered with oblique aspersions, which after discovery, are clearly not significant enough to affect the outcome of this litigation. *See Anderson*, 477 U.S. at 248 (a fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law). These peripheral allegations are immaterial, in part, because they have no bearing on antidumping duties allegedly due and owing to the government. *Cafasso*, 637 F.3d at 1056. Irrelevant factual disputes are not to be considered as a barrier to summary judgment. *Anderson*, 477 U.S. at 249. Further, the allegations, which are addressed in turn below, lack any factual support in the evidentiary record, and, instead, appear to have been included solely in an effort to muddy further the issues before the Court.

---

[8] As the Federal Circuit notes, there is no risk of gamesmanship in this rule, because "Commerce always retains the authority to self-initiate a scope inquiry and, thus, it is not bound by the timing of the importer's scope ruling request to determine whether a product is in scope." *United Steel and Fasteners*, 947 F.3d at 803 (citing 19 C.F.R. § 351.225(b)).

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM ISO MOTION   - 17 -   CASE NO. 2:17-cv-04393-RGK-KS

### 1. Vandewater Did Not Misuse Tariff Codes for "Parts and Accessories for Motor Vehicles."

The FAC alleges that the Vandewater Defendants imported from China "at least five shipments of 'U-L FM Approved Steel Pipe-O-Lets'" intentionally classifying the product using Harmonized Tariff Schedule Code ("HTS") numbers for "Parts and Accessories for Motor Vehicles." FAC ¶ 36(a) (ECF 97). The evidentiary record in the case, however, fails to support that the Vandewater Defendants engaged in any such conduct.

Despite deposing three Vandewater employees over three separate days, Plaintiff failed to discuss this subject matter, much less elicit any evidence supporting its contention. Indeed, the sole reference in the testimonial record to such purported conduct is found in the deposition of Plaintiff's president, Glenn Sanders, who testified that he "[did not] know how many times" the alleged conduct occurred when questioned by Vandewater's counsel. SUF 38. Neil Ruebens surmises that automotive HTS codes might have been erroneously input into some bills of lading by one of the Chinese manufacturers of Vandewater's welded outlets, Hiron (as Hiron also manufactures hydraulic fittings for automobiles), but Mr. Ruebens believes these were isolated occurrences. SUF 38. In all events, Vandewater has only so much control over what Hiron personnel input on these documents. SUF 38. There is no evidence that any welded outlets were mis-described as auto parts on entry forms that Vandewater and its brokers prepared or submitted to CBP.

### 2. Vandewater Did Not Falsely Claim That Its Imports Were From South Korea.

Plaintiff further alleges that the Vandewater Defendants "transshipped" their grooved outlets, *i.e.*, that they falsely claimed their imported grooved outlets were manufactured in South Korea, rather than their true country of origin, China. FAC ¶ 36(c) (ECF 97). This theory, similarly, finds zero support in the evidentiary record.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;         - 18 -            CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

Plaintiff bases this assertion on reports generated by trade data aggregator Import Genius. SUF 39. In his deposition, however, Plaintiff's president conceded that Import Genius reports may indicate shipments from South Korea in instances where a container ships from China and stops in South Korea *en route* to the United States. SUF 39. As reflected in the various customs entry forms produced to Plaintiff in discovery—which each declare China as country of origin—the Vandewater Defendants have never imported welded outlets from South Korea, or declared South Korea as the country of origin for these products. SUF 39. Without any evidentiary underpinning, the transshipment allegations in the First Amended Complaint cannot stand, and they should be disregarded.

### 3.   Vandewater Has Never Imported Blank Welded Outlets.

Finally, Plaintiff contends that the Vandewater Defendants imported Chinese welded outlet blanks without appropriate markings, while failing to pay purported antidumping duties on the same. *See* FAC ¶ 36(d) (ECF 97). This assertion is similarly false as the Vandewater Defendants have never imported Chinese welded outlet blanks, and no admissible evidence in the record supports a contrary conclusion.[9] SUF 40. As the burden of proof rests with Plaintiff at trial, the Vandewater Defendants need not prove the negative in moving for summary judgment. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also Gonzalez v. Ford Motor Co.*, No. LA CV 1900652, 2019 WL 6122554, at *2 (C.D.

---

[9] Plaintiff further alleges that Vandewater imported Chinese welded outlets while falsely describing the same as "BLK Steel Coupling Blanks," products which it never advertised (and which are not subject to an antidumping duty). *See* FAC ¶ 36(d) (ECF 97). These blank coupling imports, however, were accurately described on entry forms. This product was imported solely for Vandewater customer JP Ward, who then threaded the coupling for its resale. Salzman Decl. ¶ 5, Ex. 4 (N. Ruebens Deposition Tr.) at 58:13-59:11; Salzman Decl. ¶ 8, Ex. 7 (J. Ruebens Deposition Tr.) at 26:15-27:18. Accordingly, Plaintiff's allegation cannot stand.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;          - 19 -          CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

1   Cal. Oct. 23, 2019) ("The moving party has no burden to negate or disprove matters

2   on which the opponent will have the burden of proof at trial."). As Plaintiff is

3   unable to carry its burden, its allegation in the FAC should be disregarded.

4   **V.     CONCLUSION**

5          For the foregoing reasons, Vandewater International, Inc. and Neil Ruebens

6   respectfully request that the Court grant summary judgment in their favor and

7   against Plaintiff-Relator Island Industries, Inc. for all claims made in this litigation.

8

9   Dated:  April 8, 2020                    FAEGRE DRINKER BIDDLE & REATH LLP

10

11                                           By: */s/ Ryan M. Salzman*
12                                              Ryan Salzman
                                                Thomas Kelly (*pro hac vice*)
13                                              Joseph Rillotta (*pro hac vice*)
                                                Joie Hand (*pro hac vice*)
14                                           Attorneys for Defendants
15                                           VANDEWATER INTERNATIONAL,
                                             INC. and NEIL RUEBENS
16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;        - 20 -        CASE NO. 2:17-cv-04393-RGK-KS
MEMORANDUM ISO MOTION

# CERTIFICATE OF SERVICE

I am over eighteen years of age and not a party to this action. I am a member of the California Bar. My business address is 1800 Century Park East, Suite 1500, Los Angeles, CA 90067. On April 8, 2020, I caused the above document, described as **Vandewater Defendants' Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities**, to be served on the interested parties in this action by electronically mailing it to the email addresses set forth below.

**MAYER BROWN LLP**
Matthew Marmolejo
mmarmolejo@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503

Kelly Kramer
kkramer@mayerbrown.com
1999 K Street NW
Washington, D.C. 20006

***Attorneys for Plaintiff-Relator Island Industries, Inc.***

**BAKER MARQUART LLP**
Brian E. Klein
bklein@bakermarquart.com
Teresa Lenore Huggins
thuggins@bakermarquart.com
777 South Figueroa Street, Suite 2850
Los Angeles, CA 90017

**DAVIS POLK & WARDWELL LLP**
Neil H. MacBride
neil.macbride@davispolk.com
Paul S. Mishkin
paul.mishkin@davispolk.com
Marc J. Tobak
marc.tobak@davispolk.com
450 Lexington Avenue
New York, NY 10017

***Attorneys for Defendant Smith Cooper International***

**KING AND SPALDING LLP**
Blythe G. Kochsiek
bkochsiek@kslaw.com
633 West 5th Street Suite 1600
Los Angeles, CA 90071

Christopher C Burris
cburris@kslaw.com
1180 Peachtree Street NE
Atlanta, GA 30309

Daniel L. Schneiderman
dschneiderman@kslaw.com
J. Michael Taylor
jmtaylor@kslaw.com
1700 Pennsylvania Avenue NW
Washington, DC 20006

***Attorneys for Defendant Anvil International, LLC***

**WHITE & CASE LLP**
Carmen Lo (SBN 280441)
carmen.lo@whitecase.com
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433

Lucius Lau
alau@whitecase.com
James P. Gagen
jgagen@whitecase.com
701 13th Street, N.W.
Washington, DC 20005-3807

***Attorneys for Defendant Sigma Corporation***

_____
*Ryan M. Salzman*
Ryan M. Salzman

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

CASE NO. 2:17-CV-04393-RGK-KS