MAYER BROWN LLP                                **PUBLIC VERSION**
MATTHEW H. MARMOLEJO (SBN 242964)
 *mmarmolejo@mayerbrown.com*
C. MITCHELL HENDY (SBN 282036)
 *mhendy@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Tel:  (213) 229-9500
Fax: (213) 576-8185

MAYER BROWN LLP
KELLY B. KRAMER (*pro hac vice*)
 *kkramer@mayerbrown.com*
1999 K Street, NW
Washington, D.C. 20006
Tel:  (202) 263-3007
Fax: (202) 263-5207

Attorneys for Relator
ISLAND INDUSTRIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ISLAND INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VANDEWATER INTERNATIONAL INC.; NEIL RUEBENS; SIGMA CORPORATION; SMITH COOPER INTERNATIONAL; ALLIED RUBBER & GASKET COMPANY, and JOHN DOES Nos. 1-10., <br><br> Defendants. | Case No. 2:17-cv-04393-RGK-KS <br><br> **ISLAND INDUSTRIES, INC.'S OPPOSITION TO DEFENDANTS VANDEWATER INTERNATIONAL, INC. AND NEIL RUEBENS'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date: May 18, 2020 <br> Time:  9:00 a.m. <br> Courtroom:  850 <br> Judge:  Hon. R. Gary Klausner |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................. 1

II.   THE ADMINISTRATIVE RECORD ............................................... 2

III.  TRIABLE ISSUES OF FACT PRECLUDE SUMMARY
      JUDGMENT ...................................................................................... 4

      A.    Vandewater falsely certified its Welded Outlets were not subject
            to ADDs ................................................................................... 4

      B.    There are triable issues of fact about Vandewater's scienter ............... 6

            1.    The failure to inquire establishes scienter ................................. 6

            2.    A jury could find that Vandewater conducted a reckless
                  ADD investigation ................................................................ 8

            3.    A jury could find that Vandewater made false
                  certifications with actual knowledge or deliberate
                  ignorance ........................................................................... 13

            4.    A jury could find that Vandewater did not adopt an
                  objectively reasonable interpretation of the China Order ........ 15

IV.   SCOPE RULING REQUESTS CANNOT DEFEAT FCA CLAIMS .......... 18

V.    CONCLUSION ................................................................................ 20

- i -

ISLAND'S OPPOSITION TO DEFENDANTS VANDEWATER INTERNATIONAL, INC. AND NEIL
RUBENS'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 2:17-CV-04393-RGK-KS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acme Furniture Indus., Inc. v. United States*,
   85 F. Supp. 2d 1353 (C.I.T. 2012) ........................................................... 5

*United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*,
   355 F.3d 1140 (9th Cir. 2004) .................................................................. 8

*Anderson v. Liberty Lobby¸ Inc.*,
   477 U.S. 242 (1986) ................................................................................ 14

*United States ex rel. Anderson v. N. Telecom, Inc.*,
   52 F.3d 810 (9th Cir. 1995) ................................................................. 4, 13

*ArcelorMittal Stainless Belgium N.V. v. United States*,
   694 F.3d 82 (Fed. Cir. 2012) ................................................................... 6

*Atkore Steel Components Inc. v. United States*,
   313 F. Supp. 3d 1374 (Ct. Int'l Trade, 2018) .......................................... 6

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
   878 F.3d 1224 (10th Cir. 2017) ............................................................. 19

*United States ex rel. Burlbaw v. Orenduff*,
   548 F.3d 931 (10th Cir. 2008) ................................................................. 7

*Edwards v. Toys "R" Us*,
   527 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 16

*Gonzalez v. Planned Parenthood*,
   759 F.3d 1112 (9th Cir. 2014) ............................................................... 15

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
   2019 WL 3291582 (C.D. Cal. June 14, 2019) ......................................... 4

*INA Walzlager Schaeffler KG v. United States*,
   108 F.3d 301 (Fed. Cir. 1997) ................................................................. 5

*United States ex rel. K&R Limited P'ship v. Mass. Hous. Fin. Agency*,
   530 F.3d 980 (D.C. Cir. 2008) ................................................................. 7

*United States ex rel. Oliver v. Parsons Co.*,
   195 F.3d 457 (9th Cir. 1999) ...................................................... 4, 5, 8, 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*United States ex rel. Plumbers & Steamfitters Local Union No. 38 v.
C.W. Roen Const. Co.,*
    183 F.3d 1088 (9th Cir. 1999) ............................................................... 8

*United States ex rel. Purcell v. MWI Corp.,*
    807 F.3d 281 (D.C. Cir. 2015) ............................................................ 17

*Safeco Ins. Company of America v. Burr,*
    551 U.S. 47 (2007) ............................................................................. 15

*Siebert v. Gene Sec. Network, Inc.,*
    75 F. Supp. 3d 1108 (N.D. Cal. 2014).......................................... 11, 15

*Smith v. Maschne,*
    899 F.2d 940 (10th Cir. 1990) ........................................................... 14

*TMB 440AE, Inc. v. United States,*
    399 F. Supp. 3d 1314 (C.I.T. 2019) .................................................. 16

*United States v. Bourseau,*
    531 F.3d 1159 (9th Cir. 2008) ............................................................. 7

*United States v. Celgene Corp.,*
    226 F. Supp. 3d 1032 (C.D. Cal. 2016)............................................. 17

*United States v. Coloplast Corp.,*
    327 F. Supp. 3d 300 (D. Mass. 2018)....................................... 8, 16, 17

*United States v. Golden Ship Trading Co.,*
    25 C.I.T. 40 (2001) ........................................................................... 10

*United States v. Great Neck Saw Mfrs, Inc.,*
    311 F. Supp. 3d 1337 (C.I.T. 2018) .................................................. 19

*United States v. King-Vassel,*
    728 F.3d 707 (7th Cir. 2013) ........................................................... 7, 8

*United States v. Krizek,*
    111 F.3d 934 (D.C. Cir. 1997) ............................................................ 7

*United States v. Mackby,*
    261 F.3d 821 (9th Cir. 2001).......................................................... 7, 12

- iii -

## TABLE OF AUTHORITIES

**Page(s)**

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016)..................................................................7, 8, 12

*United Steel and Fasteners, Inc. v. United States*,
    947 F.3d 794, 801 (Fed. Cir. 2020 .......................................................18

*Universal Health Services, Inc. v. United States*,
    136 S. Ct. 1989 (2016) ...................................................................4, 6

*United States ex rel. Westmoreland v. Amgen, Inc.*,
    812 F. Supp. 2d 39 (D. Mass. 2011)..............................................16

*United States ex rel. Winter v. Gardens Regional Hosp. and Med. Ctr., Inc.*,
    953 F.3d 1108 (9th Cir. 2020) ...............................................4

**Statutes**

19 U.S.C. § 1484(a) ........................................................................8, 10

19 U.S.C. § 1592(a) .......................................................................18, 19

31 U.S.C. § 3729(b) ....................................................................4, 6, 16

**Other Authorities**

19 C.F.R. § 351.225......................................................................16, 18

57 Fed. Reg. 19602, 19603 (May 7, 1992)...............................................3

57 Fed. Reg. 29702 (July 6, 1992) .......................................................19

ISLAND'S OPPOSITION TO DEFENDANTS VANDEWATER INTERNATIONAL, INC. AND NEIL
RUBENS'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 2:17-CV-04393-RGK-KS

# I.    INTRODUCTION

When bringing goods into the United States, importers have a legal obligation to take reasonable care to ensure that they comply with Customs laws and that they pay any applicable duties, including antidumping duties (ADDs).  To satisfy that legal obligation, importers must accurately describe their products to Customs and Border Protection (CBP) and take reasonable steps to determine whether ADDs apply.  Here, Vandewater and its owner, Neil Ruebens (together, Vandewater), imported its Welded Outlets under a variety of misleading names. And Vandewater repeatedly and falsely certified that its Welded Outlets were not subject to any ADDs, even though it took no steps to determine if those certifications were true.   Vandewater made these false statements with, at minimum, reckless disregard for the truth, which establishes its liability under the False Claims Act (FCA).

Vandewater challenges the adequacy of the evidence as to two points:  falsity and scienter.   As to falsity, Vandewater's argument goes nowhere, because the Department of Commerce (DOC) has authoritatively ruled that the company's Welded Outlets are covered by the ADD order on butt-weld pipe fittings from China (China Order).   Vandewater's repeated certifications to the contrary were thus false.   Moreover, the record conclusively establishes that Vandewater falsely described Welded Outlets as nipples, pipes, or adapters in its import paperwork.

As to scienter, Vandewater suggests that it could not have known that its Welded Outlets were subject to the China Order.  But Vandewater's long-time sales agent, Lloyd "Skip" Perkins, personally requested the DOC scope ruling declaring Sprink-lets to be butt-weld pipe fittings.  A jury can infer that Mr. Perkins shared his knowledge with Vandewater, but in any event the company had an obligation to determine whether its products were subject to ADDs.  Had Vandewater taken any

1

ISLAND'S OPPOSITION TO DEFENDANTS VANDEWATER INTERNATIONAL, INC. AND NEIL
RUBENS'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 2:17-CV-04393-RGK-KS

efforts to determine whether Welded Outlets were subject to ADDs, it would have found that the DOC viewed them to be butt-weld pipe fittings.

Vandewater finally suggests that none of its actions matter, because it can now articulate an "objectively reasonable" reading of the China Order. But Vandewater never contemporaneously analyzed the China Order, so it cannot invoke that argument as a matter of law. Moreover, especially in light of Island's experience, there is at least a disputed question of fact as to whether a non-reckless investigation would have warned Vandewater away from its after-the-fact reading of the China Order.

Stepping back, Vandewater falsely certified that its Welded Outlets were not subject to an ADD, despite having done nothing to determine if they were. Vandewater used misleading and constantly shifting product descriptions. It routinely entered multiple types of products under a single HTS code in violation of basic Customs law. It adopted new and different HTS codes in an apparent effort to avoid scrutiny under the forged fittings ADD petition. Vandewater even offered to import Welded Outlets without the required "Made in China" marking, telling Island that CBP would be too busy to notice. Because a reasonable jury could conclude that Vandewater made false statements with actual knowledge of, in deliberate ignorance of, or with reckless disregard for the truth, its motion for summary judgment must be denied.

## II.   THE ADMINISTRATIVE RECORD

In 1986, the International Trade Commission (ITC) began investigating whether butt-weld pipe fittings were being unlawfully dumped in the United States. The ITC's reports on butt-weld pipe fittings from Taiwan and China used identical language to describe the products. Both reports state that butt-weld pipe fittings are "used to connect pipe where conditions require permanent, welded connections."

Both reports continue: "*The beveled edges of butt-weld pipe fittings distinguish them from other types of pipe fittings....*"  SDF ¶ 41.

Relying on the ITC's investigation, the DOC imposed ADD orders against carbon-steel butt-weld pipe fittings from Brazil, China, Japan, Taiwan, and Thailand.  SDF ¶ 42.  Because the orders involved the same products, the same industries, and the same distribution channels, the ITC has reviewed and renewed them on a "cumulated" basis.  SDF ¶ 43.

As the ITC has repeatedly observed, the scope of the ADD orders is "essentially the same for all five countries."  SDF ¶ 44.  The scope covers carbon-steel butt-weld pipe fittings having an inside diameter of less than 14 inches, imported in either finished or unfinished form.  *Id.* They all reference an Harmonized Tariff Schedule (HTS) code, but caution that it "is provided for convenience and for customs purposes.  The written product description remains dispositive."  SDF ¶ 45.  The scope descriptions do not reference, let alone incorporate, any industry standards or specifications.  SDF ¶ 46.

The DOC has issued a handful of scope rulings under these ADD orders. Four involve Welded Outlets.  The first dates to the 1990s, when Lloyd "Skip" Perkins, who later worked to build Vandewater's Welded Outlet business, requested a scope ruling for the "Sprink-let" Welded Outlet ("Sprink-let Ruling"). Citing the language of the ITC's Product Description, the DOC ruled that the Sprink-let was a butt-weld pipe fitting:  "a pipe fitting with *beveled edges* that is *permanently joined through welding* falls within the scope of the order on carbon-steel butt-weld pipe fittings from Taiwan."  SDF ¶¶ 47-48. (emphasis added); 57 Fed. Reg. 19602, 19603 (May 7, 1992) (providing notice of the ruling).[1]

---

[1] As described below, the Sprink-let Ruling is a public document available upon request and can be found online.  It has been referenced repeatedly in the administrative record.

In 2018, the DOC issued three rulings concluding that Defendants' Welded Outlets were within the scope of the China Order.  SDF ¶¶ 50-51.  These rulings reasoned, like the ITC reports and the Sprink-let Ruling before them, that Vandewater's Welded Outlets were butt-weld pipe fittings because they "each feature a beveled end connection."  SDF ¶ 50.

## III.   TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT.

As in any case when considering a motion for summary judgment, the Court views the evidence in the light most favorable to the non-movant (here, Island), and "must not weigh the evidence or determine the truth of the matter."  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 461 (9th Cir. 1999).  The Court must draw all reasonable inferences from the evidence in Island's favor.  *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2019 WL 3291582, at *11 (C.D. Cal. June 14, 2019).

In the FCA context, "to survive summary judgment, the relator must produce sufficient evidence to support an inference of knowing fraud."  *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).  Unlike in common law fraud claims, however, the relator "need not prove a 'specific intent to defraud' under the FCA—the Act imposes liability on any person acting 'knowingly,' which includes acting with 'actual knowledge,' as well as acting 'in deliberate ignorance,' or 'in reckless disregard of the truth or falsity of the information[.]' 31 U.S.C. § 3729(b)(1)."  *United States ex rel. Winter v. Gardens Regional Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020); *see also Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016).

### A.   Vandewater falsely certified its Welded Outlets were not subject to ADDs.

In the Form 7501s that Vandewater submitted with every shipment of Welded Outlets, Vandewater certified that the product was not subject to any

4

ADDs.   SDF ¶¶ 55-56.[2]   Vandewater argues that its certifications were truthful (Vandewater MSJ 5–8), but this argument borders on risible for the simple reason that the DOC—the agency charged with interpreting the scope of antidumping duty orders—has authoritatively ruled that Vandewater's Welded Outlets were, in fact, subject to the China Order. Vandewater SUF ¶ 23; SDF ¶ 50.

To be sure, Vandewater has appealed the DOC's ruling to the Court of International Trade (CIT), but the DOC has "broad authority to interpret its own antidumping duty orders." *INA Walzlager Schaeffler KG v. United States,* 108 F.3d 301, 307 (Fed. Cir. 1997).   Accordingly, at this stage, the jury would be free to accept the DOC's ruling.[3]   *See Parsons Co.*, 195 F.3d at 457 ("[T]he question of 'falsity' itself is determined by whether [defendant's] representations were accurate in light of applicable law.").

Vandewater argues that, before 2018, it could not have known the Welded Outlets fell within the scope of the China Order, but any reasonable jury could conclude otherwise.   As noted above, the ITC and the DOC have long viewed products with beveled edges that are welded to pipe systems as butt-weld pipe fittings.   Indeed, the DOC issued a scope ruling in 1992 concluding that the Sprink-let Welded Outlet was within the scope of the ADD order on butt-weld pipe fittings from Taiwan.   SDF ¶ 47.   That ruling is publicly available and, as Island's

---

[2] In Block 2, importers must state an "entry type."   An entry type of "03," for example, is used to denote entries that are subject to ADDs or countervailing duties. SDF ¶ 55.   Vandewater entered its Welded Outlets using entry type "01," meaning "free and dutiable."   Applicable AD/CVD duties must be identified in Blocks 29 and 33 as well, but Vandewater did not do so.   SDF ¶¶ 55-56.

[3] It is exceedingly unlikely that the CIT would overturn any of the scope rulings. First, in ruling against Defendants, DOC issued reasoned rulings that carefully analyzed the facts, the law, and Defendants' counter-arguments.   Second, even if it had been a close case on the merits (and it was not), the CIT reviews scope rulings using a highly-deferential standard.   *See, e.g., Acme Furniture Indus., Inc. v. United States*, 85 F. Supp. 2d 1353, 1355-56 (C.I.T. 2012) (citations omitted) (sustaining DOC's scope determination "in light of the significant deference to which Commerce is entitled in the interpretation of scope provisions").

experience shows, anyone who conducted even cursory due diligence would have located it.  SDF ¶¶ 91-92 & 99.  Moreover, Skip Perkins—the very person who requested and received the Sprink-let Ruling—served as Vandewater's commercial sales agent for about a decade.  SDF ¶ 82.

Defendants' proposed expert, Walter Sperko, says nothing that would entitle Vandewater to summary judgment on falsity.  Mr. Sperko opines that there is an industry understanding that butt-weld pipe fittings require "all the ends" to be welded (Vandewater SUF ¶ 14), but the DOC considered and rejected the "all the ends" argument in 1992 and, again, in 2018. SDF ¶ 47 & 50. Moreover, Mr. Sperko admitted that he had "no idea" what definition was used in the China Order.  SDF ¶ 94.  Finally, there is at a minimum a genuine factual dispute as to the trade usage and industry standards.[4]  Prior to merging with SCI, Anvil International—perhaps the largest domestic producer of Welded Outlets—joined Island in opposing Vandewater's scope request.  SDF ¶ 97 ("Anvil agrees with, and affirms, all of Island's arguments.").  Thus, to the extent any "consensus" exists (Vandewater MSJ 7), the record suggests that it is limited to importers of Chinese Welded Outlets and their retained expert.[5]

### B.    There are triable issues of fact about Vandewater's scienter.

#### 1.    The failure to inquire establishes scienter.

A reasonable jury can find that Vandewater made its false statements knowingly.  § 3729(b)(1).  The FCA defines "knowingly" broadly, to include false claims made in "deliberate ignorance" or in "reckless disregard" of their truth.  § 3729(b)(1)(A)(ii)-(iii); *Universal Health Services, Inc. v. United States*, 136 S. Ct.

---

[4] Given this dispute as to industry usage, Vandewater's reliance on *Atkore Steel Components Inc. v. United States*, 313 F. Supp. 3d 1374 (Ct. Int'l Trade, 2018), and *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82 (Fed. Cir. 2012), is misplaced.

[5] Even with respect to importers there is no clear consensus ██████████████ ███████████████████████████████████████████  SDF ¶ 98.

1989, 1996 (2016).  We agree with Vandewater that the failure "to make simple inquiries which would alert [them] that false [statements] are being submitted" constitutes deliberate ignorance.  (Vandewater MSJ 11 (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (9th Cir. 2016)).)

As to reckless disregard, although the Ninth Circuit has not weighed in, the judicial consensus takes the term to describe "an extreme version of ordinary negligence."  *United States ex rel. K&R Limited P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008); *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997) ("[T]he best reading of the Act defines reckless disregard as an extension of gross negligence," which is "not a 'lesser form of intent'") (citation omitted); *see also United States v. King-Vassel*, 728 F.3d 707, 712–13 (7th Cir. 2013); *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 945 n.12 (10th Cir. 2008).

These standards reflect Congress's intent that the FCA require parties "to make a limited inquiry so as to be reasonably certain" their statements to the Government are truthful.  *United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008) (quoting S. Rep. No. 99-345, at 20 (1986)).  While that inquiry must only be "reasonable and prudent under the circumstances," Congress and the Ninth Circuit have confirmed that "***at least some inquiry [must] be made***."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (quoting S. Rep. No. 99-345, at 21) (emphasis added).  And where a defendant is under an independent "obligation to be familiar with the legal requirements," a jury can conclude he acted in reckless disregard or in deliberate ignorance by "failing to inform himself of those requirements."  *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001).

Because determining whether Vandewater made an inquiry "reasonable and prudent under the circumstances" is necessarily fact- and context-specific, summary judgment is inappropriate as the jury can reasonably weigh the evidence in different

ways.  *United Healthcare Ins. Co.*, 848 F.3d at 1174 (quoting S. Rep. No. 99-345, at 21); *King-Vassel*, 728 F.3d at 713; *United States v. Coloplast Corp.*, 327 F. Supp. 3d 300, 309 (D. Mass. 2018) (noting in FCA context "it is unusual to grant summary judgment on scienter given the fact-intensive nature of the inquiry" (cleaned up)).  Indeed, the Ninth Circuit has repeatedly reversed grants of summary judgment based on the FCA's scienter requirement where a jury could conclude that defendants' deficient investigation constituted at least reckless disregard.[6]

### 2.    A jury could find that Vandewater conducted a reckless ADD investigation.

In the context of importing products into the United States, the "reasonable and prudent" inquiry required is demanding.  Under the Modernization Act of 1993 (Mod Act), importers of record are required to use "reasonable care" to ensure that they enter their goods in compliance with law, including by providing CBP with the "rate of duty applicable to the merchandise."  19 U.S.C. § 1484(a)(1).  Island's expert, Kelli Thompson—a licensed customs broker and former supervisory import specialist with CBP—explains these regulatory requirements.  SDF ¶ 57.

To help the jury determine what a reasonable inquiry entails in the Customs context, Ms. Thompson will explain how the Customs concepts of "reasonable care" and "informed compliance" require importers such as Vandewater to exercise diligence in determining applicable ADDs.  SDF ¶¶ 58-59.  She will explain that importers must establish internal compliance procedures to determine whether goods are subject to ADDs.  SDF ¶ 60.  She will describe why importers must

---

[6] *E.g.*, *Darrig*, 303 F. App'x at 430–31 (holding jury could reasonably conclude defendant acted "at least in reckless disregard"); *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1150 (9th Cir. 2004) (reversing summary judgment for defendants who made false statements without investigating truth of the claim); *Parsons Co.*, 195 F.3d at 465; *United States ex rel. Plumbers & Steamfitters Local Union No. 38 v. C.W. Roen Const. Co.*, 183 F.3d 1088, 1094-95 (9th Cir. 1999) ("knowingly" element can be satisfied where defendant made no effort to obtain clarification).

provide sufficient training to their employees, particularly on Priority Trade Issues such as ADDs.[7]  SDF ¶ 61.  She will also discuss how certain goods and certain countries are more at risk of being subject to ADD—most notably, Chinese steel products.  SDF ¶¶ 64-65.  When importing such goods, a prudent importer will seek guidance from CBP or DOC about whether they are subject to ADDs.  SDF ¶ 66.

Vandewater is a family-owned "importing business" (Vandewater MSJ 8) ███████████████████████████████████████████████ SDF ¶ 70. █

████████████████████████████████████████████████████████

███████████████████████████████████████ SDF ¶ 71.  By falsely claiming that Welded Outlets were not subject to any ADD orders, Vandewater avoided the 182.9% ADD under the China Order—███████████████████

████████████

Despite its China-centric focus and its substantial importing volumes, Vandewater failed to take even basic steps to investigate whether its Welded Outlets were subject to ADDs.  To start, Vandewater's import compliance policies were all but not non-existent.  Vandewater maintained neither written nor unwritten import compliance policies, and it did not provide any training to its employees.  SDF ¶¶ 72-73.  Instead, Vandewater's founder and owner, Neil Ruebens, testified that he was responsible for import compliance and that he relied on his self-taught experience that he claims to have gained while working in marketing and sales at another company.  SDF ¶ 73.  His son, Jordan, and daughter, Shelby, are company employees; when it came to import compliance, they similarly relied upon self-taught experience mostly derived from observing their father.  *Id.*

Neil Ruebens acknowledged that Vandewater, as the importer of record, was responsible for the accuracy of its import paperwork.  SDF ¶ 74.  He claimed to

---

[7] Priority trade issues are CBP's highest enforcement priorities and are covered in many CBP publications.  SDF ¶¶ 62-63.

have been aware of the China Order since the early 1990s, as a result of his work at another company.   Vandewater SUF ¶ 13.   Nevertheless, Vandewater never considered whether its Welded Outlets were subject to ADDs, SDF ¶ 75, never analyzed whether its Welded Outlets were subject to that China Order, and never asked a third-party expert as to whether its Welded Outlets were subject to that Order.   SDF ¶ 76.   Vandewater's customs broker did not recall ever discussing whether Vandewater's Welded Outlets were subject to ADDs. *Id.*

Vandewater suggests that its failure to investigate should be excused because no one ever suggested that Welded Outlets were subject to ADDs.   (Vandewater MSJ 13–15.)   That flips the law on its head:  It is the importer's responsibility to use reasonable care in determining the duties owed on its products.   SDF ¶¶ 58-59 & 74; 19 U.S.C. § 1484(a); *United States v. Golden Ship Trading Co.*, 25 C.I.T. 40, 48 (2001) ("[R]eliance on the exporter and the broker does not remove the obligation to exercise reasonable care and competence to ensure that the statements made on entry documents were correct.").

Vandewater also argues that it acted in good faith by consulting with CBP and a customs broker when it began importing Welded Outlets in 2003, but a reasonable jury could find that Vandewater never asked whether Welded Outlets might be subject to ADDs.   To start, even in Neil Ruebens' telling, he consulted with two CBP import specialists about what HTS code might apply to Welded Outlets, *but he did not ask them about possible ADDs*.   SDF ¶ 77.   He additionally claims to have called Elena Torrey, of the broker Charles Happel & Co., but, again, the purpose of the call was to discuss HTS codes.   SDF ¶ 76. Mr. Ruebens asserted that he "believes" he would have also asked Ms. Torrey about possible ADDs, but he admitted that he has no recollection of actually having done so.   *Id.*  He further admitted that, if he had broached the topic, it would have been limited to checking whether any ADD orders were associated with the HTS code.   *Id.*  As described

10

ISLAND'S OPPOSITION TO DEFENDANTS VANDEWATER INTERNATIONAL, INC. AND NEIL RUBENS'S MOTION FOR SUMMARY JUDGMENT; CASE NO. 2:17-CV-04393-RGK-KS

above, that is not how ADD Orders work; the written scope determines an ADD order's coverage; the HTS numbers are provided for convenience only. Given the lack of corroboration, the transparent credibility issues, the failure to disclose even one of these witnesses in Vandewater's initial disclosures, and Mr. Ruebens' admission that these calls only involved HTS codes, a reasonable jury could conclude that Vandewater did not consult with anyone to determine whether ADDs applied to its Welded Outlets.

Vandewater rhetorically asks what "red flags" it missed. (Vandewater MSJ 11.) As an initial matter, the question distorts the legal standard, because the FCA has no "red flag" requirement. *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1119–20 (N.D. Cal. 2014). In any event, the record reflects that Vandewater missed many red flags. For one, the Form 7501s required Vandewater to certify that its representations were truthful. Certification requirements like this "could serve as a red flag . . . that compliance with certain regulations is required." *Id.* at 1120.

Moreover, if Vandewater had made an effort to satisfy its obligation to take reasonable care, it would have found that the DOC has long regarded Welded Outlets to be butt-weld pipe fittings. Consider Island's experience. In May 2016, Island tasked its new sales manager, Mark Woehrel, with looking into whether Welded Outlets might be subject to any existing trade cases. At the time, Mr. Woehrel had no experience with Welded Outlets, and he had never imported products into the United States. SDF ¶ 91. Yet within just hours, Mr. Woehrel managed to find all the publicly available authorities needed to conclude that Defendants' Welded Outlets were subject to the China Order.

Mr. Woehrel's research began on Google. SDF ¶ 91. There, he found pipe trade cases and "immediately recognized" the relevance of the butt-weld pipe fittings order. *Id.* Upon reading the scope of the China Order, Mr. Woehrel

thought "it seemed to describe the product that is a welded outlet" based on the physical similarities to Island's product. *Id.* From there, he found the relevant sunset review, which described the five countries subject to similar orders along with their scope rulings, including the Sprink-let Ruling. *Id.* And although he could not find the Sprink-let Ruling online, he obtained a copy by simply calling the DOC (using the contact information found in the sunset review).[8]  *Id.*

> Island quickly deduced that Chinese Welded Outlets were subject to ADDs:
>
>> So we had a lot of questions that just revolved around the terminology.  But at the base of it . . . if the sprink-let is the same product, the exact same product as Island's groove welded outlet . . . and the sprink-let was ruled to be within the scope of the law for Taiwan, does it follow that it's also within the scope of the . . . ruling for China.  SDF ¶ 92.

Armed only with Google, a telephone, and a modicum of curiosity, Mr. Woehrel was quickly able to determine that Welded Outlets fell within the scope of the China Order. *Id.*

This experience puts the lie to Vandewater's protest that it had no way to determine the truth or to learn of the Sprink-let Ruling.  (Vandewater MSJ 11.) Given how easy it was for an untrained sales manager with no experience with import laws or Welded Outlets to recognize that Defendants' products were within scope, a reasonable jury certainly could conclude that the company certified that its products were not subject to ADDs despite having failed to conduct the "reasonable and prudent" inquiry the law demands. *United Healthcare Ins. Co.*, 848 F.3d at 1174 (quoting S. Rep. No. 99-345, at 21); *Mackby*, 261 F.3d at 828.[9]

---

[8] In fact, the Sprink-let Ruling is available on a government website that catalogs scope rulings worldwide.  SDF ¶ 99.

[9] Vandewater criticizes Island's expert for not expressing an opinion on whether Welded Outlets are covered by the China Order.  But given that the DOC had

### *3.* **A jury could find that Vandewater made false certifications with actual knowledge or deliberate ignorance.**

A jury also could conclude that Vandewater actually knew or deliberately ignored that its Welded Outlets were subject to ADDs.  For about a decade, Vandewater worked with Skip Perkins to sell its Welded Outlets.   SDF ¶ 82.  Mr. Perkins knew that the DOC viewed Welded Outlets as butt-weld pipe fittings, as he personally requested and received the Sprink-let Ruling.  *Id.*   And while Neil Ruebens denies it, a mutual colleague, Hank Zawada, testified that based on his personal experience with both Mr. Perkins and Mr. Ruebens, he is "sure" that the two gentlemen discussed the Sprink-let Ruling.  *Id.*  A reasonable jury could find, with or without Mr. Zawada's testimony, that Vandewater's long-running relationship with Mr. Perkins supports "an inference of knowing fraud."  *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).

In 2013, around the time that Mr. Perkins passed away, Neil Ruebens advised Island that Vandewater would no longer purchase its Welded Outlets.  SDF ¶ 83.  Mr. Ruebens then offered to sell Chinese Welded Outlets to Island.  *Id.*  He told Island that Vandewater could import the products into the United States without the required "Made in China" marking.  *Id.*  He suggested that Island could then mark and market them as having been "Made in the USA."  *Id.*  Mr. Ruebens assured Island that CBP would be too busy to notice.  *Id.*   As with Vandewater's relationship with Mr. Perkins, a reasonable jury could find that Mr. Ruebens' proposal supports "an inference of knowing fraud."

A jury could do the same from Vandewater's failure to follow other Customs laws.  For example, Vandewater typically used a single HTS code to enter a variety of products falling under different HTS codes.  SDF ¶ 79.  Often, the HTS code that

---

already authoritatively ruled on the scope issues, Ms. Thompson was not asked to consider them as part of her engagement.  SDF ¶ 33.

Vandewater chose allowed it to import these products without paying any duty whatsoever. *Id.* As Ms. Thompson will explain, this was plainly unlawful. SDF ¶ 78. Vandewater now claims this was a mistake, SDF ¶ 80, but a jury could conclude otherwise. Moreover, the jury would be free to consider this practice (in connection with all other evidence) in determining whether Vandewater recklessly failed to take even basic steps to comply with the import laws. *Anderson v. Liberty Lobby¸ Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."); *Smith v. Maschne*, 899 F.2d 940, 949 (10th Cir. 1990) (reversing summary judgment when circumstantial evidence shows "suspicious timing" and coincidences).

A jury could also conclude that Vandewater intentionally misdescribed its Welded Outlets to CBP. █████████████████████████████ ████████████████████████████████████████ SDF ¶ 84. Welded Outlets are none of these things. SDF ¶ 85. Neil Ruebens sought to evade responsibility for these misrepresentations by attributing them to Vandewater's customs brokers or suppliers. SDF ¶ 86. But, as even Mr. Ruebens acknowledged, it was Vandewater's obligation, as the importer, to ensure the accuracy of its CBP submissions. SDF ¶¶ 59 & 74. Vandewater used these misleading product descriptions for years. A jury would be free to infer that Vandewater chose to use these inaccurate descriptions to deceive the CBP and to avoid scrutiny of its imported products.

Finally, a jury could also reasonably find that Vandewater intentionally sought to evade duties after learning of the forged fittings ADD petition. ██████ ████████████████████████████████████████ ████████████████████████████████████████ SDF ¶ 88. ███████████████████████████████

14

1  ███████████████████████████████████████████████ *Id.* ████████

2  ███████████████████████████████████████████████████████████

3  ███████████████████ *Id.* Vandewater claims this was an innocent mistake. SDF ¶ 89

4  ("this whole period of time [was] a bunch of mistakes and miscommunications.").

5  Given the proximity to learning about the forged fittings petition, however, a jury

6  could find the conduct amounted to deliberate manipulation of HTS codes.

### 4. Vandewater did not adopt an objectively reasonable interpretation of the China Order.

9  Vandewater argues that none of its actions matter, as a matter of law, because

10  it has come up with a reasonable reading of the China Order that, in its view,

11  excludes Welded Outlets. (Vandewater MSJ 12.) Vandewater relies primarily on a

12  footnote in a Supreme Court decision involving the meaning of "willful" in the

13  Fair Credit Reporting Act. *Safeco Ins. Company of Am. v. Burr*, 551 U.S. 47, 70

14  n.20 (2007) (willfulness cannot be found "when the company's reading of the

15  statute is objectively reasonable"). The argument should fail for several reasons.

16  To start, Vandewater has no right to make this argument. *Safeco* and the

17  other case Vandewater cites involved parties who actually studied and formed

18  beliefs about the regulations at issue.[10] By Vandewater's own admission, however,

19  it never analyzed whether the China Order covered Welded Outlets. SDF ¶ 75.

20  This case thus fits the mold of *Siebert*, 75 F. Supp. at 1119–20, which Vandewater

21  does not cite. In that FCA case, the court found that the defendant could not have

22  formed an objectively reasonable belief about certain legal obligations because the

23  defendant admittedly "never even read the regulations and had no knowledge of

24  them." *Id.* at 1119. The court determined the reasonable-dispute line of cases did

---

[10] *See id.* (noting Safeco argued "good-faith reliance on legal advice" as defense); *Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1115–16 (9th Cir. 2014) (concluding no scienter possible where defendant "explicitly described its billing practices" to the state government which acknowledged "conflicting, unclear, or ambiguous misrepresentations have been made to providers").

15

ISLAND'S OPPOSITION TO DEFENDANTS VANDEWATER INTERNATIONAL, INC. AND NEIL RUBENS'S MOTION FOR SUMMARY JUDGMENT; CASE NO. 2:17-CV-04393-RGK-KS

"not have any bearing" when the defendant never formed a belief about the regulation. So too here.[11] Vandewater also distorts the Ninth Circuit's decision in *Parsons* by conflating "good faith" and "reasonable." (Vandewater MSJ 12.) As Vandewater never analyzed the China Order, it cannot have relied on a good-faith interpretation of it.

    *Safeco* is also inapplicable here because Vandewater has not shown any ambiguity in the China Order. *See Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1209 (C.D. Cal. 2007). Vandewater contends that DOC must have viewed the China Order as ambiguous because it considered the so-called (k)(1) factors. (Vandewater MSJ 4, 15.) Not so. The DOC was required to consider those factors. "Whether the order is ambiguous or not, Commerce's regulations are unambiguous—it '*will* take into account' the (k)(1) criteria in conducting a scope determination." *TMB 440AE, Inc. v. United States*, 399 F. Supp. 3d 1314, 1320 (C.I.T. 2019) (quoting 19 C.F.R. § 351.225(k)) (emphasis added by *TMB 440AE*). DOC first found that "Vandewater's description of its [Welded Outlets] matches the description of the scope covering butt-weld pipe fittings," and then went on to conclude the (k)(1) factors "*further support* Commerce's interpretation of the scope." SDF ¶ 52 (emphasis added).

    Even if the Court were to consider Vandewater's *post hoc* interpretation of the Order, triable issues on scienter would remain, because determining whether an interpretation is objectively reasonable involves "mixed questions of fact and law best resolved by the jury." *Coloplast Corp.*, 327 F. Supp. 3d at 310; *United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 71 (D. Mass. 2011).

---

[11] Recall that the FCA reaches deliberate ignorance and reckless disregard. 31 U.S.C. § 3729(b). To grant Vandewater immunity as a matter of law based on after-the-fact interpretation of an ADD Order that it never looked at would read these elements out of the statute whenever sophisticated legal counsel or retained experts come up with alternative interpretations of the regulation at issue. *Parsons Co.*, 195 F.3d at 460 (explaining defendant's "good faith interpretation" defeats scienter, not whether that interpretation was "correct or 'reasonable'").

These questions are for the jury because they require weighing the facts with respect to both "the reasonableness of defendant's interpretation of the regulation and suggestions of government warnings away from that interpretation." *Coloplast Corp.*, 327 F. Supp. 3d at 310 (citing cases denying summary judgment).

Here, a reasonable jury could find that the entire administrative record warned Vandewater away from its *post hoc* view. *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015) (whether defendants had been warned away "cannot readily be labeled as a "purely legal" question"); *United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1051 (C.D. Cal. 2016) (citing *Purcell*). The DOC's 2018 scope rulings were neither surprising nor unpredictable; they accorded with the entirety of the administrative record. As even Vandewater's expert admits, Welded Outlets feature beveled edges, and they must be permanently welded to pipes to perform their function. SDF ¶ 93. These are the two characteristics that the ITC and DOC have always used to distinguish butt-weld pipe fittings from other types of pipe fittings. SDF ¶¶ 41, 48, & 50.

Moreover, the arguments Vandewater now makes to support its claim that its Welded Outlets are not butt-weld pipe fittings have all been rejected before. For example, the company argues that Welded Outlets are not butt-weld pipe fittings because one end is threaded or grooved (Vandewater MSJ 3), but the Sprink-let Ruling explicitly rejected that argument. SDF ¶ 47. Similarly, Vandewater claims that Welded Outlets cannot be butt-weld pipe fittings because conditions in fire protection systems do not require permanent welded connections (Vandewater MSJ 3), but the Sprink-let Ruling applied the same standard. SDF ¶ 47 ("Butt-weld pipe … fittings are used … *where conditions requirement permanent, welded connections*") (emphasis added).

Vandewater argues the Sprink-let Ruling should not matter because it was not "precedential" and was issued under the ADD order for butt-weld pipe fittings

from Taiwan. (Vandewater MSJ 3–4.) But the two orders are closely linked: The ITC used identical language to describe butt-weld pipe fittings in its reports on China and Taiwan, it has since reviewed and renewed the China and Taiwan orders on a "cumulated" basis, and it has remarked that the scope of these orders is "essentially the same." SDF ¶¶ 43-44. And notably, when co-defendants Sigma and ▮ read the Sprink-let Ruling they actually were warned away: They admitted that their products were likely subject to ADDs and they stopped importing them from China. SDF ¶¶ 95-96. Given these facts, as well as Island's own experience, a jury could find that, had Vandewater fulfilled its obligation "to take reasonable steps to ensure [its] compliance" with Customs laws, the Sprink-let Ruling and the administrative record would have warned it away from its proffered interpretation. *Amgen*, 812 F. Supp. 2d at 71.

## IV.   SCOPE RULING REQUESTS CANNOT DEFEAT FCA CLAIMS.

Vandewater's liability is not limited under the reasoning of *United Steel and Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020). That case did not involve the FCA, but turned on an analysis of CBP's regulations regarding liquidation—regulations that have no application here—and a determination that the regulations did not "allow suspension of liquidation before a scope inquiry." *Id.* at 801 (discussing 19 C.F.R. § 351.225(l)(3)).

Vandewater points to *zero* authority for the proposition that liquidation is at all relevant in an FCA case. And for good reason: This case is not about second-guessing CBP's collection of duties, it is about Defendants' knowing submission of false statements that wrongfully deprived the Government of what it was owed. The more apt analogy is to the Government's authority under the Customs laws to impose civil penalties and collect additional duties where importers "by fraud, gross negligence, or negligence" enter merchandise using "any document or electronically transmitted data or information . . . which is material and false." 19

U.S.C. § 1592(a).  As the Court of International Trade has held "neither liquidation nor the general concept of 'finality' bar the recovery of duties or a civil penalty under § 1592."  *United States v. Great Neck Saw Mfrs, Inc.*, 311 F. Supp. 3d 1337, 1345 (C.I.T. 2018).   There, the court held that liquidation was no barrier to subsequent collection of duties and penalties because "lawful duties" are those that the United States would have collected but for the importer's fraud, gross negligence, or negligence in submitting materially false statements. *Id.*

The same logic applies here in the FCA context.  The Government was deprived of ADDs because Vandewater knowingly certified that no such duties applied.  CBP relied on Vandewater's false declarations, and liquidated the entries without collecting ADDs as a result of Vandewater's false statements.  Just as section 1592 ensures that importers cannot escape liability for their wrongful false statements simply because they at first go undetected, so too does the FCA permit full recovery.  If a jury finds against Vandewater, CBP's liquidation regulations would not affect the amount of recoverable damages as the verdict would establish that Vandewater contemporaneously knew or was reckless in not knowing that Cooplets were subject to ADDs.

Vandewater's argument that there can be no FCA liability because the DOC only issued the Vandewater scope ruling in 2018 is similarly meritless. (Vandewater MSJ 17.)  In support of this proposition, Vandewater cites the out-of-circuit decision *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1226 (10th Cir. 2017), which says that an established duty for purpose of reverse false claims is "one owed at the time the improper conduct occurred, not a duty dependent on a future discretionary act."  But the China Order has been on the books since 1992.  57 Fed. Reg. 29702 (July 6, 1992).  And that same year, the DOC publicly stated it viewed products materially indistinguishable from

Vandewater's as within the scope of an ADD order which itself has been viewed as materially indistinguishable from the China Order.  SDF ¶¶ 44, 47, & 48.

Under Vandewater's theory, an importer is never under an obligation to pay antidumping duties unless a scope ruling says so.  Vandewater envisions a world where importers can knowingly evade owed duties, wait until CBP, DOC, or a relator such as Island catches them, and only then seek a scope ruling.  The law does not adopt such a "heads I win, tails you lose" theory.  Under the Mod Act's framework of informed compliance and reasonable care, Vandewater had to inform itself of all the duties owed on their imported goods.

## V.     CONCLUSION

For all these reasons, Vandewater's motion for summary judgment should be denied.

Dated: April 27, 2020                           MAYER BROWN LLP

                                                */s/Matthew H. Marmolejo*
                                                Kelly B. Kramer
                                                Matthew H. Marmolejo
                                                C. Mitchell Hendy
                                                Attorneys for Relator
                                                ISLAND INDUSTRIES, INC.