1   Carmen Lo (SBN 280441)
    Email: carmen.lo@whitecase.com
2   WHITE & CASE LLP
    555 South Flower Street, Suite 2700
3   Los Angeles, CA  90071-2433
    Telephone:  (213) 620-7700
4   Facsimile:  (213) 452-2329

5   Lucius B. Lau (*pro hac vice*)
    Email: alau@whitecase.com
6   James P. Gagen (*pro hac vice*)
    Email: jgagen@whitecase.com
7   WHITE & CASE LLP
    701 13th Street, N.W.
8   Washington, DC 20005-3807
    Telephone:  (202) 626-3600
9   Facsimile:  (202) 639-9355

10  Attorneys for Defendant,
    SIGMA CORPORATION
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15  UNITED STATES OF AMERICA *ex*          Case No. 2:17-cv-04393-RGK-
    *rel.* ISLAND INDUSTRIES, INC.,        KS
16
                    Plaintiffs,            **DEFENDANT SIGMA**
17                                         **CORPORATION'S REPLY**
                                           **BRIEF IN SUPPORT OF ITS**
18          v.                             **MOTION FOR SUMMARY**
                                           **JUDGMENT**
19  VANDEWATER INTERNATIONAL
    INC., et al.,                          Date: May 18, 2020
20                                         Time: 9:00
                    Defendant.             Courtroom: 850
21                                         Judge: Hon. R. Gary Klausner

22

23

24

25

26

27

28

## I. INTRODUCTION

In this False Claims Act case, Island bears the burden of proof, a point that Island does not contest. By its motion for summary judgment, Sigma asserted that there is an absence of evidence to support Island's case and that, as a result, Island is unable to meets its burden. Island has responded to Sigma's motion with a litany of facts and attorney arguments that, in its view, create triable issues. In reality, Island has failed to show that there is a genuine issue of material fact. *Accord Ghazaryan v. Experian Info. Sols., Inc.*, 2017 U.S. Dist. LEXIS 121691, at *4 (C.D. Cal. Jan. 4, 2017) ("The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Island merely "attacks" or attempts to "discredit" Sigma's evidence, which is insufficient. *Id.*

There are at least three different reasons why Sigma is entitled to summary judgment. For ease of reference, Sigma first presents those arguments that do not involve disputed facts and then those arguments where Island asserts that disputed facts are at issue.

## II. ARGUMENT

### A. Sigma Is Entitled To Summary Judgment Because The Government's Damages Are Limited To Entry Numbers 75439348 And 75449719, Both Of Which Have Been Liquidated

Island does not dispute the fact that entry numbers 75439348 and 75449719 have been liquidated. SUF ¶ 60. Island also does not dispute the fact these were the only two entries of Sigma's welded outlets that (1) were made one year before December 11, 2018 (and that remained suspended as of December 11, 2018); or (2) were made on-or-after December 11, 2018. SUF ¶ 59. Given these undisputed facts, Sigma is entitled to summary judgment in light of the Federal Circuit's decision in *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020), and the common law doctrine of "superseding cause," which relieves Sigma

- 1 -

1    of liability due to the erroneous liquidation of these two entries.

2         According to Island, Sigma has not identified any authority for the

3    proposition that liquidation is relevant to a False Claims Act case.  Island Br. at 19.

4    Island is incorrect.  Sigma identified 19 U.S.C. § 1514(a), which provides that

5    liquidations are "final and conclusive" on all parties, including the United States,

6    barring certain exceptions not relevant here.  Sigma Mot. at 20.

7         Island argues that the "more apt analogy" is 19 U.S.C. § 1592.  Island Br. at

8    19.  That provision allows for the imposition of penalties for the introduction of

9    merchandise into the United States by means of material and false statements (or

10   material omissions).  19 U.S.C. § 1592(a)(1).  As relevant here, subsection (d) of

11   that statute provides as follows:  "Notwithstanding section 1514 of this title, if the

12   United States has been deprived of lawful duties, taxes, or fees as a result of a

13   violation of subsection (a), the Customs Service shall require that such lawful

14   duties, taxes, and fees be restored, whether or not a monetary penalty is assessed."

15   19 U.S.C. § 1592(d).  Thus, by its plain terms, 19 U.S.C. § 1592(d) provides a

16   limited exception to the finality of liquidation provision contained in 19 U.S.C. §

17   1514.  Had Congress wanted to expand this exception to include recovery under the

18   False Claims Act, it would have made that intent clear by including similar

19   language in the False Claims Act.  It did not.  The Court should honor the policy

20   choices made by Congress and decline Island's invitation to expand 19 U.S.C. §

21   1592(d) beyond its intended effect.

22        *United States v. Great Neck Saw Mfrs., Inc.*, 311 F. Supp. 3d 1337 (Ct. Int'l

23   Trade 2018) (Island Br. at 19), does nothing to change this analysis because that

24   case involved a violation of 19 U.S.C. § 1592.  *See id.* at 1345 ("neither liquidation

25   nor the general concept of 'finality' bar the recovery of duties or a civil penalty

26   under § 1592").

27        Island's only response to *United Steel* is that it was not a False Claims Act

28   case.  Island Br. at 19.  But that point is irrelevant.  In *United Steel*, the Federal

1    Circuit held that informal Commerce scope inquiries (like the one done for Sigma)

2    have limited retroactive effect.  The Federal Circuit rejected the position originally

3    taken by Commerce that an affirmative scope ruling should be retroactively applied

4    to the date of the original order (this is precisely the position advocated by Island).

5    Rather, the Federal Circuit affirmed the revised suspension of liquidation

6    instructions issued by Commerce that limited suspension of liquidation to the date

7    of the final scope ruling.  947 F.3d at 798, 803.

8         As to Sigma, Commerce issued suspension of liquidation instructions that are

9    in accord with the *United Steel* holding.  It is undisputed that after Commerce

10   issued its scope ruling on December 11, 2018 (SUF ¶ 45), Commerce then issued

11   instructions to CBP concerning its Sigma scope ruling (SUF ¶ 57) and, per those

12   instructions, CBP was directed to continue the suspension of liquidation of Sigma's

13   Unilet and Safelet welded outlets, with an effective date of December 11, 2018

14   (SUF ¶ 58).  These undisputed facts all support summary judgment for Sigma.

15        The same statutory and regulatory scheme that authorizes Commerce to

16   clarify the scope of its antidumping duty orders **limits** the application of

17   antidumping duties when Commerce determines that merchandise is covered by

18   one of those orders.  Liability in a reverse-False Claims Act case attaches when a

19   person "knowingly makes, uses, or causes to be made or used, a false record or

20   statement material to an **obligation to pay or transmit money** or property to the

21   Government, or knowingly conceals or knowingly and improperly avoids or

22   decreases an **obligation to pay or transmit money** or property to the Government .

23   . . ."  31 U.S.C. § 3729(a)(1)(G) (emphasis added).  Per Commerce's scope ruling

24   for Sigma (interpreted in the light of *United Steel*), the "obligation to pay or

25   transmit money" only applies to two entries:  entry numbers 75439348 and

26   75449719.  But both of those entries have been liquidated.

27        According to Island, "Sigma has pointed to no court that has suggested the

28   concept of superseding cause applies in FCA cases . . . ."  Island Br. at 20.  On the

contrary, on page 19 of its motion, Sigma quoted *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1999 n.2 (1986), for the proposition that the False Claims Act, with the exception of scienter, is presumed to retain "all other elements of common-law fraud that are consistent with the statutory text . . . ." The *Escobar* Court then looked to the Restatement (Second) of Torts to illustrate the metes-and-bounds of common law fraud (*id.* at 1999-2000), a practice followed by the Seventh Circuit to understand the meaning of causation in False Claims Act cases (*United States v. Luce*, 873 F.3d 999, 1011-12 (7th Cir. 2017)).  As reflected in the Restatement, a "superseding cause" is a subcategory of causation.  Restat. 2d of Torts § 440.

The common law doctrine of superseding cause applies with full force in this instance because the erroneous liquidation of entry numbers 75439348 and 75449719 was an unforeseeable event done by a third party (CBP) that broke the chain of causation.  Once liquidation occurs, "any question relating to the amount of duties to be applied to those entries is rendered moot."  *Shangdong Huarong Mach. Co. v. United States*, 32 C.I.T. 1316, 1319 (2008).

**B.      Sigma Is Entitled To Summary Judgment Because Its Position That No Antidumping Duties Are Owed Is Objectively Reasonable**

On the Form 7501 accompanying each entry of welded outlets imported into the United States, Sigma did not indicate that antidumping duties were due.  This position is objectively reasonable.

Island never responds to Sigma's arguments on the merits as to why its position is objectively reasonable.  As explained by Sigma on page 16 of its motion, (1) the Federal Circuit has held that terms of an antidumping duty order should be construed, to the extent possible, with trade usage (*Arcelormittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012)); (2) the *China Butt-Weld Order* utilizes the term "butt weld"; and (3) Sigma's expert, Walter Sperko, has testified that there are industry standards governing what a butt-weld fitting is, and

- 4 -

1    Sigma's welded outlets are not butt-weld fittings within the meaning of those

2    standards.  Island never addresses *Arcelormittal* and there is no admissible evidence

3    rebutting the Sperko report (SUF ¶ 136 is inadmissible hearsay).  Thus, the Court

4    should deem this issue conceded.

5         Rather than address Sigma's argument on the merits, Island makes a

6    procedural argument:  Sigma cannot benefit from the "objectively reasonable"

7    standard because Sigma "never read the China ADD Order or analyzed whether it

8    applied to Welded Outlets."  Island Br. at 16.  Of course, there was never an

9    occasion for Sigma to review the *China Butt-Weld Order* in light of the undisputed

10   fact that the company only became aware of that order in late 2017 — after Island

11   filed its complaint.  SUF ¶ 38.  But that is not the issue.  There is no legal

12   requirement that importers read each-and-every antidumping duty order involving a

13   particular country to ascertain whether antidumping duties might be owed.  Island

14   points to none.

15        The lack of a legal requirement for importers to review all possible

16   antidumping duty orders distinguishes this case from *Siebert v. Gene Security*

17   *Network, Inc.*, 75 F. Supp. 3d 1108 (N.D. Cal. 2014) (Island Br. at 16).  The

18   defendant in that case falsely certified compliance with accounting regulations, yet

19   later admitted that its employees never read the regulations or even had knowledge

20   of them.  *Id.* at 1119.  In denying the defendant's motion for partial summary

21   judgment on the question of "knowledge," the Court noted that "a certification

22   requirement, like the one presented here, could serve as a red flag to an applicant

23   that compliance with certain regulations is required." *Id.* at 1120.

24        Pursuant to *Safeco*, a defendant could have subjective bad faith and yet still

25   prevail on whether it acted "knowingly" or "recklessly" provided that its reading of

26   the statute is objectively reasonable.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47,

27   70 n.20 (2007).  If Island is correct that a defendant must affirmatively review a

28   governmental order in question in order to benefit from the objectively reasonable

- 5 -

1  standard, then a defendant with subjective bad faith would receive better treatment
2  than a defendant who is unaware of a governmental order, but whose position on
3  the merits is objectively reasonable.

4      The *Safeco* holding is not based on the proposition that a defendant must
5  review governmental orders in order for the defendant's interpretations to be
6  objectively reasonable.  Even before *Safeco*, a good-faith interpretation always
7  precluded liability.  *See United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457,
8  460 (9th Cir. 1999) ("A contractor relying on a good faith interpretation is not
9  subject to liability, not because his or her interpretation was correct or 'reasonable'
10  but because the good faith nature of his or her action forecloses the possibility that
11  the scienter requirement is met.").  Rather, *Safeco* stands for the proposition that
12  subjective intent can be disregarded, so long as the defendant's views on the merits
13  are objectively reasonable.  *See United States ex rel. Hixson v. Health Mgmt. Sys.*,
14  613 F.3d 1186, 1191 (8th Cir. 2010) ("to prevail here the relators must show that
15  there is ***no reasonable interpretation*** of the law that would make the allegedly false
16  statement true – in this case, that the defendants could have no reasonable basis to
17  believe that they could not obtain reimbursement in medical malpractice cases")
18  (emphasis added).

19      The fact that Sigma's views on the merits are objectively reasonable is
20  supported by the manner in which Commerce issued its scope ruling.

21      Island argues that Commerce's scope regulation, 19 C.F.R. § 351.225(k) and
22  the Court of International Trade's decision in *TMB 440AE, Inc. v. United States*,
23  399 F. Supp. 3d 1314 (Ct. Int'l Trade 2019), mean that Commerce must consider
24  the so-called "(k)(1)" factors in every case, even when the scope of the order is
25  clear.  Island Br. at 17.  By this argument, Island ignores the fact that the Federal
26  Circuit has construed Commerce's scope regulation to mean that Commerce may
27  only "consider" the (k)(1) factors if the language of the order is "ambiguous." *Mid*
28  *Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir. 2013).

1   Sigma discussed *Mid Continent* in its initial brief (Sigma Mot. at 16), but Island

2   does not address this decision.  Nor does Island ever explain how a decision from

3   the Court of International Trade (*TMB*) should be given more weight than binding

4   precedent from the Federal Circuit.  Applying the binding precedent of *Mid*

5   *Continent* to Commerce's scope ruling for Sigma's products means that the *China*

6   *Butt-Weld Order* was ambiguous as to Unilet and Safelet.

7          Until Commerce issued its scope ruling on December 11, 2018, the question

8   of whether Unilet and Safelet were covered by the *China Butt-Weld Order* was

9   unresolved.  Sigma's belief that no antidumping duties were owed on these

10   products is objectively reasonable (a position not challenged by Island), thus

11   precluding a finding that Sigma "knowingly" made a false claim.

12          **C.    Sigma Is Entitled To Summary Judgment Because Sigma Did Not**

13                   **Act With Knowledge That It Was Making False Claims**

14                   **1.    Island Provides No Admissible Evidence Suggesting That**

15                           **Sigma Acted With Actual Knowledge**

16          Although Island proposes a statement of fact that Sigma acted with actual

17   knowledge in certifying that its welded outlets were not subject to antidumping

18   duties (SUF ¶ 138), in reality there is no evidence whatsoever to support this

19   proposition.  It is undisputed that Sigma first became aware of the *China Butt-Weld*

20   *Order* in late 2017 (after Island filed its complaint) in connection with a

21   government investigation into forged steel fittings (SUF ¶ 38), thus negating any

22   suggestion that Sigma had "actual knowledge" that antidumping duties were owed.

23                   **2.    Island Provides No Admissible Evidence Suggesting That**

24                           **Sigma Acted With Deliberate Ignorance**

25          In the Ninth Circuit, "deliberate ignorance" equates to the "ostrich type"

26   situation where a defendant fails to make simple inquiries that that would alert him

27   that false claims are being submitted.  *See* Sigma Mot. at 8; Island Br. at 7 (both

28   citing *United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008)).

1    In its motion, Sigma established that it did, in fact, make more than a limited

2    inquiry as to whether antidumping duties were owed in light of its consultation with

3    its licensed customs broker, which both CBP and the relevant legislative history

4    recognize is an indication of reasonable care.  Sigma Mot. at 9-11.  Sigma made

5    this showing by reference to admissible evidence demonstrating that it had a

6    consistent, regular practice of consulting with its customs broker concerning new

7    products on the specific question of whether antidumping duties would be owed.

8    *Id.* at 10.  Such evidence is admissible pursuant to Rule 406 of the Federal Rules of

9    Evidence, even on summary judgment.  *Id.* at 10-11.

10    In its response to Sigma's statement of undisputed facts, Island goes to great

11    lengths in an attempt to show that Sigma's practice of consulting with its customs

12    broker is disputed.  *See*, *e.g.*, SUF ¶ 3.  But Island's arguments are merely an

13    "attack" on Sigma's evidence, which this Court has held is insufficient to defeat

14    summary judgment.  *Ghazaryan*, 2017 U.S. Dist. LEXIS 121691, at *4.  Every

15    Sigma witness who has testified on this question is personally aware of Sigma's

16    practice of consulting with its customs broker and this testimony spans the entire

17    relevant time period.  SUF ¶ 3 (Bhattacharji (aware of this practice for the 2010-

18    2011 time period); Rona (aware of this practice for the 2012 to 2017 time period);

19    Velazquez (aware of this practice for the 2001 to 2020 time period)).   Critically,

20    there is no evidence suggesting that this practice was not followed.

21    Island argues that *Fort Hall Landowners Alliance, Inc. v. BIA*, 407 F. Supp.

22    2d 1220 (D. Idaho 2006), supports its position that Sigma has not established a Rule

23    406 practice (Island Br. at 12), but *Fort Hall* is factually distinct.  In that case, the

24    proponent of the practice failed to present evidence of the practice during a three-

25    year period, and the purported practice was contradicted by both testimony and

26    documents.  *Id.* at 1227.

27    Island criticizes Sigma for not disclosing certain former Sigma employees

28    who were involved in the consultation process (Island Br. at 11), but the initial

1    disclosure requirement only pertains to individuals "that the disclosing party may

2    use to support its claims or defenses . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(i).  If

3    Island believed that these former employees had information that might support its

4    case, then Island should have issued third-party subpoenas to compel their

5    testimony.

6        Island's assertion that Sigma only "rarely" reached out to its customs broker

7    for antidumping duty advice (Island Br. at 12), is belied by the testimony it cites for

8    this proposition.  The fact that Ms. Velazquez reached out to the customs broker "a

9    handful of times" during a nine-month period between July 2019 and March 2020

10   (SUF ¶ 109) does not diminish Sigma's practice;  in fact, Ms. Velazquez's

11   testimony shows that Sigma was, in fact, putting its practice into effect.

12   ### 3.    Island Provides No Admissible Evidence Suggesting That

13   ### Sigma Acted With Reckless Disregard

14       Island agrees that "reckless disregard" for purposes of the False Claims Act

15   means "an extreme form of ordinary negligence" or "an extension of gross

16   negligence."  Island Br. at 6.  For this reason, Island's proffered expert testimony of

17   Kelli Thompson should be rejected.  Ms. Thompson purports to be an expert on

18   "reasonable care," but that lower standard of care is irrelevant for purposes of the

19   False Claims Act.  *See United States ex rel. Hochman v. Nackman*, 145 F.3d 1069,

20   1073 (9th Cir. 1998) (Congress included the knowledge requirement to make firm

21   "its intention that the act not punish honest mistakes or incorrect claims submitted

22   through mere negligence") (citations omitted); *see also In re Novatel Wireless Sec.*

23   *Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (granting motion to exclude

24   expert testimony:  "the Court finds that Dr. Cornell's analysis is based on a loss

25   causation standard that is incompatible with that set forth by the Ninth Circuit").

26       Island criticizes Sigma for not reviewing the *China Butt-Weld Order*, but

27   identifies no legal requirement that importers review every possible antidumping

28   duty order before importation.  CBP's Reasonable Care publication does not

- 9 -

1   impose such a requirement.  Ex. K (Dkt. 167-17).  Nor is such a requirement seen

2   in the relevant legislative history.

3     According to Island, Sigma's import compliance process was somehow

4   inadequate (Island Br. at 10), but that argument cannot be reconciled with the July

5   2013 Focused Assessment conducted by CBP.  Contrary to Island's view, all

6   reasonable jurors would conclude that CBP reviewed Sigma's internal controls

7   concerning antidumping duties.  *See* SUF ¶ 25; Sigma FA at SIGMA-0003637

8   (Dkt. 167-5) ("Analyzed the sample items above and assessed each item's

9   compliance with applicable laws and regulations, including:  . . . Title 19 of the

10  CFR, 351 – ***Antidumping and Countervailing Duties* . . .**") (emphasis added).

11    Island acknowledges that Sigma has an import compliance manual, but states

12  that Sigma did not consistently follow that manual.  Island Br. at 10.  Because

13  compliance manuals may impose requirements beyond what the law requires, no

14  meaningful conclusions can be drawn when a company fails to follow those internal

15  procedures.  *See United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir.

16  2006) ("To hold otherwise – at least in the absence of other evidence of actual

17  knowledge – would effectively require the courts to punish companies for

18  establishing internal procedures that are more robust than the law requires").

19    Island also argues that Sigma somehow had an affirmative duty to find the

20  Sprink-let scope ruling (Island Br. at 15), but Island never responds to the cases and

21  argument at pages 14 – 15 of Sigma's motion demonstrating that scope rulings do

22  not have precedential value.  On a related note, Island distorts the testimony of a

23  Sigma witness (Island Br. at 5), who merely said that "***[i]f the Sprink ruling***

24  ***stands***, then we shouldn't be bringing in the product because we have to pay anti-

25  dumping."  Bhattacharji Dep. at 113:14-22 (Dkt. 167-9) (emphasis added).

26  **III.   CONCLUSION**

27    For these reasons and the reasons stated in Sigma's motion for summary

28  judgment, the Court should grant Sigma's motion and enter judgment in its favor.

1

2       Dated:  May 4, 2020                          Respectfully submitted,

3                                                    WHITE & CASE LLP

4                                                    By:   _/s/ Lucius B. Lau_
                                                     Lucius B. Lau (*pro hac vice*)
5                                                    James P. Gagen (*pro hac vice*)
                                                     701 13th Street NW
6                                                    Washington, DC 20005
                                                     alau@whitecase.com
7                                                    jgagen@whitecase.com

8                                                    Carmen Lo (SBN 280441)
                                                     555 South Flower Street, Suite 2700
9                                                    Los Angeles, CA 90071-2433
                                                     Telephone: (213) 620-7700
10                                                   Facsimile: (213) 452-2329
                                                     carmen.lo@whitecase.com
11
                                                     Attorneys for Defendant
12                                                   SIGMA CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          **- 11 -**

1
2

## <u>CERTIFICATE OF SERVICE</u>

3       I hereby certify that on May 4, 2020, Defendant Sigma Corporation's

4  ("Sigma's") Reply Brief in Support of Motion for Summary Judgement and

5  accompanying documents in Case No. 2:17-cv-04393-RGK-KS was served via

6  mail (UPS) upon Siy Belfi, Director of Allied Rubber & Gasket Company at 3145

7  Tiger Run Ct., Suite 105, Carlsbad, CA 92010.

8
9  Dated:  May 4, 2020                    WHITE & CASE LLP

10                                         By:  */s/ Lucius B. Lau*
                                          Lucius B. Lau (*pro hac vice*)
11                                         James P. Gagen (*pro hac vice*)
                                          701 13th Street NW
12                                         Washington, DC 20005
                                          alau@whitecase.com
13                                         jgagen@whitecase.com

14                                         Carmen Lo (SBN 280441)
                                          555 South Flower Street, Suite 2700
15                                         Los Angeles, CA 90071-2433
                                          Telephone: (213) 620-7700
16                                         Facsimile: (213) 452-2329
                                          carmen.lo@whitecase.com

17                                         Attorneys for Defendant
18                                         SIGMA CORPORATION

19
20
21
22
23
24
25
26
27
28

**- 12 -**