RYAN M. SALZMAN (SBN 299923)
Ryan.Salzman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067-1517
Telephone:  310-203-4000
Facsimile:   310-229-1285

THOMAS KELLY, JR. (*pro hac vice*)
Thomas.Kelly@faegredrinker.com
JOSEPH RILLOTTA (*pro hac vice*)
Joseph.Rillotta@faegredrinker.com
JOIE HAND (*pro hac vice*)
Joie.Hand@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Ste. 1100
Washington, DC 20005
Telephone:  202-230-5360
Facsimile:   202-842-8465

Attorneys for Defendants
***VANDEWATER INTERNATIONAL, INC. AND NEIL RUEBENS***

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex. rel. ISLAND INDUSTRIES, INC., <br><br>Plaintiff, <br><br>v. <br><br>VANDEWATER INTERNATIONAL, INC., et al., <br><br>Defendant(s). | Case No. 2:17-cv-04393-RGK-KS <br><br>**VANDEWATER INTERNATIONAL, INC. AND NEIL RUEBENS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br>Judge:          Hon. R. Gary Klausner <br>Hearing Date: May 18, 2020 <br>Courtroom:    850 <br>Time:           9:00 a.m. <br><br>[All Documents Filed Concurrently Herewith are the Reply Memorandum; Response to Plaintiff's Purported Disputes of Fact; Praecipe on Confidentiality Designations; and Supplemental Declaration of Ryan Salzman] |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A. Plaintiff Does Not Present a Triable Issue as to Falsity, or as to Obligation to Pay Antidumping Duties. ............................................... 2

    B. Plaintiff Does Not Present a Triable Issue as to Scienter. ................... 5

    C. Plaintiff Cannot Predicate Reverse FCA Liability on an Obligation to Pay that Was Only "Clarified" After the Transactions at Issue. ............................................................................ 8

    D. Plaintiff's (Latest) Peripheral Allegations Fail. .................................... 9

III. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allison Engine Co., Inc. v. U.S. ex rel. Sanders*,
   553 U.S. 662 (2008) ............................................................................................ 10

*ArcelorMittal Stainless Belgium N.V. v. United States*,
   694 F.3d 82 (Fed. Cir. 2012) ................................................................................ 2

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014) .............................................................................. 7

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) .............................................................................. 9

*Meridian Products, LLC v. United States*,
   851 F.3d 1375 (2017) ............................................................................................ 2

*Polites v. United States*,
   755 F.Supp.2d 1352 (Ct. Int'l Trade 2011) ......................................................... 3

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ................................................................................................ 7

*U.S. ex rel. Harper v. Muskingum Watershed Consv. Dist.*,
   842 F.3d 430 (6th Cir. 2016) ................................................................................ 5

*United States v. United Healthcare Ins.*,
   848 F.3d 1161 (9th Cir. 2016) .............................................................................. 6

*United Steel & Fasteners, Inc. v. United States*,
   947 F.3d 794 (Fed. Cir. 2020) .............................................................................. 8

*Walgreen Co. v. United States*,
   620 F.3d 1350 (Fed. Circ. 2010) .......................................................................... 4

**STATUTES, RULES & REGULATIONS**

31 U.S.C. § 3729 ........................................................................................................ 5

19 C.F.R. § 351.225 .............................................................................................. 7, 8

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

- ii -

CASE NO. 2:17-CV-04393-RGK-KS

57 Fed. Reg. 29629 .................................................................................................. 1, 7

Federal Rule of Evidence 404 ................................................................................... 9

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM ISO MOTION — - iii - — CASE NO. 2:17-CV-04393-RGK-KS

## I. INTRODUCTION

Plaintiff Island Industries, Inc. ("Plaintiff") cites a report by the International Trade Commission ("ITC") as a critical piece of "administrative history," supposedly showing that welded outlets are a subset of "butt-weld pipe fitting" and therefore subject to antidumping duties upon importation from China. *See* ECF 183 (Opp. to Mot. for SJ; "Opp.") at 2-4 (citing 57 Fed. Reg. 29629 (the "China Order")). However, contrary to Plaintiff's suggestion, the ITC report describes butt-weld pipe fittings much as the pipe fittings trade does, referencing their capacity to form end-to-end welded connections with adjoining pieces—which welded outlets cannot do. Per the ITC:

> When placed *against the end* of a beveled pipe or another fitting, the beveled edges of a butt-weld pipe fitting form a shallow channel that accommodates the "bead" of the weld that fastens the two adjoining pieces…. Butt-weld pipe fittings join pipes *in straight lines*….

ECF 185-12 at I-13 (emphasis added). By contrast, if you placed a welded outlet (below, left) "against the end of… another fitting" (right), this would not "form a shallow channel that accommodates" a weld beam, as the ITC describes. It would form a yawning gap that could not be bridged by any practical means. This is due to the welded outlet's contoured edge, which is simply not designed for end-to-end connection.

 

ECF 169-19 (Expert Report of Walter Sperko) at 4, 6 (containing images).

Thus, the "administrative history" cited by Plaintiff supports the Defendants' assertion that butt-weld pipe fittings and welded outlets are inherently distinct products, and that the China antidumping duty order on the former cannot fairly be

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

CASE NO. 2:17-CV-04393-RGK-KS

read (particularly retroactively) to cover the latter. Accordingly, and for the balance of the reasons stated herein and in their opening memorandum, Defendants Vandewater International, Inc. ("Vandewater") and Neil Ruebens (collectively, the "Vandewater Defendants") ask the Court to grant summary judgment in their favor, and they submit this Reply Memorandum in support of their motion (ECF 169).

## II. ARGUMENT

### A. Plaintiff Does Not Present a Triable Issue as to Falsity, or as to Obligation to Pay Antidumping Duties.

To begin with, the Court should reject Plaintiff's contention that the scope of the China Order is a question of fact for a jury to decide. Opp. (ECF 183) at 5. This is a question about whether products whose attributes are not in dispute fall within the descriptions set forth in official pronouncements of the Department of Commerce ("Commerce"). Particularly where, as here, the relevant trade usage is also undisputed, *see infra*, the issue of scope is one for the Court—as are the related questions of whether there is an obligation to pay duties, and whether the Defendants' statements to Customs and Border Protection ("CBP") that welded outlets are "duty free" are true or false.[1] *See Meridian Products, LLC v. United States*, 851 F.3d 1375, 1382 (2017).

Plaintiff cannot fix the key problems with its proffered interpretation of the China Order—first and foremost, that its interpretation fails to account for industry standards and trade usage that deem welded outlets and "butt-weld pipe fittings" to be inherently distinct products. *See* ECF 169 (Vandewater Mem. ISO Mot. for SJ; "Opening Mem.") at 1-3. Plaintiff cannot contest that industry standards *must* be considered in lawfully defining an antidumping duty ("ADD") order's scope. *E.g., ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012). Rather, Plaintiff meekly suggests that trade usage is in dispute. Opp. (ECF 183)

---

[1] To be precise, we submit that Congress intended scope questions to be resolved in the first instance by the Court of International Trade ("CIT"), as detailed in support of Defendants' motion to stay (ECF 168). In all events, this is not a jury question.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

- 2 -

CASE NO. 2:17-cv-04393-RGK-KS

at 6. This is simply not the case. In an attempt to suggest dissension in the trade, Plaintiff cites *litigation positions* raised in opposition to Vandewater's scope ruling request. *Id.* However, the statements of litigants and their advocates are not exactly the same thing as the contemporaneous understandings of tradesmen and their customers. Case in point: At his deposition, Plaintiff's president was asked whether he could produce any pre-litigation document from his company—an email exchange among employees, a purchase order, *etc.*—referring to welded outlets as "butt-weld pipe fittings". He could not. Supplemental Declaration of Ryan Salzman ("Salzman Supp. Decl.") ¶ 2, Ex. 1 (Sanders Dep. Tr.) at 564:8-570:5. This is because, before its views were skewed by litigation incentives, Plaintiff viewed welded outlets in the same way that importers and others in the pipe fitting trade do, and in the same way described in the unrebutted testimony of engineering expert Walter Sperko: as products meaningfully distinct from butt-weld pipe fittings.

Unable to convincingly dispute industry standards or trade usage, Plaintiff suggests that the China Order should be read counterintuitively to cover welded outlets because of the aforementioned "administrative history"—essentially, because the "butt-weld pipe fittings" ADD order for a different country, Taiwan, was applied to welded outlets in a 1992 scope ruling by Commerce. Opp. (ECF 183) at 2-3 (referencing the "Sprink Ruling"). As it has throughout this case, Plaintiff completely ignores the fact that the China Order is worded differently than the Taiwan order, with distinct narrowing language directly addressing the Chinese imports at issue here. Opening Mem. (ECF 169) at 4. There is a presumption against deeming such language surplusage, *Polites v. United States*, 755 F.Supp.2d 1352, 1357 (Ct. Int'l Trade 2011), and Plaintiff offers nothing to rebut it.

The best Plaintiff can do is cobble together context-free snippets from ITC studies concerning various pipe fittings ADD orders, among them the China and Taiwan orders, to suggest that all of these orders are congruent in scope. There are several problems with this. First, as Plaintiff concedes, "[t]he written product

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

- 3 -

CASE NO. 2:17-cv-04393-RGK-KS

description [in an ADD order] remains dispositive." Opp. (ECF 183) at 3. If Commerce wants a product to be within the scope of an ADD order, it has to say so *in the order*. No *post facto* description of an order in an ITC report can alter its scope. *Walgreen Co. v. United States*, 620 F.3d 1350, 1354 (Fed. Circ. 2010). Second, the ITC never endorsed Plaintiff's view that the China and Taiwan orders are congruent. Certainly, this does not follow from the mere fact that the ITC jointly analyzed a set of orders. A footnote in the ITC report quoted by Plaintiff does characterize the orders as covering "essentially" the same merchandise, but this is a pregnant qualifier in context, because the footnote goes on to set forth *actual differences* in scope language. ECF 185-12 at 5 n.10. In fact, it shows that there are two congruent sets of ADD orders—but Taiwan falls in one set, and China in the other. *Id*. Finally, various government agencies have indicated that there are significant differences in both the products and ADD orders at issue, warning against cross-product or cross-border generalizations. *See* ECF 177-14 at 9 of 13 (Commerce, in another case, noting that butt-weld pipe fittings, unlike welded outlets, must be welded at both ends); ECF 177-15 (CBP, stating that welded outlets and butt-weld pipe fittings should be classified differently); Opening Mem. (ECF 169) at 4 (Commerce again, in its 2018 ruling, concluding that the China and Taiwan orders have meaningfully different language). In addition, the ITC confirmed that butt-weld pipe fittings are "placed against the end" of adjacent pieces to "join pipes in straight lines," *supra*, whereas welded outlets branch out from the sides of pipes, not their ends. SUF 14. Thus, the "administrative record" by no means rebuts the presumption against surplusage. The narrowing language of the China Order has to mean something, and on its face (and in light of industry standards and trade usage) it excludes welded outlets.

Plaintiff's backstop is to seek refuge in agency deference, contending that welded outlets are subject to ADDs simply because Commerce says so. Opp. (ECF 183), *passim*. However, of course, Commerce did not rule on Chinese welded outlets until well after the transactions at issue. As discussed below, it is one thing for

Commerce, in its due deference, to prospectively rule that a product is within the scope of an ADD order; it is another thing entirely to retroactively impose duties, much less False Claims Act penalties, on the basis of such a pronouncement. In all events, we submit that Commerce erred in ruling Vandewater's products to be within the scope of the China Order, for the reasons discussed above.

### B. Plaintiff Does Not Present a Triable Issue as to Scienter.

Again, the Court should reject Plaintiff's procedural contention, that questions of scienter are "necessarily fact- and context-specific," such that "summary judgment is inappropriate…." Opp. (ECF 183) at 7-8. Plaintiff has had the benefit of discovery; to proceed to trial, it ought to be able to produce some admissible evidence from which a reasonable, friendly jury could conclude that Defendants "knowingly" defrauded the government within the meaning of the False Claims Act ("FCA"). *E.g.*, *U.S. ex rel. Harper v. Muskingum Watershed Consv. Dist.*, 842 F.3d 430, 437 (6th Cir. 2016). Yet Plaintiff is manifestly unable to do so.

First, Plaintiff cannot prove "actual knowledge" or belief on the part of the Vandewater Defendants that ADDs applied to Chinese welded outlets. 31 U.S.C. § 3729(b)(1)(A)(i). Plaintiff would invite the jury to find "actual knowledge" based on evidence that Vandewater's former sales representative, a now-deceased independent contractor named Skip Perkins, was aware of the Sprink Ruling. Opp. (ECF 183) at 13. But this is several inferential leaps too far. To begin with, again, the Sprink Ruling does not decide the issue, as even Commerce acknowledged, because it concerned a different country and a differently worded ADD order. *Supra*. Further, there is no evidence that Mr. Perkins ever discussed the Sprink Ruling with anyone at Vandewater—and this is not for lack of a documentary record. Plaintiff has many emails between Mr. Perkins and Vandewater, and none of them references Sprink. The best Plaintiff can do is offer former sales representative Hank Zawada's testimony that he feels Mr. Perkins *would have* discussed the Sprink Ruling with Vandewater, *id.*, though Mr. Zawada also made clear that he witnessed no such

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM ISO MOTION

- 5 -

CASE NO. 2:17-cv-04393-RGK-KS

communications. SUF 31. In other words, the best Plaintiff can offer the jury is sheer, inadmissible speculation. This is not enough to avoid summary judgment.[2]

As Plaintiff acknowledges, Opp. (ECF 183) at 7, to prove a lesser FCA *mens rea*, it would have to show that Defendants deliberately or recklessly avoided inquiries which would have "alert[ed them] that false [statements] are being submitted." *United States v. United Healthcare Ins.*, 848 F.3d 1161, 1174 (9th Cir. 2016). But Plaintiff still can point to no inquiry forgone that would have led Vandewater to conclude that Chinese welded outlets are subject to ADDs. The "administrative history" cited by Plaintiff does not so indicate; nor do the text of the China Order or the relevant industry standards. *Supra*. Indeed, each Defendant—with the benefit of trade counsel—still contends before the CIT that Chinese welded outlets should be free from ADDs. The CIT, for its part, indicated that the China Order may be insusceptible to straightforward interpretation. ECF 168-2 at 4.

Plaintiff suggests that it can prove recklessness or bad faith through its sales manager, Mark Woehrel, who "within just hours… managed to find all the publically available authorities needed to conclude" that Chinese welded outlets were subject to ADDs. Opp. (ECF 183) at 11-12. This is specious. All Mr. Woehrel "discovered" is Plaintiff's litigating position—which, as illustrated above, fails to hold water. More revealing is the demurrer of Plaintiff's proffered import compliance expert, Kelli Thompson, who is clearly more capable of assessing the scope of an ADD order than Mr. Woehrel. Yet Ms. Thompson declined every opportunity to explain why welded outlets were rightly within the scope of the China Order, or to explain how Defendants could have been "alerted" to such a conclusion. SUF 32-33. If Plaintiff's own proffered importation expert cannot bring herself to endorse the premises of its claim, how can even the friendliest of reasonable juries find in Plaintiff's favor?

Ms. Thompson may well have been given pause by the same concerns the

---

[2] For what it is worth, Mr. Zawada testified that he and Skip Perkins discussed the pipe fittings business freely; yet they never discussed the Sprink Ruling either. Salzman Supp. Decl. ¶ 3, Ex. 2 (Zawada Dep. Tr.) at 65:20-66:1, 122:9-19.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM ISO MOTION - 6 - CASE NO. 2:17-cv-04393-RGK-KS

Supreme Court and the Ninth Circuit have voiced, which render an FCA claim in this context so very dissonant: as Plaintiff concedes, "willfulness cannot be found 'when the company's reading of the statute is objectively reasonable[.]'" Opp. (ECF 183) at 15 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007); *accord Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014). Even in its opposition, Plaintiff cannot bring itself to say that Defendants' interpretation of the China Order is objectively unreasonable.[3] Instead, Plaintiff contends that Vandewater "has no right" to make a *Safeco* argument, for two reasons, Opp. (ECF 183) at 15-16, each unpersuasive: First, Plaintiff avers, the China Order is not ambiguous. To be clear, the Vandewater Defendants believe the China Order unambiguously *excludes* welded outlets, *supra*; but if it does cover welded outlets, it certainly does not do so on the basis of its plain language. *See* 57 Fed. Reg. 29629. In any event, it was Commerce's description of its 19 C.F.R. §351.225(k)(1) analysis that sets forth its assessment that the China Order's "scope language is ambiguous[.]" ECF 177-36 at 4 of 13, n.16. Second, Plaintiff contends that the Vandewater Defendants cannot avail themselves of *Safeco* because they conducted insufficient inquiry concerning the China Order. Opp. (ECF 183) at 15. Although it is questionable whether the Supreme Court in *Safeco* countenanced any such threshold (Plaintiff cites only another trial court for the proposition), Plaintiff's contention fails on the merits. Vandewater construed the China Order in light of industry standards; it consulted brokers as well as CBP specialists, none of whom raised any issues regarding ADDs. Opening Mem. (ECF 169) at 14-15. None of this is in dispute. Instead, Plaintiff flips the client-professional relationship on its head, and suggests that Vandewater is at fault because it did not spot the purported issues that its brokers and advisers missed —"issues" that no other firm in the trade perceived either, and that no government agency appeared to perceive until 2018. There is no precedent for FCA liability in this

---

[3] Plaintiff suggests that the objective reasonableness of Defendants' position is a jury question. Opp. (ECF 183) at 16. It is not. *E.g.*, *Gonzalez,* 759 F.3d at 1115.

circumstance, with good reason.[4]

### C. Plaintiff Cannot Predicate Reverse FCA Liability on an Obligation to Pay that Was Only "Clarified" After the Transactions at Issue.

Plaintiff, unwarrantedly, presumes the outcome of Defendants' CIT actions. *E.g.*, Opp. (ECF 183) at 5. But even if the CIT were to uphold Commerce's rulings, no duties would be owed retroactively. This is because, as the Federal Circuit held in *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020), a subsection (k)(1) scope ruling like Vandewater's is not merely a restatement of preexisting law. Rather, it is a more substantive agency action—a "clarification" of previously unclear law—that empowers the government to collect duties on a going-forward basis only (subject to exceptions not present here). 947 F.3d at 802-03. Plaintiff would have it both ways—citing the 2018 scope ruling as a factor that belies Defendants' good faith, Opp. (ECF 183) at 4, yet glossing over the fact that this ruling came after the alleged misconduct. As *United Steel & Fasteners* confirms, this raises palpable Due Process issues.

Moreover, the Federal Circuit anticipated, and rejected, Plaintiff's contention that its ruling would somehow lead to gamesmanship. Opp. (ECF 183) at 20. As *United Steel & Fasteners* notes, it is not only importers that can initiate scope rulings. A domestic manufacturer like Plaintiff can seek a ruling—though for reasons unknown, Plaintiff declined to do so—and Commerce itself can similarly initiate a Section 351.225(k) proceeding. 947 F.3d at 803. Accordingly, Commerce could have sought to bring welded outlets within its ADD order years ago, but it did not. As a result, no duties are owed on pre-2018 entries; and without duties owed, there is no reverse FCA claim either. *See* Opening Mem. (ECF 169) at 5-6.

---

[4] To the extent that Kelli Thompson purports to opine that Vandewater violated importer due diligence rules, the Court should reject such testimony as both irrelevant and improper under the expert testimony rules. This is not a Title 19 action but rather an FCA case; and particularly as to the FCA, Ms. Thompson has no expertise or rightful role pronouncing liability. A *Daubert* motion will follow.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM ISO MOTION — - 8 - — CASE NO. 2:17-cv-04393-RGK-KS

### D. Plaintiff's (Latest) Peripheral Allegations Fail.

Plaintiff's reverse FCA theory is that Defendants made false statements to avoid paying ADDs on Chinese welded outlets. ECF 97 (First Am. Compl.) at 20-21. This is the *only claim* that Plaintiff has alleged (or at least, the only claim that survived dismissal). But this has not stopped Plaintiff from making other allegations that are either unrelated to ADDs purportedly owed or otherwise immaterial to the scheme alleged. The Court should disregard these allegations, primarily because they are a naked appeal to prejudice. Plaintiff does not even try to explain how it would overcome Federal Rule of Evidence 404's proscription on admitting such "other acts" evidence at trial, *see* Opp. (ECF 183) at 13-15, and indeed, there is no getting around that this is prohibited propensity evidence.[5]

Further, Plaintiff's latest allegations are not only improper; they are unfounded. Like the now-abandoned "Korea transshipment" accusation that preceded them, *see* Opening Mem. (ECF 169) at 18-19, these allegations are misleadingly presented, and they wilt on examination. For example:

- Plaintiff alleges that Vandewater "manipulated" a harmonized tariff schedule ("HTS") code in order to evade different duties, not at issue in this case. But Plaintiff fails to mention the innocuous, undisputed explanation that Vandewater provided—that it had to change the HTS code for at least some of its products upon discovering that the old code corresponded to a non-pertinent method of manufacture. Salzman Supp. Decl. ¶ 4, Ex. 3 (J. Ruebens Dep. Tr.) at 180:19-181:24. Even Plaintiff's proffered expert agreed that the code had to be changed in this circumstance. *Id.* ¶ 5, Ex. 4 (Thompson Dep. Tr.) at 115:23-117:24.
- Plaintiff alleges that Vandewater unlawfully used single HTS codes for "mixed shipments" containing multiple products. This is admittedly an error—one that Vandewater is correcting through submissions to CBP—but plainly not a fraud,

---

[5] *See, e.g.*, *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1208 (9th Cir. 2002). Accordingly, a motion in limine will follow.

FAEGRE DRINKER BIDDLE & REATH LLP ATTORNEYS AT LAW LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM ISO MOTION - 9 - CASE NO. 2:17-cv-04393-RGK-KS

- inasmuch as Vandewater *overpaid* duties for various of these mixed shipments. Indeed, a number of unrelated products were erroneously described as welded outlets—the very item that Plaintiff alleges Vandewater was surreptitiously importing. *Id*. ¶¶ 6-7, Ex. 5 (sample form showing unnecessary payment of duties), Ex. 6 (form mis-describing product as "grooved outlets").

- Plaintiff alleges that Vandewater "misleadingly" described its welded outlets as pipes, pipe nipples or adapters. To begin with, the "adapters" designation is neither false nor misleading. Opening Mem. (ECF 169) at 6. But even where products were incorrectly or imprecisely described by Vandewater or its brokers, other statements and documents in the *same CBP packets* clearly and unmistakably identified them. Salzman Supp. Decl. ¶ 8, Ex. 7 (sample packets). Thus, the isolated errors were plainly just that—errors—and because they cannot reasonably be construed as part of an artifice to defraud, they are immaterial. *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008).

- Finally, Plaintiff's president alleges that Vandewater attempted to persuade him to pass off Chinese products as American. Of course, this is the uncorroborated testimony of a witness with credibility issues. *See* Opening Mem. (ECF 169) at 10 n.5 (regarding his theft of financial records). More importantly, it is irrelevant to the pleaded claim, and so this too should be disregarded.

## III.  CONCLUSION

For the foregoing reasons, Vandewater International, Inc. and Neil Ruebens respectfully request that the Court grant summary judgment in their favor.

Dated: May 4, 2020

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Ryan M. Salzman*
Ryan Salzman
Thomas Kelly (*pro hac vice*)
Joseph Rillotta (*pro hac vice*)
Joie Hand (*pro hac vice*)

Attorneys for Defendants
VANDEWATER and NEIL RUEBENS

# PROOF OF SERVICE

I am a citizen of the United States and employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1800 Century Park East, Suite 1500, Los Angeles, California 90067.

On May 4, 2020, I served the foregoing **"VANDEWATER INTERNATIONAL, INC. AND NEIL RUEBENS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT"** on the interested parties in this action by transmitting a copy as follows:

### See Attached Service List

☐ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States Mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing mail. Under that practice, it is deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter dates is more than one day after date of deposit for mailing in affidavit.

☐ (OVERNIGHT COURIER) I caused such envelope to be transmitted via Overnight Courier to the offices of the addressee(s).

☒ (VIA ELECTRONIC SERVICE) Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ (BY PERSONAL SERVICE) I delivered such envelope by hand to the addressee(s) above.

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Dated: May 4, 2020

  */s/ Ryan M. Salzman*
  Ryan M. Salzman

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

VANDEWATER AND NEIL RUEBENS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM ISO MOTION — - 3 - — CASE NO. 2:17-CV-04393-RGK-KS

# **SERVICE LIST**

| | |
|---|---|
| Matthew H. Marmolejo<br>C. Mitchell Hendy<br>Mayer Brown LLP<br>350 South Grand Avenue, 25th Floor<br>Los Angeles, CA 90071<br>mmarmolejo@mayerbrown.com<br>mhendy@mayerbrown.com<br><br>Kelly B. Kramer<br>Mayer Brown LLP<br>1999 K Street, NW<br>Washington, D.C. 20006<br>kkramer@mayerbrown.com | Attorneys for Plaintiff-Relator Island Industries, Inc. |
| Carmen Lo<br>White & Case LLP<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>carmen.lo@whitecase.com<br><br>Lucius B. Lau<br>James P. Gagen<br>White & Case LLP<br>701 13th Street, N.W.<br>Washington, DC 20005-3807<br>alau@whitecase.com<br>jgagen@whitecase.com | Attorneys for Defendant Sigma Corporation |
| Brian E. Klein<br>Teresa Lenore Huggins<br>Baker Marquart LLP<br>777 South Figueroa Street, Suite 2850<br>Los Angeles, CA 90017<br>bklein@bakermarquart.com<br>thuggins@bakermarquart.com<br><br>Neil H. MacBride<br>Paul S. Mishkin<br>Marc J. Tobak<br>Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>neil.macbride@davispolk.com<br>paul.mishkin@davispolk.com<br>marc.tobak@davispolk.com | Attorneys for Defendant Smith Cooper International |

| | |
|---|---|
| Blythe G. Kochsiek<br>King and Spalding LLP<br>633 West 5th Street, Suite 1600<br>Los Angeles, CA 90071<br>bkochsiek@kslaw.com<br><br>Christopher C. Burris<br>King and Spalding LLP<br>1180 Peachtree Street NE<br>Atlanta, GA 30309<br>cburris@kslaw.com<br><br>Daniel L. Schneiderman<br>J. Michael Taylor<br>King and Spalding LLP<br>1700 Pennsylvania Avenue NW<br>Washington, DC 20006<br>dschneiderman@kslaw.com<br>jmtaylor@kslaw.com | Attorneys for Defendant Anvil International, LLC |
| Allied Rubber & Gasket Company<br>Attention: Siy Belfi - Director<br>3145 Tiger Run Ct., Suite 105<br>Carlsbad, CA 92010 | Defendants |