Brian E. Klein (SBN 258486)
bklein@bakermarquart.com
Teresa Huggins (SBN 263257)
thuggins@bakermarquart.com
BAKER MARQUART LLP
777 S. Figueroa Street
Los Angeles, California 90017
Telephone:  (424) 652-7800
Facsimile:   (424) 652-7850

Neil H. MacBride (*pro hac vice*)
neil.macbride@davispolk.com
Paul S. Mishkin (*pro hac vice*)
paul.mishkin@davispolk.com
Marc J. Tobak (*pro hac vice*)
marc.tobak@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:   (212) 701-5800

*Attorneys for Defendant
Smith-Cooper International, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ISLAND INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> VANDEWATER INTERNATIONAL INC.; NEIL REUBENS; ANVIL INTERNATIONAL, LLC; SIGMA CORPORATION; SMITH-COOPER INTERNATIONAL, INC.; ALLIED RUBBER & GASKET COMPANY, and JOHN DOES Nos. 1-10, <br><br> Defendants. | Case No. 2:17-cv-4393-RGK (KS) <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT SMITH-COOPER INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date:         May 18, 2020 <br> Time:        9:00 a.m. <br> Courtroom: 850 (Roybal Federal Bldg.) <br> Judge:      The Hon. R. Gary Klausner |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................. 1

I. THERE IS NO TRIABLE ISSUE REGARDING A "KNOWING" MISSTATEMENT .................................................................. 1

II. THE PUBLIC DISCLOSURE BAR ALSO MANDATES SUMMARY JUDGMENT FOR SCI ................................................................ 8

III. ISLAND'S DAMAGES ARE SHARPLY LIMITED .................................... 8

i

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF SMITH COOPER'S MOTION FOR SUMMARY JUDGMENT
NO. 2:17-CV-4393-RGK (KS)

# TABLE OF AUTHORITIES

C<small>ASE</small>(<small>S</small>)

P<small>AGE</small>

*Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*,
   190 F.3d 729 (6th Cir. 1999) .............................................................................. 10

*Han v. Mobil Oil Corp.*,
   73 F.3d 872 (9th Cir. 1995) .................................................................................. 4

*Long v. Tommy Hilfiger U.S.A., Inc.*,
   671 F.3d 371 (3d Cir 2012) .................................................................................. 5

*Meridian Products, LLC v. United States*,
   851 F.3d 1375 (Fed. Cir. 2017) ............................................................................ 6

*Olson v. Fairview Health Servs. of Minn.*,
   831 F.3d 1063 (8th Cir. 2016) .............................................................................. 5

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ......................................................................................*passim*

*Siebert v. Gene Sec. Network, Inc.*,
   75 F. Supp. 3d 1108 (N.D. Cal. 2014) .............................................................. 5, 6

*United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*,
   833 F.3d 874 (8th Cir. 2016) ................................................................................ 7

*United States ex rel. Hixson v. Health Mgmt. Sys. Inc.*,
   613 F.3d 1186 (8th Cir. 2010) .......................................................................... 1, 5

*United States ex rel. Hochman v. Nackman*,
   145 F.3d 1069 (9th Cir. 1998) ..................................................................... 1, 4, 5

*United States ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) ............................................................................ 1, 4

*United States ex rel. Krawitt v. Infosys Techs. Ltd.*,
   372 F. Supp. 3d 1078 (N.D. Cal. 2019) ................................................................ 7

*United States ex rel. Mateski v. Raytheon Co.*,
   816 F.3d 565 (9th Cir. 2016) ................................................................................ 8

ii

R<small>EPLY</small> M<small>EMORANDUM OF</small> P<small>OINTS</small> & A<small>UTHORITIES IN</small> F<small>URTHER</small> S<small>UPPORT OF</small> S<small>MITH</small>-C<small>OOPER'S</small>
M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small>
N<small>O</small>. 2:17-<small>CV</small>-4393-RGK (KS)

|  | PAGE |
|---|---|
| *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1 (D.D.C. 2007) | 10 |
| *United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008) | 9, 10 |
| *United States v. Prabhu*, 442 F. Supp. 2d 1008 (D. Nev. 2006) | 4 |
| *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020) | 8, 9, 10 |

STATUTES & RULES

| | |
|---|---|
| 19 U.S.C. § 1514 | 9 |
| 19 U.S.C. § 1592(a) | 10 |
| 31 U.S.C. § 3729(b)(3) | 10 |

iii

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF SMITH-COOPER'S MOTION FOR SUMMARY JUDGMENT
NO. 2:17-CV-4393-RGK (KS)

## PRELIMINARY STATEMENT

Island's Opposition ("Opp.") reveals that the material disputes between the parties are *legal*, not factual. Because Island is wrong on the law, SCI's motion for summary judgment should be granted for multiple independent reasons.

## ARGUMENT

### I. There Is No Triable Issue Regarding a "Knowing" Misstatement

Island fundamentally misconstrues the applicable legal standard for a "knowing" misstatement. As is undisputed, the China Butt-Weld Fitting Order does not state that it applies to the product type at issue—"welded outlets"—but rather is expressly confined to a product category known as "butt-weld fittings." Thus, under the Supreme Court's *Safeco* decision, a statement that welded outlets were not subject to an antidumping duty could only potentially have been "knowingly false" if it was *objectively unreasonable* to interpret welded outlets as distinct from "butt-weld fittings." *See* Opening Brief ("Br.") at 8-9 (citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 (2007); *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1075 (9th Cir. 1998); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 2006)); *see also United States ex rel. Hixson v. Health Mgmt. Sys. Inc.*, 613 F.3d 1186 (8th Cir. 2010).

Two aspects of this legal standard are critical and fatal to Island's case. First, Island must demonstrate that it was false under *any* objectively reasonable reading of the law to assert that SCI's welded outlets (or "Cooplets") were not subject to antidumping duties. *See Hixson*, 613 F.3d at 1191 (where governing law is ambiguous, "the relators must show that there is no reasonable interpretation of the law that would make the allegedly false statement true"). Second, because it is an "objective" standard, the subjective views of SCI or any other defendant are categorically irrelevant. Indeed, even if a defendant subjectively believed that its interpretation of the law was wrong, and even if a defendant acted *in bad faith*

(facts that Island could never demonstrate as to SCI), the Supreme Court has explained that those circumstances are irrelevant if the defendant acted according to an objectively reasonable interpretation. *See Safeco*, 551 U.S. at 70 n.20 ("To the extent that [plaintiffs] argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound."). Thus, Island would have to prove at trial that SCI's interpretation was not merely wrong, debatable, or subject to dispute, but instead, so obviously and egregiously wrong that no reasonable, objective, knowledgeable industry participant could ever have shared the interpretation.

Island could never meet that burden because it developed no such evidence in discovery, and none exists. Island could have attempted to generate such evidence. Island could have tried to find an expert in pipe fitting descriptions and terminology to opine that SCI's interpretation was contrary to industry understanding. Island could have tried to find authoritative industry sources or evidence to establish a consensus that welded outlets are "butt-weld fittings."

Island did none of that. Instead, Island put forward a purported customs expert who has no experience in the pipe fitting industry and does not know the industry definition of a "butt-weld fitting." *See* Reply Ex.[1] 2 (Thompson Dep. Tr.) at 338:16–340:22; 341:1–23. Meanwhile, Island attempts to dismiss as "immaterial" the overwhelming, uncontradicted evidence cited in SCI's opening brief that "butt-weld fittings" are widely understood to exclude welded outlets. For example, Island does not genuinely dispute any of the following:

*Industry Standards and Unrebutted Expert Testimony Distinguish Butt-Weld*

---

[1] "Reply Exhibits' referred to herein are the exhibits to Paul Mishkin's Reply Declaration, executed May 4, 2020. "Exhibits" referred to herein are the exhibits to the Declaration of Paul Mishkin in Support of Smith-Cooper International, Inc.'s Motion for Summary Judgment, executed April 8, 2020 (Dkt. No. 177-8). "Island Exhibits" referred to herein are the exhibits to the Declaration of Matthew H. Marmolejo, executed April 27, 2020 (Dkt. No. 185).

*Fittings from Welded Outlets*.  Island has adduced **no** evidence to contest Defendants' expert testimony that ***welded outlets are an entirely different product from butt-weld fittings***, including with respect to how the products are used, how they are made, how they connect to piping systems, and how they are defined by published industry standards—including the undisputed application of the "ASME B16.9" standard to butt-weld fittings, which does **not** apply to welded outlets (Statement of Undisputed Facts ("SUF") ¶¶ 13–17, 19, 37, 39–40, 54–56).  Nor can Island contest the testimony of its own principal, who freely admitted that it is "reasonable" for industry participants to look to ASME B16.9 to determine what constitutes a butt-weld fitting.  (SUF ¶ 38.)

*U.S. Government Agencies Distinguish Butt-Weld Fittings from Welded Outlets*.  Island cannot overcome DOC's ruling in the Forged Steel Fittings case that, based on industry understanding, outlets that are welded only on one end are ***not*** considered butt-weld fittings.  (SUF ¶ 41.)  Island argues that DOC's 2018 Scope Ruling concluded that Cooplets were within the China Butt-Weld Fitting Order, but cannot dispute that the 2018 Scope Ruling nowhere addresses how the *industry* defines the term "butt-weld fitting," whereas the DOC's Forged Steel Fittings ruling ***does*** address that question and resolves it in a manner fatal to Island's case.² (*See* Ex. 6 at 5–7, 8–10.)  Nor can Island genuinely dispute that Customs also considers a welded outlet to be distinct from a butt-weld fitting.  (SUF ¶ 43.)  Island cannot show it was "objectively unreasonable" to interpret these product categories as distinct when DOC and Customs have done so.

Given the state of the record, the issue of reasonableness is ripe for summary judgment in SCI's favor.  The Ninth Circuit has routinely affirmed, and district

---

² Island argues this DOC finding is "immaterial" because DOC concluded, in its 2018 Scope Ruling, that identical terms may not have identical meanings across proceedings.  But that undermines Island's attempts to rely on the 1992 Sprinklet ruling regarding the Taiwan Order, which is, of course, also a different proceeding and, as DOC concluded, not binding here.  (SUF ¶ 135.)

courts in the Ninth Circuit have routinely granted, summary judgment for defendants on this basis. *See, e.g.*, *Hochman*, 145 F.3d at 1074, 1076 (affirming grant of summary judgment); *Hopper*, 91 F.3d at 1265 (same); *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1036 (D. Nev. 2006) (same).³

Lacking any ability to survive application of *Safeco*, Island unsurprisingly attempts to argue that the standard does not apply. Its arguments are unavailing. Island relies principally on its assertion that *Safeco* applies only to "parties who actually studied and formed beliefs" about the governing legal standards. (Opp. at 13.) *Safeco* says no such thing, but, as an initial matter, the point is irrelevant because the undisputed facts show that SCI *did* form a view that the China Butt-Weld Fitting Order excluded welded outlets (SUF ¶¶ 69–70), and that this view was well-informed—including by SCI's industry experience (SUF ¶¶ 58–67) and by a third-party audit commissioned by SCI that determined that Cooplets were appropriately categorized under an import classification that Customs reserves for products that are ***not*** butt-weld fittings (SUF ¶¶ 72–75).

In any event, *Safeco* does not impose any threshold diligence requirement before a defendant is permitted to act consistently with a reasonable interpretation of a disputed legal issue. The whole point of *Safeco* is that the defendant's subjective views do not matter—even if they constitute bad faith. 551 U.S. at 70 & n.20. If a subjective bad faith view of a disputed legal issue does not disqualify a defendant from the protections of *Safeco*, it follows *a fortiori* that an allegedly insufficiently supported interpretation does not do so either.

Island's view is expressly foreclosed by at least two Circuit Courts of

---

³ Contrary to Island's assertion (Opp. at 14–15), the existence of a "mixed question of fact and law" presented by an inquiry into "objective reasonableness" does not foreclose summary judgment where, as here, the material facts regarding the interpretation are not genuinely disputed. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 875 (9th Cir. 1995) ("When a mixed question of fact and law involves undisputed underlying facts, summary judgment is appropriately granted.").

Appeal. The Eighth Circuit has explained—without reference to any purported threshold diligence requirement by the defendant—that an FCA relator must "show that there is no reasonable interpretation of the law that would make the allegedly false statement true." *Hixson*, 613 F.3d at 1191; *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016). And the Third Circuit (in a FACTA case) has specifically rejected the notion of a threshold diligence requirement, explaining that such an argument is "expressly foreclosed by *Safeco*, which held that evidence of subjective bad faith or intent of the defendant is irrelevant when there is an objectively reasonable interpretation of the statue that would allow the conduct in question." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 37 (3d Cir. 2012). The Ninth Circuit has not squarely addressed the issue since *Safeco* was decided, but the above rulings are consistent with pre-*Safeco* law of the Ninth Circuit, which holds that even "tak[ing] advantage of a disputed legal question" cannot support FCA liability where defendants reasonably believed their interpretation of the law was correct. *E.g.*, *Hochman*, 145 F.3d at 1076 (quotation marks and citation omitted). In short, there is no merit to Island's argument that *Safeco* turns on the ***effort*** invested in reaching an objectively reasonable interpretation. *Safeco* and its progeny preclude that argument.[4]

Moreover, the present case is nothing like *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108 (N.D. Cal. 2014). In *Siebert*, the defendant certified that it "has in place written policies and procedures . . . that comply with 45 CFR 74 and the NIH Grants Policy Statement," when the defendant allegedly had never read and had no knowledge of those regulations. 75 F. Supp. 3d at 1112. The *Siebert* court declined to entertain arguments by the defendant that its policies and

---

[4] Notably, Island's view would produce the highly anomalous result that the same objectively reasonable conduct by two different defendants could produce two different results under the FCA, depending on the particular circumstances under which each defendant arrived at its objectively reasonable interpretation.

procedures could reasonably be interpreted to comply with a specific policy statement that the defendant had represented (at least implicitly) that it had read but in fact had not. *See id.* at 1119. *Siebert* did not cite or analyze the *Safeco* rule, but in any event, the case is inapposite because SCI did not certify that it had read or analyzed any particular rule, order, or regulation (such as the China Butt-Weld Order)—but rather more generally that it did not owe antidumping duties. Whatever diligence requirement Island erroneously claims applies under *Safeco*, SCI had no legal obligation to review *every* antidumping duty order regardless of whether it appeared facially irrelevant—such as an order limited to carbon steel "butt-weld fittings" in the context of imports of welded outlets.[5]

      Island's argument is even further flawed because it depends on the fiction that a review of the China Butt-Weld Order would have revealed that it applied to welded outlets *before* the DOC's 2018 Scope Ruling first announced that rule.[6] All of the record evidence is to the contrary. On its face, the China Butt-Weld Order applies, of course, to "butt-weld fittings," which was more than ample reason to conclude that the order was irrelevant given undisputed and unambiguous industry understanding of that term. As is further undisputed, the scope language of the China Butt-Weld Order only serves to *narrow the scope*, by including

---

[5] Island's position is tantamount to arguing, for example, that SCI was reckless not to have read an antidumping duty order related to "steel coat hangers" on the off chance that DOC would later interpret that order as encompassing welded outlets. Island's own expert concedes that there is no obligation to read antidumping duty orders that are not "potentially relevant" to the imported product. Reply Ex. 2 (Thompson Dep. Tr.) at 351:10–353:9. An order that applies to "butt-weld fittings" is not relevant to welded outlets, or at a bare minimum, it is not unreasonable to so conclude.

[6] And certainly the scope language does not unambiguously cover Cooplets, as confirmed by the DOC's reliance on external materials under a (k)(1) analysis. (See Br. at 5-6.) Contrary to Island's erroneous legal claim (Opp. at 14), the Federal Circuit has ruled that an analysis of regulatory history in (k)(1) materials is required only where the scope language is ambiguous. *See, e.g.*, *Meridian Products, LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) ("[T]he inquiry begins with 'the language of the final order' and turns to other sources only if the scope itself 'is ambiguous.'").

various additional criteria (not just the requirement that the product be a "butt-weld fitting"), several of which independently exclude Cooplets.  *See* Br. at 10-11.  Reading the Order's full scope language would have only reinforced SCI's view that it was inapplicable to Cooplets.  Island points to no evidence to the contrary.

Nor was SCI otherwise "warned away" from its interpretation that the China Butt-Weld Fitting Order excludes welded outlets.  Only "binding" authority can "warn away" a defendant from an otherwise reasonable interpretation.  *See, e.g.*, *Safeco*, 551 U.S. at 70 n.19 (a staff opinion "not binding on the [Federal Trade] Commission" did not qualify as authoritative guidance); *United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*, 372 F.Supp.3d 1078, 1090 (N.D. Cal. 2019); *see also United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 880 (8th Cir. 2016) ("[A] report prepared nearly two decades ago by a former agency official for use in another case is not the kind of official government warning that would be sufficient evidence of reckless disregard."). The only "guidance" that Island identifies is the unexplained "entire administrative record itself" of the China Butt-Weld Fitting Order, and the 1992 Sprinklet Ruling. But neither is the kind of binding authority that qualifies.  DOC concluded that the outcome of the 2018 Scope Ruling was "not bound" by the 1992 Sprinklet Ruling under the Taiwan Order, which DOC distinguished because there is "language unique to the China Butt-Weld Order."  (Ex. 26 at 17; SUF ¶ 135.)

Given the correct legal test, none of the "evidence" to which Island points (*see* Opp. at 7-8) is relevant.  Island spends a significant portion of its brief misdepicting and misconstruing emails involving an SCI employee without an engineering background who in November 2017 changed the description of Cooplets to "butt-weld outlets" because he mistakenly thought that the welded end of a Cooplet was of "butt-weld type," and then changed the description back in April 2018 upon learning of his mistake.  (SUF ¶¶ 84–92.)  No reasonable jury

7

could infer from these changes that the SCI employee thought that Cooplets were "butt-weld fittings," because that is an entirely different product type requiring much more than a single "butt-weld type" connection,[7] and other unrebutted evidence excludes the possibility.[8]  In any event, none of this matters under *Safeco* because the emails would relate at most to SCI's subjective beliefs, when the only relevant issue is the undisputed ***objective*** reasonableness of interpreting welded outlets to fall outside the scope of the China Butt-Weld Fitting Order.

## II. The Public Disclosure Bar Also Mandates Summary Judgment for SCI

SCI's opening brief demonstrated that Island's allegations regarding SCI are based solely on public information, and that Island's pre-suit "investigation" yielded no meaningful information suggesting fraudulent conduct by SCI.  While Island baldly asserts that it was "the first to uncover that SCI (and its co-defendants) falsely claimed that it did not owe ADDs on Welded Outlets" (Opp. at 20), Island does not identify any fact that shows it "uncovered" anything—to the contrary, it relied on pricing information, which was publicly available.  SUF ¶¶ 111–20.  Island's concession that the public disclosure bar mandates dismissal of "parasitic" suits (Opp. at 20, citing *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016)) is fatal to its claims.

## III. Island's Damages Are Sharply Limited

As set forth in SCI's opening brief, even if Island could establish liability (it cannot), any damages incurred by the U.S. government would be limited by the reasoning of *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed.

---

[7] It is not genuinely disputed that the "butt-weld outlet" description was incorrect under industry terminology, and that, in any event, as confirmed by the DOC (SUF ¶¶ 41–42) and by SCI's industry expert, Mr. Sperko (SUF ¶¶ 54–57), even if a Cooplet were welded using a butt-weld (it is not), that would not make the Cooplet a "butt-weld fitting" because its other end is not welded (SUF ¶¶ 4, 18, 54).

[8] For example, Island ignores the SCI employee's uncontroverted testimony and prior correspondence showing that he was familiar with butt-weld fittings, and did not, at any time, believe Cooplets were "butt-weld fittings."  (SUF ¶¶ 68, 69, 87–88; Ex. 14 (Nov. 26, 2014 Tripp email noting China Butt-Weld Fitting Order).)

8

Cir. 2020).  That case addressed the critical question here:  To what extent does an importer owe antidumping duties retrospectively when DOC changes the governing legal framework by issuing a scope ruling after imports of the products had been permitted for years without any question or suggestion that they were subject to duties?  DOC argued in *Fasteners* that, under those circumstances, the scope ruling was fully retroactive, but the Federal Circuit disagreed and sharply limited the retroactive duties that could be charged.  *See id*. at 802 (explaining that importers are justified in relying on prior failures to assess duties until DOC clarifies its interpretation through a scope ruling).  The same result applies here, and Island's arguments to the contrary are without merit.

*First*, Island argues that *Fasteners* has not yet been applied in the FCA context.[9]  That is unremarkable because the case was only decided in January and it is highly unusual for an FCA case to be brought under the facts of *Fasteners*, where liability depends on retroactive application of a scope ruling.  In any event, the case plainly applies here because a reverse false claims damages analysis under the FCA focuses on the extent to which the government was actually entitled to payments under the governing legal regime.  *See, e.g.*, *United States v. Bourseau*, 531 F.3d 1159, 1172 (9th Cir. 2008) ("Damages for a reverse false claim consist of the difference between what the defendant should have paid the government and what the defendant actually paid the government.").  Federal Circuit case law provides the answer here:  duties are not owed retroactively.  The government cannot have been damaged—for FCA purposes or otherwise—by purported amounts that exceed what it was entitled to recover under applicable law.

---

[9] Island argues that the case's focus on "liquidation" renders it irrelevant, but "liquidation" of a shipment, in general, conclusively sets the duties owed.  19 U.S.C. § 1514.  Commerce is empowered under certain circumstances to direct Customs to "suspend liquidation," which can expand the scope of the duties that Customs can charge.  By limiting the extent to which Commerce could "suspend liquidation" retroactively, the Federal Circuit was limiting the extent to which Commerce could direct Customs to charge duties retroactively.  947 F.3d at 798.

9

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF SMITH-COOPER'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-CV-4393-RGK (KS)

*Second*, Island argues that, regardless of the clear limitation imposed by *Fasteners*, Customs could potentially seek to impose civil penalties or to collect additional duties under 19 U.S.C. § 1592(a). But FCA damages are not measured by speculative additional amounts that could only result from additional actions that have not occurred. *See* 31 U.S.C. § 3729(b)(3) (defining "obligation" to be "an established duty" to pay); *Bourseau*, 531 F.3d at 1169 (explaining that an "obligation . . . cannot be merely a potential liability" (quoting *Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 735 (6th Cir. 1999))). Island has introduced no evidence that Customs would take any particular action in this case under 19 U.S.C. § 1592(a), and its purported Customs expert expressly disclaims any opinion on that issue. *See* Island Ex. 18 at 2 ("The objective of this Report is not to analyze or predict any specific action that [Customs] would take in response to Defendants' conduct . . . ."). Accordingly, potential damages are limited to duties on entries that remained unliquidated as of the date of the scope ruling.

Separately, Island fails to dispute that the limitations period may be extended to ten years only when relevant government officials "should have known . . . or through the exercise of reasonable diligence could have discovered, the basis of the lawsuit" more than three years after the violation. *United States ex rel. Miller v. Bill Harbert Intern. Const.*, 505 F. Supp. 2d 1, 6–7 & n.7 (D.D.C. 2007) (collecting cases). While Island asserts that the government did not know SCI was importing "welded outlets" because that description was not used on Form 7501 (Opp. at 18) that is a semantic game—the full import documentation that SCI made available to Customs clearly identified its products, including by describing them as "welded outlets" (SUF ¶ 109–10), and as Island concedes, Customs "never requested to review SCI's import paperwork." (Opp. at 18.) Because all material facts were known or available to the government at all times, the extended 10-year limitations period does not apply.

10

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF SMITH-COOPER'S MOTION FOR SUMMARY JUDGMENT
NO. 2:17-CV-4393-RGK (KS)

| | | |
|---|---|---|
| 1 | Dated:  May 4, 2020 | Respectfully submitted, |
| 2 | | */s/ Brian E. Klein* |
| | | Brian E. Klein (SBN 258486) |
| 3 | | bklein@bakermarquart.com |
| | | Teresa Huggins (SBN 263257) |
| 4 | | thuggins@bakermarquart.com |
| 5 | | BAKER MARQUART LLP |
| | | 777 S. Figueroa Street |
| 6 | | Los Angeles, California 90017 |
| | | Telephone:  (424) 652-7800 |
| 7 | | Facsimile:   (424) 652-7850 |

Neil H. MacBride (*pro hac vice*)
neil.macbride@davispolk.com
Paul S. Mishkin (*pro hac vice*)
paul.mishkin@davispolk.com
Marc J. Tobak (*pro hac vice*)
marc.tobak@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:   (212) 701-5800

*Attorneys for Defendant Smith-Cooper International, Inc.*