1  JOSEPH H. HUNT
   Assistant Attorney General
2  JAMIE ANN YAVELBERG
   COLIN M. HUNTLEY
3  JENNIFER CHORPENING
   ZOILA E. HINSON
4  ZOILA E. HINSON
   Attorneys, Civil Division
5  New York State Bar No. 4862181
6  United States Department of Justice
        P.O. Box 261
7        Ben Franklin Station
        Washington, D.C. 20044
8        Tel: (202) 353-1286; Fax: (202) 307-6364
9        E-mail: Zoila.E.Hinson @usdoj.gov
10 Attorneys for the United States of America

11               UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14 UNITED STATES OF AMERICA *ex*    No. CV 17-04393 RGK (KSx)
   *rel.* ISLAND INDUSTRIES, INC.,
                                    **UNITED STATES' STATEMENT OF**
15            Plaintiff,            **INTEREST**

16               v.                 Judge:        The Hon. R. Gary Klausner
                                    Hearing Date: May 18, 2020
17 VANDEWATER INTERNATIONAL         Time:         9:00 am
   INC., et al.                     Courtroom:    850
18
              Defendants.
19

20

21

22

23

24

25

26

27

28
                                              UNITED STATES' STATEMENT OF INTEREST
                                              No. 2:17-CV-4393-RGK (KS)

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................2

    I.    FCA scienter turns on Defendants' knowledge at the time of the
        challenged conduct.......................................................................................2

    II.   The availability of prospective administrative remedies does not
        foreclose FCA damages and penalties for past misconduct.........................8

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3
*Duferco Steel, Inc. v. United States,*
    296 F.3d 1087 (Fed. Cir. 2002) ................................................................ 9

4

5
*Halo Electronics, Inc. v. Pulse Electronics, Inc.,*
    136 S. Ct. 1923 (2016) .................................................................. 1, 3, 4, 5

6
*Safeco Insurance Co. of America v. Burr,*
    551 U.S. 47 (2007) .................................................................................... 5

7

8
*United Health Servs., Inc. v. United States,*
    136 S. Ct. 1989 (2016) .............................................................................. 8

9
*United States ex rel. A+ Homeshare, Inc. v. Medshares Management Group., Inc.,*
    400 F.3d 428 (6th Cir. 2005) .................................................................. 12

10

11
*United States ex rel. Body v. Blue Cross & Blue Shield,*
    156 F.3d 1098 (11th Cir. 1998) .............................................................. 12

12
*United States ex rel. Colucci v. Beth Israel Med. Ctr.,*
    785 F. Supp. 2d 303 (S.D.N.Y. 2011) .................................................... 11

13

14
*United States ex rel. Eisenstein v. City of New York,*
    556 U.S. 928 (2009) .................................................................................. 1

15
*United States ex rel. Harrison v. Westinghouse Savannah River Co.,*
    352 F.3d 908 (4th Cir. 2003) .................................................................... 8

16

17
*United States ex rel. Hixson v. Health Management Systems, Inc.,*
    613 F.3d 1186 (8th Cir. 2010) .............................................................. 6, 7

18
*United States ex rel. Hochman v. Nackman,*
    145 F.3d 1069 (9th Cir. 1998) .................................................................. 7

19

20
*United States ex rel. Hopper v. Anton,*
    91 F.3d 1261 (9th Cir. 1996) .................................................................... 7

21
*United States ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency,*
    530 F.3d 980 (D.C. Cir. 2008) .................................................................. 3

22

23
*United States ex rel. Marcus v. Hess,*
    317 U.S. 537 (1943) .................................................................................. 8

24
*United States ex rel. McGrath v. Microsemi Corporation,*
    690 F. App'x 551 (9th Cir. 2017) ............................................................. 8

25

26
*United States ex rel. Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,* 276 F.3d 1032 (8th Cir. 2002) ....................................................... 3, 7

27
*United States ex rel. Oliver v. Parson Co.,*
    195 F. 3d 457 (9th Cir. 1999) ..................................................... 3, 4, 7, 10, 11

28

*United States ex rel. Phalp v. Lincare Holdings Inc.*,
   857 F.3d 1148 (11th Cir. 2017) ..................................................................... 3

*United States ex rel. Purcell v. MWI Corporation*,
   807 F.3d 281 (D.C. Cir. 2015) ........................................................................ 6

*United States ex rel. Siewick v. Jamieson Sci. & Eng'g Inc.*,
   214 F. 3d 1372 (D. C. Cir. 2000)..................................................................... 7

*United States ex rel. Streck v. Allergan, Inc.*,
   2018 WL 3949031 (3d. Cir. 2018) .............................................................. 5, 6

*United States v. Bourseau*,
   531 F.3d 1159 (9th Cir. 2008) ............................................................. 9, 10, 11

*United States v. Estate of Rogers*,
   2001 WL 818160 (E.D. Tenn. June 28, 2001) ......................................... 11, 12

*United States v. Great Neck Saw Mfrs, Inc.*,
   311 F. Supp. 3d 1337 (C.I.T. 2018) ............................................................. 12

*United States v. Kaiser Foundation Health Plan*,
   2013 WL 4605096 (N.D. Cal. Aug. 28, 2013) ............................................. 12

*United Steel & Fasteners, Inc. v. United States*,
   947 F.3d 794 (Fed. Cir. 2020) ...................................... 2, 9, 10, 11, 13

**Federal Statutes**

19 CFR § 351.225(a)...................................................................................... 9

19 CFR § 351.225(l)(3).............................................................................. 9, 10

19 U.S.C. § 1592 .......................................................................................... 12

28 U.S.C. § 517 .............................................................................................. 1

31 U.S.C. § 3729(a)(1)(G) ............................................................................. 2

31 U.S.C. § 3729(b) .............................................................................. 1, 2, 11

31 U.S.C. §§ 3729-3733 ................................................................................. 1

**Other Authorities**

S. Rep. No. 345, 99th Cong., 2 Sess. 4 (1986) .............................................. 3

S. Rep. No. 99-345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266 ................. 1

# INTRODUCTION

The United States respectfully submits this Statement of Interest regarding the Defendants' Motions for Summary Judgment (Dkt. 167, 169, 172-1).  Although the United States has not intervened and is not a formal party, it remains a real party in interest in this action.  *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009).  In addition, the United States has a significant interest in the proper interpretation and the correct application of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, which plays a central role in the government's ongoing efforts to combat fraud against the public fisc.  *See* S. Rep. No. 99-345, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266.  Accordingly, the United States respectfully submits this statement of interest pursuant to its authority under 28 U.S.C. § 517, in order to address two issues: (1) Defendants' attempt to advance an incorrect legal standard for evaluating *scienter* under the FCA, and (2) Defendants' contention that prospective administrative remedies foreclose FCA damages and penalties for past misconduct.

First, Defendants erroneously argue that the existence of any "objectively reasonable" reading of the Antidumping Duty Order on Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China ("China Antidumping Duty Order") defeats a finding of *scienter* under the FCA as a matter of law, even if the Defendants did not actually rely on or even maintain that interpretation at the time of their alleged misconduct.  This argument ignores the FCA's text and purpose, as well as a recent Supreme Court case rejecting a similar argument.  *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1933 & n.* (2016) (holding that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct").  Properly read, the FCA looks to a defendant's knowledge at the time of the violation, 31 U.S.C. § 3729(b), and does not allow a defendant to escape liability based "solely on the strength of his attorney's ingenuity."  *Id*.  The United States therefore

1    respectfully urges the Court to reject Defendants' argument.

2           Second, Defendants erroneously contend that the Federal Circuit's recent decision

3    in *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020),

4    prevents the United States from recovering damages or penalties under the FCA for the

5    knowing concealment or avoidance of antidumping duties if that alleged misconduct

6    occurred prior to the Department of Commerce's ("Commerce") issuing scope rulings

7    clarifying the antidumping duty order at issue.  Defendants' argument misreads the

8    Federal Circuit's decision, misconstrues the effect of such scope rulings, and incorrectly

9    conflates administrative remedies with those available under the FCA.

10                                    **ARGUMENT**

11   **I.     FCA scienter turns on Defendants' knowledge at the time of the**

12          **challenged conduct.**

13          Among other things, the FCA imposes liability on those who "knowingly" conceal

14   or knowingly and improperly avoid or decrease an obligation to pay money to the

15   Government.  *Id.* § 3729(a)(1)(G).  The FCA defines "knowingly" to "mean that a

16   person, with respect to information—(1) has actual knowledge of the information; (2)

17   acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in

18   reckless disregard of the truth or falsity of the information."  *Id.* § 3729(b).  By its terms,

19   then, the FCA focuses on a person's knowledge at the time of the alleged misconduct,

20   and that knowledge may be established by showing not only that the person acted in an

21   objectively unreasonable manner (by acting in reckless disregard of the truth), but also in

22   a subjectively unreasonable manner (either because the defendant was aware of the truth

23   or deliberately ignored the truth).  Indeed, when Congress added the reference to

24   deliberate ignorance in 1986, it intended that change and others to address "ostrich-like"

25   conduct by government contractors and made clear that while the Act is not intended to

26   punish "honest mistakes or incorrect claims submitted through mere negligence," those

27

28

                                          2

doing business with the government may not put their head in the sand but rather "have an obligation to make a limited inquiry to ensure the claims they submit are accurate." S. Rep. No. 345, 99th Cong., 2 Sess. 4, 7 (1986).

In light of the Act's definition of knowledge, courts have held that a defendant's identification after the fact of a reasonable interpretation of an ambiguous legal requirement does not automatically shield him from FCA liability. *United States ex rel. Phalp v. Lincare Holdings Inc*., 857 F.3d 1148, 1155-56 (11th Cir. 2017) ("[S]cienter is not determined by the ambiguity of a regulation, and can exist even if a defendant's interpretation is reasonable."); *United States ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008) (concluding that although defendant offered a plausible interpretation of ambiguous mortgage notes, it must consider whether the defendant "at least recklessly disregarded the falsity of its claims"); *United States ex rel. Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1053-54 (8th Cir. 2002) ("If the Association shows the defendants certified compliance with the regulation knowing … that their actions did not satisfy the requirements of the regulation as the [government] interpreted it, any possible ambiguity of the regulation is water under the bridge."); *United States ex rel. Oliver v. Parson Co.*, 195 F. 3d 457, 464 (9th Cir. 1999) (requiring that a contractor adopt its reading in good faith and noting that, in such instance, the contractor "is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the *scienter* requirement is met").

The Supreme Court's decision in *Halo Electronics* illustrates the general rule that a defendant's *scienter* should be assessed at the time of his or her conduct. There, the Court discarded, as unduly demanding, the Federal Circuit's "objective recklessness" requirement for awarding enhanced damages in patent infringement cases, which made

3

*dispositive* an unscrupulous infringer's ability to escape enhanced damages by "muster[ing] a reasonable (even though unsuccessful) defense at the infringement trial," "even if he did not act on the basis of the defense or was even aware of it." 136 S. Ct. at 1932-33. The Court explained that, rather than allow such an infringer to escape liability "solely on the strength of his attorney's ingenuity," culpability should be measured "against the knowledge of the actor at the time of the challenged conduct," consistent with common-law tort principles. *Id.*

Applying *Halo*'s analysis in FCA matters, courts and factfinders should employ the FCA's statutory definition of knowledge to evaluate whether the defendant had the requisite *scienter* at the time of the alleged violation. If a defendant had "actual knowledge" of a claim's failure to comply with applicable requirements at the time it is submitted, then it is no defense that the defendant (or defense counsel) can subsequently advance an erroneous but reasonable alternative view of those requirements. Likewise, if a defendant deliberately ignored applicable requirements when submitting a claim for payment, it is no defense that the defendant might have been able to advance a reasonable but erroneous interpretation had the defendant undertaken an appropriate inquiry. A contrary rule would frustrate the government's ability to hold accountable unscrupulous actors who, *post hoc*, attempt to concoct "reasonable" yet erroneous interpretations of statutory, regulatory, and contractual requirements that did not actually affect their submission of false claims to the government. Of course, where a defendant can demonstrate that he relied on a good faith, even if erroneous, interpretation of the law at the time he acted, a factfinder may properly consider the defendant's good faith in determining whether the defendant acted knowingly. *See, e.g.*, *Parson Co.*, 195 F. 3d at 464.

Defendants urge this Court, instead, to find as a matter of law that the existence of an "objectively reasonable" interpretation of applicable statutes and regulations

1  forecloses the possibility of proving *scienter* under the FCA – even if the defendant did
2  not rely on any such interpretation at the time he submitted false claims to the
3  government.  This argument should be rejected.

4      First, Defendants' argument rests on an unwarranted extension of *Safeco*
5  *Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), which construed the statutory
6  term "willfully" in the Fair Credit Reporting Act (FCRA) to encompass "reckless
7  disregard," and held that this requirement was satisfied where the defendant's conduct
8  complied with an objectively reasonable interpretation of the law.  *Safeco*'s analysis does
9  not control under the FCA, however, because unlike the FCA, the FCRA does not use
10  the terms "actual knowledge" or "deliberate ignorance."  As noted above, these latter
11  terms clearly require consideration of the defendant's subjective state of mind.

12      Moreover, *Halo* expressly rejected the argument that *Safeco* endorsed the use of
13  *post-hoc* rationalizations in evaluating a defendant's *scienter*.  Rather, the Court made
14  clear that, even as to the recklessness standard applicable in *Safeco*, the Court decided
15  the question of the defendant's *scienter* based on the understanding that the defendant,
16  "at the time of its unlawful conduct," had actually relied on a reasonable (though
17  erroneous) interpretation of the law.  *See* 551 U.S. at 68.  Indeed, *Halo* expressly rejected
18  the argument that *Safeco* constituted an exception to the proposition that "culpability is
19  generally measured against the knowledge of the actor at the time of the challenged
20  conduct."  *Halo*, 136 S. Ct. at 1932-33 ("Nothing in *Safeco* suggests that we should look
21  to facts that the defendant neither knew nor had reason to know at the time he acted.").

22      Second, Defendant Smith Cooper International ("SCI") misreads the non-
23  precedential decision in *United States ex rel. Streck v. Allergan, Inc.*, No. 17-1014, 2018
24  WL 3949031 (3d. Cir. 2018), as adopting Defendants' rejected reading of *Safeco*.  In
25  *Streck*, the Third Circuit concluded that defendants did not knowingly violate the FCA
26  by excluding price-appreciation credits in calculating a drug's average manufacturer

27
28

5

price because the statute was ambiguous, and there was no evidence that the defendants were aware at the time that their reading of the statute was erroneous.  2018 WL 3949031 at *5-6.  Thus, *Streck* does not support Defendants' argument here that a defendant can avoid scienter as a matter of law merely by claiming during litigation that its conduct conformed to an objectively reasonable interpretation of the law.[1]

Third, Defendants' reliance on *United States ex rel. Purcell v. MWI Corporation*, 807 F.3d 281 (D.C. Cir. 2015), and *United States ex rel. Hixson v. Health Management Systems, Inc.*, 613 F.3d 1186 (8th Cir. 2010), is similarly misplaced.  In *Purcell*, the D.C. Circuit held that because the FCA imposes liability only for "knowing" violations, the Act does not reach claims for payment that are "based on reasonable but erroneous interpretations of defendant's legal obligations."  807 F.3d 281, 287-88.  But the court noted that determining a defendant's knowledge "cannot readily be labeled as a 'purely legal' question" because "proving knowledge is in part an evidentiary question."  *Id.* at 288.  To the extent Defendants argue here that *Purcell* stands for the proposition that as a matter of law a defendant can defeat the element of *scienter* if he can point to the existence of an objectively reasonable interpretation of an ambiguous legal requirement untethered to the defendant's knowledge at the time of his conduct, such a reading is inconsistent with the Supreme Court's subsequent decision in *Halo*.

In *Hixson*, the Eighth Circuit affirmed dismissal of an FCA complaint under circumstances similar to those at issue in *Streck*: the defendants' interpretation of an ambiguous legal question was reasonable, and there was no indication that defendants had notice of the correct standard or otherwise acted in deliberate ignorance or reckless

---

[1] *In Streck,* the Third Circuit focused on whether the government warned the defendant away from its interpretation of the prevailing statute in evaluating the defendant's contemporaneous knowledge at the time of the alleged violation.  In reaching this result, the Third Circuit acknowledged that the FCA's definition of "knowing" includes both objective and subjective elements, and, therefore, consistent with *Halo*, the question of whether a defendant acted with the requisite scienter must be evaluated by reference to the defendant's mind set at the time of the challenged conduct.

6

disregard of the truth at the time of claim submission.  613 F.3d at 1190-91.  Moreover, that decision must be read in concert with the Eighth Circuit's earlier decision in *Allina* (not cited by Defendants), where it made clear that a defendant's subjective knowledge is relevant to whether  a defendant acted with the requisite scienter.  276 F.3d at 1053-56.[2]

Finally, Defendants mischaracterize the law in the Ninth Circuit.  SCI asserts that *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1075 (9th Cir. 1998), concluded that a defendant could not have acted knowingly if it acted consistently with a reasonable interpretation of the law.  But the court reached no such conclusion.  Rather, the Ninth Circuit examined, at length, evidence of what the defendants believed *at the time they acted* and concluded that "[e]ven if the defendants erred in their interpretation" of the relevant agreement, "the undisputed evidence demonstrates that the defendants believed that the [agreement] authorized their conduct."  *Id.* at 1075.  And *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996), on which SCI also relies, simply does not address the reasonableness of a defendant's interpretation of a regulation.[3] Even if these cases had held what SCI claims, the Ninth Circuit later unambiguously recognized that a defendant's reasonable interpretation of an ambiguous statute did not automatically shield that defendant from FCA liability.  *Parson Co.*, 195 F. 3d at 464.

---

[2] SCI also relies on *United States ex rel. Siewick v. Jamieson Sci. & Eng'g Inc.*, 214 F. 3d 1372 (D. C. Cir. 2000), for the proposition that an FCA claim fails as a matter of law if the defendant advances a reasonable interpretation of the relevant statute or regulation.  While the *Siewick* court discussed the ambiguity of the statute as relevant to the defendant's knowledge, it did not hold as a matter of law that the relator could not establish scienter as a result of this ambiguity.  *Id.* at 1378  Instead, it considered the ambiguity as just one of several facts relevant to knowledge, and ultimately found a "want of evidence from which a jury could reasonably infer" the defendant acted with knowledge.  *Id.*

[3] In that case, the Ninth Circuit addressed defendants' scienter by examining evidence produced about what the defendant knew at the time it acted and concluded that the "undisputed evidence" showed defendants intended to comply with the law.  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 167-68 (9th Cir. 1996).

7

1    Sigma and Vandewater similarly cite *United States ex rel. McGrath v. Microsemi*

2    *Corporation*, 690 F. App'x 551 (9th Cir. 2017), for the proposition that an objectively

3    reasonable interpretation of an applicable statute or regulation precludes a finding of

4    FCA scienter.  In *McGrath*, the Ninth Circuit considered the reasonableness of the

5    defendant's interpretation of the relevant statute; however, the court did not hold that the

6    claims failed because the interpretation was reasonable, but, rather, because the

7    defendant held that interpretation in "good faith" and "at the time" the claims were

8    submitted.  *Id.* at 552.  In other words, the court recognized that the determination of

9    *scienter* turned on the defendant's subjective knowledge at the time it acted.  This

10   conclusion is entirely in line with *Parson Co.* and the United States' position here.

11   Defendants' reading of these decisions, if adopted, would allow for precisely the

12   *post-hoc* loophole that Congress was concerned about when it enacted the FCA's current

13   definition of knowledge, and that the Supreme Court rejected in *Halo.*  This Court,

14   therefore, should reject the Defendants' attempt to foreclose a finding of *scienter*

15   whenever a defendant can point to an "objectively reasonable" interpretation that played

16   no role in the defendant's actual conduct, and instead reaffirm the principle that

17   knowledge turns on the defendant's mindset at the time of the challenged conduct.

18   **II.    The availability of prospective administrative remedies does not foreclose**

19   **FCA damages and penalties for past misconduct.**

20   Congress designed the False Claims Act specifically to address fraud against the

21   United States.  *See United Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996

22   (2016).  As a general matter, damages in an FCA case are intended to make the United

23   States whole for any damages suffered "because of" a violation of the FCA.  *See United*

24   *States ex rel. Marcus v. Hess*, 317 U.S. 537, 551-52 (1943); *United States ex rel.*

25   *Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922-23 (4th Cir. 2003).  In

26   a reverse false claims act case, damages "consist of the difference between what the

27

28

8

1   defendant should have paid the government and what the defendant actually paid the

2   government." *United States v. Bourseau*, 531 F.3d 1159, 1172 (9th Cir. 2008).  Thus the

3   damages in this case should consist of all unpaid antidumping duties owed on welded

4   outlets imported from China for which relator demonstrates defendants knowingly

5   avoided or decreased the payment owed to the Government.

6        Defendants argue that the Federal Circuit's decision in *United Steel & Fasteners*

7   somehow limits the recovery of damages to the value of duties imported after the

8   applicable scope rulings were issued.  More specifically, they contend that the

9   imposition of FCA damages or penalties would amount to an impermissible retroactive

10  application of scope rulings issued by Commerce.  However, Defendants' argument

11  misreads *United Steel & Fasteners* and erroneously conflates normal administrative

12  remedies with fraud enforcement under the False Claims Act.

13       First, although framed as an argument about damages, Defendants appear to

14  contend that they should not be held liable because scope rulings substantively alter anti-

15  dumping duty orders and they therefore had no obligation to pay any antidumping duties

16  before the applicable scope rulings were issued.  This argument is incorrect: a scope

17  ruling does not change the substantive scope of an antidumping duty order.  *See* 19 CFR

18  § 351.225(a) (scope rulings merely "clarify the scope of an order or suspended

19  investigation with respect to particular products").  "Although the scope of a final order

20  may be clarified, it cannot be changed in a way contrary to its terms."  *Duferco Steel,*

21  *Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (citation omitted).  Thus,

22  FCA liability in this case would not raise concerns about retroactivity because the scope

23  rulings did not alter the scope of the existing antidumping duty order.

24       Contrary to Defendants suggestions, *United Steel & Fasteners* does not hold that

25  scope rulings in general, or those involving a (k)(1) analysis in particular, alter the

26  substantive reach of an antidumping duty order.  Rather, in interpreting 19 CFR

27

28

9

§ 351.225(l)(3), the Federal Circuit concluded that the "limited prospective authority" provided by the regulation did not permit Commerce to apply a scope ruling to entries that had been liquidated before the scope ruling was issued.  947 F.3d 794, 802 (Fed. Cir. 2020).  In other words, the Court made a decision about Commerce's ability to retroactively collect payment in the normal course based on the agency's own regulations governing liquidation.  The question of whether the scope ruling at issue changed the substantive reach of the underlying antidumping duty order was not before the court and not addressed in its decision.[4]

To the extent Defendants argue that these particular scope rulings in fact substantively altered the scope of the China Antidumping Duty order, they have already challenged those decisions before the Court of International Trade.  They have also made separate arguments about their obligations to pay elsewhere in their Motions for Summary Judgment – as they are entitled to do.  However, they are not entitled to presuppose that they will prevail before the CIT or to recast this assumption as a separate argument about damages.[5]

---

[4] Defendants claim that the Federal Circuit reasoned that "[w]hen liquidation has not been suspended, Customs, and perhaps the Department as well, have viewed the merchandise as not being within the scope of an order, importers are justified in relying upon that view, at least until the Department rules otherwise."  *United Steel & Fasteners*, 947 F.3d at 803.  However, that quotation comes from § 351.225(l)(3)'s regulatory history, and was used by the Court only to reject the government's interpretation of § 351.225(l)(3).

[5] To the extent Defendants suggest that they did not owe antidumping duties under the China Antidumping Duty Order because it was ambiguous whether the order applied to welded outlets, the Court should reject that argument as well. Ambiguity relates to a defendant's knowledge, not the falsity of the underlying claim.  As the Ninth Circuit has long recognized, no matter how "technical and complex" the regulations at issue, "[t]heir meaning is ultimately the subject of judicial interpretation, and it is [the defendant's] compliance with these regulations, as interpreted by th[e] court, that determines whether its . . . practices resulted in the submission of a 'false claim' under the [FCA]." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d at 463; *accord United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008).  For purposes of determining falsity, "it is immaterial whether the defendants did or did not make reasonable interpretations of the

1    Further, the FCA's knowledge requirement addresses any real concerns about

2    retroactivity or that an unwitting importer may have understood welded outlets to fall

3    outside the China Antidumping Duty Order before the scope rulings were issued. *Cf.*

4    *Parson Co.*, 195 F.3d at 463; *see also Bourseau*, 531 F.3d at 1164 n. 2.  In *United Steel*

5    *& Fasteners*, the Federal Circuit expressed concern that the importer had "relied" on the

6    government's course of conduct, specifically liquidation of its product, and that "CBP

7    initially did not view [the importer's] entries as within scope."  947 F.3d at 802-03.  If an

8    unwitting FCA defendant demonstrates that it, in fact, relied on CBP's liquidation of its

9    product, that defendant can use such evidence in an attempt to rebut allegations that it

10   acted knowingly under the False Claims Act.  Conversely, if an importer knowingly

11   avoids paying antidumping duties, then the Federal Circuit's concerns do not apply, and

12   the importer should not be rewarded for successfully committing fraud.

13   Second, *United Steel & Fasteners* does not limit the United States' ability to

14   recover damages under the FCA.  *United Steel & Fasteners* does not address fraud

15   against the United States: Commerce did not contend the importers at issue committed

16   fraud, and, in reaching its decision, the Federal Circuit appears to have assumed that

17   importers had not committed fraud.  For example, the court noted that, after the

18   importers submitted their requests for scope rulings, Commerce specifically instructed

19   them to continue to import the product at issue without paying antidumping duties.  *Id.* at

20   803.

21   Recovery under the FCA requires proof that a defendant acted knowingly when

22   committing a violation, and the statute provides a remedy for fraud that is separate and

23   independent from administrative payment processes like Section 351.225(l)(3), which

---

24   applicable [] rules and regulations. . . . [T]he defendant['s] contention that they made
25   reasonable interpretation of. . . rules and regulations only goes to the scienter element
     and whether the defendants acted 'knowingly' as defined in 31 U.S.C. § 3729(b)."
26   *United States v. Estate of Rogers*, 2001 WL 818160, at *4 (E.D. Tenn. June 28, 2001);
     *accord Parsons*, 195 F.3d at 463; *United States ex rel. Colucci v. Beth Israel Med. Ctr.*,
27   785 F. Supp. 2d 303, 316 (S.D.N.Y. 2011).

11

1    merely addresses when Customs can suspend liquidation and require cash deposits in the

2    normal course.  In similar contexts, numerous courts have recognized that the United

3    States need not follow administrative remedies designed to deal with overpayments and

4    underpayments when using the FCA to recover damages for fraud.  For example, in

5    *United States ex rel. A+ Homeshare, Inc. v. Medshares Management Group., Inc.*, 400

6    F.3d 428 (6th Cir. 2005), the Sixth Circuit recognized that the failure of the

7    government's fiscal intermediary to issue a notice of provider reimbursement (NPR) did

8    not limit FCA damages because the NPR is "an administrative mechanism to make

9    'necessary adjustments due to previously made overpayments or underpayments' not [] a

10    remedial mechanism for fraud.  FCA is the exclusive remedy provided by Congress to

11    recover for fraudulent claims made against the Government."  *Id.* at 455-56.  Courts have

12    similarly long distinguished between "a claim cognizable within the [agency's]

13    administrative framework" and a relator's claim "alleging fraud against the United States

14    government."  *United States ex rel. Body v. Blue Cross & Blue Shield*, 156 F.3d 1098,

15    1110 (11th Cir. 1998); *see also United States v. Kaiser Foundation Health Plan*, 2013

16    WL 4605096, at *5 (N.D. Cal. Aug. 28, 2013); *United States v. Estate of Rogers*, 2001

17    WL 818160, at *24 (E.D. Tenn. June 28, 2001).

18        Finally, the Court of International Trade has already recognized that regulations

19    governing liquidation do not prevent the United States from recovering for fraud.  In

20    *United States v. Great Neck Saw Mfrs, Inc.*, 311 F. Supp. 3d 1337 (C.I.T. 2018), the

21    Court of International Trade held that "neither liquidation nor the general concept of

22    'finality' bar the recovery of duties or a civil penalty" for misconduct under 19 U.S.C. §

23    1592.  *Id.* at 1345.  In that case, the court also recognized that rules preventing recovery

24    of additional duties after liquidation should not prevent the United States from

25    recovering duties to which it was entitled but of which it was deprived due to the

26    importer's fraud, gross negligence, or negligence.  *Id.* at 1345-46.  Just as the United

27

28

States may recover damages for misconduct, including fraud, under § 1592, it may also recover damages for violations of the FCA.  Defendants' interpretation of *United Steel & Fasteners* would yield an absurd result in which an importer that knowingly avoided payment of antidumping duties could avoid all liability for such conduct merely by filing a meritless request for a scope ruling.  To avoid such a perverse result, the Court should reject Defendants' misinterpretation of *United Steel & Fasteners*.

Dated: May 29, 2020

JOSEPH H. HUNT
Assistant Attorney General
JAMIE ANN YAVELBERG
Director, Civil Division
COLIN M. HUNTLEY
Assistant Director, Civil Division
JENNIFER CHORPENING
Trial Attorney, Civil Division

/s/ Zoila Hinson
ZOILA E. HINSON
Trial Attorney, Civil Division
U.S. Department of Justice

Attorneys for the United States of America

13