MAYER BROWN LLP
MATTHEW H. MARMOLEJO (SBN 242964)
  mmarmolejo@mayerbrown.com
C. MITCHELL HENDY (SBN 282036)
  mhendy@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Tel: (213) 229-9500
Fax: (213) 576-8185

MAYER BROWN LLP
KELLY B. KRAMER (*pro hac vice*)
  kkramer@mayerbrown.com
1999 K Street, NW
Washington, D.C. 20006
Tel: (202) 263-3007
Fax: (202) 263-5207

Attorneys for Relator
ISLAND INDUSTRIES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ISLAND INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VANDEWATER INTERNATIONAL INC., *et al.*, <br><br> Defendants. | Case No. 2:17-cv-04393-RGK-KS <br><br> **PLAINTIFF-RELATOR ISLAND INDUSTRIES, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]** <br><br> Pretrial Conference: August 3, 2020 <br> Trial Date: August 18, 2020 <br> Courtroom: 850 <br> Judge: Hon. R. Gary Klausner |

In anticipation of the final pretrial conference and jury trial in this matter, Plaintiff-Relator Island Industries, Inc. (Island) submits this memorandum of contentions of facts and law. *See* L.R. 16-4.

## I. CLAIMS AND DEFENSES

### A. The Claims

This is a False Claims Act case. Island alleges that Defendants Smith Cooper International (SCI), Sigma Corporation (Sigma), and Vandewater International and its president and chief executive officer, Neil Ruebens (collectively, Vandewater), made and submitted reverse false claims in violation of 31 U.S.C. § 3729(a)(1)(G) by falsely declaring that their imported Chinese Welded Outlets were not subject to antidumping duties ("ADDs") and by otherwise mis-describing their products.

### B. The Elements

To prevail under the False Claims Act, Island must establish the following four elements as to each defendant: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Sci., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (internal citation omitted).

Three of the four elements are either not seriously disputed or have already been adjudicated by the Court. First, as to falsity, this Court recently ruled that falsity has been "conclusively establish[ed]" in light of the Department of Commerce's 2018 Scope Rulings. (Order, ECF #270, at 11.) This conclusion stems from the settled understanding that falsity is measured under applicable law. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999).

Second, the Defendants have never disputed the materiality element, which considers the natural or likely effect the misrepresentations had on the Government's decisions to collect money. *See e.g., United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, 2018 WL 1363487, at *11–12 (C.D. Cal. Feb. 12, 2018) (discussing materiality standards in reverse false claims case). Here, had

Defendants declared that Chinese Welded Outlets were subject to the antidumping duty order on butt-weld pipe fittings from China, the Government would have assessed and collected an ADD of 182.9%. Defendants' false statements were material to the Government's decision not to assess that ADD.

Third, as to damages, Defendants' false statements deprived the Government of significant sums of money in the form of evaded ADDs. "Damages for a reverse false claim consist of the difference between what the defendant[s] should have paid the government and what the defendant[s] actually paid the government." *United States v. Bourseau*, 531 F.3d 1159, 1172 (9th Cir. 2008). Here, Defendants paid no ADD at all, when they should have paid an ADD in the amount of 182.9% based on the value of all the Chinese Welded Outlets imported during the limitations period.[1]

Accordingly, the central issue in this trial will be whether Defendants made false statements with scienter. Scienter under the FCA does not require a specific intent to defraud. The FCA instead imposes liability on any person acting "knowingly," which is defined to include "actual knowledge," "deliberate ignorance," or "reckless disregard of the truth or falsity" of the statement. *See U.S. ex rel. Winter v. Gardens Reg'l Hosp.*, 953 F.3d 1108, 1122 (9th Cir. 2020); 31 U.S.C. § 3729(b)(1). Reckless disregard in the FCA context generally is considered as "an extreme version of ordinary negligence," *United States v. Mass. Hous. Fin. Agency,* 530 F.3d 980, 983 (D.C. Cir. 2008) (internal citation omitted).

Collectively, the definitions of knowingly reflect Congress's intent that FCA liability attach when parties fail "to make a limited inquiry so as to be reasonably certain" that their statements to the Government are truthful. *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (quoting S. Rep. No. 99-345, at 20 (1986)). While that inquiry must only be "reasonable and prudent under the circumstances," Congress and the

---

[1] While Defendants sought to limit damages based on the Customs' administrative principle of liquidation, the Court has already ruled that liquidation is not a limit on the Government's damages under the FCA. (*Id*. at 12.)

Ninth Circuit have confirmed that "at least some inquiry [must] be made." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (9th Cir. 2016). In particular, where a defendant has an obligation to be familiar with legal requirements, reckless disregard can be found where the defendant fails to inform himself of those requirements. *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001).

### C. Brief Summary of Island's Key Evidence

Defendants' false statements are found on the Form 7501s they submitted to Customs and Border Protection. In every such Form, Defendants falsely declared that their Chinese Welded Outlets were not subject to any ADD. The falsity of those statements is confirmed through the administrative record and history of enforcement of antidumping duties against Welded Outlets under the China and related Taiwan antidumping duty orders—including the Department of Commerce's authoritative determination that the statements were false in 2018 scope rulings issued to each of the trial defendants. *See* 57 Fed. Reg. 29,702, 29,703 (July 6, 1992) (China Order). Based on this history, the Court concluded that the falsity of these statements to CBP is conclusively established.

As for scienter, the evidence shows that Defendants each failed to undertake any inquiry into whether their Welded Outlets were subject to ADDs. This total failure to investigate amounts at least to reckless disregard, as Defendants—acting as importers of record for the welded outlets—were charged with exercising "reasonable care" under relevant Customs laws. As Island's trade expert, Kelli Thompson, will explain, importers of record must diligently investigate whether their imported merchandise is subject to duties, including antidumping duties.

Here, the undisputed evidence shows that no Defendant read or analyzed the China Order. Defendants' admissions regarding the lack of internal compliance policies and training confirms their reckless disregard. Defendants' testimony also demonstrates that they did not consult with third-party experts as to whether ADDs

were owed.[2] Because the FCA's "reckless disregard" standard considers what inquiry is reasonable in the circumstances, Ms. Thompson's testimony regarding the independent legal obligations imposed on Defendants is evidence that these failures satisfy the scienter requirement.

Moreover, evidence that Defendants knowingly evaded ADDs establishes scienter. The jury will hear evidence that each defendant engaged in suspicious if not prohibited trade conduct from which the jury can infer Defendants acted knowingly. For example, the jury will hear that SCI's Chinese manufacturer, Jinan Meide, expressly told the company that its Welded Outlets were butt weld pipe fittings. SCI replied that it agreed "100%" with the argument, and instructed the manufacturer to change the description of the product to include the term "butt weld" when shipping to the United States. SCI even changed its ADD stationary (used to explain why it believed ADDs did not apply to products) to describe its welded outlets as "threaded butt welded outlets" and "grooved butt welded outlets." But when the company learned that it was under investigation in connection with the China Order, SCI's Rob Tripp immediately ordered that those changes to documentation be reversed, deleting the phrase "butt weld" from the commercial paperwork. SCI and the manufacturer agreed, however, not to change the papers for shipments already en route to the United States, so as "to avoid more attention from [Customs]." (*See generally* Island's Sep. Stat., ECF #262–1, at ¶¶ 202–220.)

Evidence also shows that Sigma and Vandewater likewise intentionally acted to avoid ADDs. When Sigma learned of the forged fittings petition, it both changed its HTS codes for its imported welded outlets and researched whether it could invoke the butt-weld pipe fitting exemption in the forged fittings petition. Sigma claims the change was an isolated "mistake," but even after conducting the

---

[2] Sigma disputes this, but as explained in opposing its motion for summary judgment, the jury can easily discredit that unreliable and uncorroborated testimony and conclude, in light of the whole record, that Sigma did not consult with any import broker regarding ADDs on Welded Outlets.

research, Sigma continued to import the products without making any effort to determine if the China Order reached its products. The jury will also hear evidence that Sigma misdescribed its welded outlets as "couplings" in documentation submitted to CBP. (*See generally* Island's Sep. Stat., ECF #182-1, at ¶¶ 124–133.)

And as for Vandewater, the jury will hear not only that the company also engaged in improprieties with HTS codes and product descriptions, but also that the company had first-hand knowledge that ADDs applied to welded outlets. Vandewater worked closely with Skip Perkins, the original impetus for the 1992 Sprink-let scope ruling, who undoubtedly knew that welded outlet products were subject to ADDs. (*See generally,* MSJ Order, ECF #270, at 14–15; Island's Sep. Stat., ECF #263-1, at ¶¶ 78–89.)

### D. Summary of Defendants' Affirmative Defenses

#### 1. *Statute of Limitations*

The parties dispute the relevant statute of limitations. Island has asserted that a ten-year limitations period applies under 31 U.S.C. § 3731(b)(2). In *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019), the Supreme Court held that section 3731(b)(2)'s ten-year provision applies so long as the action is brought within three years of when certain Government officials knew or should have known the relevant facts underlying the FCA claim. *See United States ex rel. Fadlalla v. DynCorp Int'l*, 402 F. Supp. 3d 162, 194 (D. Md. 2019) (explaining defendants have burden under *Cochise* of establishing both dates of FCA violation and date Government official was put on notice). Defendants have not established any evidentiary basis for when a qualifying Government official was put on notice of the relevant facts of Island's FCA claim. Accordingly, Defendants are liable for damages arising from violations from June 13, 2007 to present.

### 2. *Public Disclosure Bar*

Defendants have previously attempted to assert an affirmative defense under the public disclosure bar provision in 31 U.S.C. § 3730(e)(4). As described in Island's opposition to SCI's motion for summary judgment, however, Defendants cannot meet their burden of proving the defense as no qualifying public disclosure took place. (*See generally*, Opp., ECF #262, at 18–20.) For example, Defendants' false statements were submitted on Form 7501s, which are submitted confidentially to CBP and are not publicly available. *See Customs & Intern. Trade Newsletter v. U.S. Customs and Border Prot.*, 588 F. Supp. 2d 51, 57–58 (D.D.C. 2008) (holding Form 7501s exempt from FOIA and noting information is more detailed and reliable than publicly available shipping records). The Court previously rejected this defense. (MTD Order, ECF #128, at 9–11.) Thus, if Defendants attempt to renew the argument at trial, Island anticipates raising a motion for directed verdict for lack of evidentiary basis to submit the defense to the jury.

### E. **Anticipated Evidentiary Issues**

The parties have filed numerous motions *in limine*. Island has filed six such motions:

1. MIL #1: To exclude Defendants' Expert Walter Sperko (ECF #227);
2. MIL #2: To exclude evidence regarding so-called "objective reasonableness" (ECF #228);
3. MIL #3: To exclude evidence that the Government has not intervened (ECF #229);
4. MIL #4: To exclude reference to False Claims Act remedies (ECF #230);
5. MIL #5: To exclude evidence of inability to satisfy a judgment (ECF #231); and
6. MIL #6: To exclude evidence contrary to Court's summary judgment order regarding falsity (ECF #271).

Defendants have filed a total of 12 motions *in limine*:[3]

1. Defendants' Joint MIL #1: To exclude Island's expert Kelli Thompson (ECF #220);
2. Defendants' Joint MIL #2: To exclude testimony concerning the Modernization Act (ECF #221);
3. Defendants' Joint MIL #3: To exclude certain import values (ECF #233);
4. Sigma MIL #1: To exclude evidence of Sigma's net worth and total imports (ECF #212);
5. Sigma MIL #2: To exclude evidence that Sigma ceased imports (ECF #213);
6. Sigma MIL #3: To exclude "double invoicing" evidence (ECF #214);
7. Sigma MIL #4: To exclude evidence that Sigma did not employ a professional customs broker (ECF #215);
8. Sigma MIL #5: To exclude evidence of the Sprink-let scope ruling (ECF #216);
9. Vandewater MIL #1: To exclude speculation regarding Lloyd Perkins (ECF #223);
10. Vandewater MIL #2: To exclude the term "confidential source" (ECF #224);
11. Vandewater MIL #3: To exclude evidence of other Vandewater conduct (ECF #225); and
12. SCI MIL #1: To exclude evidence of SCI's financial condition (ECF #232).

The parties will work to resolve evidentiary disputes in advance of trial. Island, however, anticipates that certain evidentiary issues may arise in connection

---

[3] To separate those motions for which multiple defendants joined, Island has renumbered some of these motions.

with defense witnesses who were designated as corporate representatives under Rule 30(b)(6) yet who lack personal knowledge of material facts in question. For instance, Jason Hild was designated as SCI's corporate representative for purposes of deposition. In that deposition, Hild explained that his knowledge regarding (1) SCI's importation of Welded Outlets, (2) the emails SCI exchanged with Jinan Meide relating to SCI's decision to label its products "butt weld outlets," and (3) Mr. Tripp's decision to delete the phrase "butt weld" upon learning of the DOJ's investigation was based on conversations with Mr. Tripp. While Island is entitled to use the transcript of Mr. Hild's 30(b)(6) deposition for any purpose under Rule 32(a)(3), Mr. Hild should not be permitted to testify at trial regarding matters as to which his knowledge is predicated entirely on inadmissible hearsay.

Similarly, various Sigma witnesses (including its corporate representative) testified at deposition that a former Sigma employee "would have" telephoned a customs broker to ask whether the Sigma Unilet Welded Outlets were subject to any ADDs. Each of these witnesses ultimately conceded, however, that they did not personally see, hear, or otherwise witness any such telephone conversation. Moreover, Sigma has not produced a single document to suggests that any such call took place. Absent appropriate foundation—and none has been laid to date—Sigma witnesses should not be permitted to testify that this former employee consulted with a customs broker as to whether ADDs applied to its Unilet product.

### F.  Issues of Law

In moving for summary judgment, Defendants raised a legal defense of "objective reasonableness," claiming that no scienter is possible under the Supreme Court's decision in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). As explained in Island's MIL #2, the defense of "objective reasonableness" is unavailable to Defendants for several reasons: (1) *Safeco* does not apply to FCA cases, as the FCA's definition of "knowingly" differs in material respects to the Fair Credit Reporting Act analyzed in *Safeco*; (2) Defendants had no

contemporaneous interpretation of the China Order and, under the Supreme Court's more recent decision in *Halo Electronics v. Pulse Electronics Inc.*, 136 S. Ct. 1923 (2016), cannot assert a post hoc interpretation to defeat scienter; (3) the China Order is not ambiguous, at least not with respect to its applicability to Chinese Welded Outlets; (4) Defendants were warned away from their post hoc interpretation based on the administrative record, including the 1992 Sprink-Let Scope Ruling.

## II. BIFURCATION

The parties have not requested bifurcation.

## III. JURY TRIAL

Island's claims under the False Claims Act are triable to a jury as a matter of right, which Island timely demanded. (Complaint, ECF #1, at 20.)

## IV. ATTORNEYS' FEES

The False Claims Act provides that the relator "shall" receive reasonable expenses, attorneys' fees, and costs awarded against the defendants. 31 U.S.C. § 3730(d)(2). Island will accordingly seek an award of reasonable attorneys' fees incurred in this action.

## V. ABANDONED ISSUES

The parties have not abandoned any claims or affirmative defenses.

Dated: July 13, 2020             MAYER BROWN LLP

*/s/Matthew H. Marmolejo*
Kelly B. Kramer
Matthew H. Marmolejo
C. Mitchell Hendy
Attorneys for Relator
ISLAND INDUSTRIES, INC.