MAYER BROWN LLP
MATTHEW H. MARMOLEJO (SBN 242964)
 *mmarmolejo@mayerbrown.com*
C. MITCHELL HENDY (SBN 282036)
 *mhendy@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Tel:  (213) 229-9500
Fax: (213) 576-8185

MAYER BROWN LLP
KELLY B. KRAMER (*pro hac vice*)
 *kkramer@mayerbrown.com*
1999 K Street, NW
Washington, D.C. 20006
Tel:  (202) 263-3007
Fax: (202) 263-5207

Attorneys for Relator
ISLAND INDUSTRIES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ISLAND INDUSTRIES, INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>VANDEWATER INTERNATIONAL INC., *et al.*,<br>          Defendants. | Case No. 2:17-cv-04393-RGK-KS<br><br>**PLAINTIFF-RELATOR ISLAND INDUSTRIES, INC.'S TRIAL BRIEF [L.R. 16-10]**<br><br>Trial Date: August 17, 2021<br>Courtroom:  850<br>Judge:  Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I.      ISLAND'S CASE .................................................................................. 1

II.     SIGMA'S LEGAL DEFENSES ............................................................. 5

    A.   Sigma's liquidation argument runs contrary to the Court's prior ruling that liquidation principles do not limit FCA damages .............. 5

    B.   Sigma's reliance on *Safeco* raises threshold questions of law that the Court has not yet resolved ................................................................ 8

III.    ANTICIPATED EVIDENTIARY ISSUES BASED ON RECENT DEVELOPMENTS ............................................................................ 10

        1.   Mr. Sperko's "Scienter" Testimony (Rules 702, 402, and 403) .................................................................................. 12

        2.   Sigma's "Routine Practice" (Rules 406, 602) ........................ 13

        3.   Island's Trade-Secret Litigation Against Anvil (Rules 402, 403, 608(b)) ........................................................... 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*ASC Engineered Sols. LLC v. Island Indus., Inc.*,
  No 2:20-2284 (W.D. Tenn. Jul. 30, 2021) (attached as Exhibit B) ............ 14, 15

6

*Halo Elecs. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ........................................................................................ 9

7

*Merck Sharp & Dohme Corp. v. Albrecht*,
  139 S. Ct. 1668 ................................................................................................... 7

8

9

*Safeco Insurance. Co. v. Burr*,
  551 U.S. 47 (2007) ................................................................................... 8, 9, 10

10

11

*Shelton v. Hal Hays Constr., Inc.*,
  2016 WL 8904414 (C.D. Cal. July 29, 2016) .................................................. 10

12

13

*Syed v. M-I LLC*,
  2014 WL 4344746 (E.D. Cal. Aug. 28, 2014) ................................................. 10

14

15

*United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
  530 F.3d 980 (D.C. Cir. 2008) ........................................................................... 3

16

17

*United States ex rel. Morsell v. NortonLifeLock, Inc.*,
  2021 WL 3363446 (D.D.C. Aug. 2, 2021) ........................................................ 9

18

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) .......................................................................... 1, 7

19

20

*United States ex rel. Poehling v. UnitedHealth Grp., Inc.*,
  2018 WL 1363487 (C.D. Cal. Feb. 12, 2018) .................................................... 2

21

22

*United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr.*,
  953 F.3d 1108 (9th Cir. 2020) ........................................................................... 2

23

24

*United States v. Amparo*,
  68 F.3d 1222 (9th Cir. 1995) ............................................................................. 7

25

26

*United States v. Bourseau*,
  531 F.3d 1159 (9th Cir. 2008) ........................................................................ 2, 3

27

28

- ii -

# TABLE OF AUTHORITIES
(continued)

Page

*United States v. Kahre,*
  737 F.3d 554 (9th Cir. 2013) ................................................................. 7

*United States v. Mackby,*
  261 F.3d 821 (9th Cir. 2001) ............................................................. 3, 9

*United States v. Rosales,*
  7 F. App'x 766 (9th Cir. 2001) ........................................................... 13

*United States v. Scholl,*
  166 F.3d 964 (9th Cir. 1999) .............................................................. 13

*United States v. United Healthcare Ins. Co.,*
  848 F.3d 1161 (9th Cir. 2016) .............................................................. 3

**Statutes**

14 U.S.C. § 1484(a)(1)(B) ...................................................................... 9

31 U.S.C. § 3729(a)(1)(G) ...................................................................... 1

31 U.S.C. § 3729(b)(1) ........................................................................... 2

**Other Authorities**

Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe
  Fittings from the People's Republic of China, 57 Fed. Reg. 29702
  (July 6, 1992) ........................................................................... *passim*

Fed. R. Evid. 401 .................................................................................... 8

Fed. R. Evid. 402 ......................................................................... 8, 12, 14

Fed. R. Evid. 403 ................................................................... 8, 12, 14, 15

Fed. R. Evid. 406 ........................................................................... 13, 14

Fed. R. Evid. 602 .................................................................................. 13

Fed. R. Evid. 608(b) ............................................................................. 14

Fed. R. Evid. 702 .................................................................................. 12

- iii -

Plaintiff-Relator Island Industries, Inc. (Island) submits this trial brief to supplement its previously filed Memorandum of Contentions of Fact and Law and to update the Court on recent developments that Island anticipates could give rise to evidentiary issues and questions of law in the upcoming trial. *See* L.R. 16-10.

## I.   ISLAND'S CASE

In Island's view, this is a straightforward False Claims Act case.  Island alleges that Defendant Sigma Corporation violated 31 U.S.C. § 3729(a)(1)(G) by falsely declaring (nearly 200 times) that its imported Chinese Welded Outlets were not subject to antidumping duties ("ADDs") and by falsely describing its outlets as "steel couplings"—a product not subject to ADDs.  In truth, Sigma's products were not steel couplings—they were Welded Outlets—and they were subject to a 182.9% ADD under the Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China, 57 Fed. Reg. 29702 (July 6, 1992) ("China Order").

As the Court noted during the final pretrial conference, this trial will be all about scienter, as the other elements cannot be seriously disputed or have already been adjudicated by the Court.

First, as to falsity, the Court confirmed at the final pretrial conference that falsity is established in light of Commerce's July 23, 2021 Final Results of Redetermination that once again determined that welded outlets remain within scope.  Sigma has confirmed in writing that the July 23 decision applies with full force to Sigma's welded outlets.  As falsity is measured under applicable law, *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999), the Court reiterated its ruling from last year's summary judgment decision, holding that falsity is established as a matter of law.  The Court also granted in part Island's motion in limine to exclude Sigma's expert witness, Walter Sperko—holding that he could not testify as to issues of falsity.

Second, Sigma has never disputed the materiality element, which considers the natural or likely effect the misrepresentations had on the Government's decisions regarding the collection of duties. *See e.g., United States ex rel. Poehling v. UnitedHealth Grp., Inc*., 2018 WL 1363487, at *11–12 (C.D. Cal. Feb. 12, 2018) (discussing materiality standards in reverse false claims case). Here, had Sigma declared that Chinese Welded Outlets were subject to the antidumping duty order on butt-weld pipe fittings from China, the Government undoubtedly would have assessed and collected an ADD of 182.9%. Similarly, Sigma's false descriptions of its welded outlets as "steel couplings"—a product description that even Sigma's witnesses admit was inaccurate—had the natural and likely effect of hindering the Government's ability to collect owed antidumping duties because steel couplings (unlike welded outlets) are not subject to ADDs.

Third, as to damages, Sigma's false statements allowed it to avoid more than $8.1 million of ADDs. This calculation is straightforward: "[d]amages for a reverse false claim consist of the difference between what the defendant[s] should have paid the government and what the defendant[s] actually paid the government." *United States v. Bourseau*, 531 F.3d 1159, 1172 (9th Cir. 2008). Here, Sigma imported more than $4.4 million of Chinese Welded Outlets on which it should have paid an 182.9% ADD, yet it paid nothing at all.

Accordingly, the central issue in this trial will be whether Sigma acted with scienter. Scienter under the FCA does ***not*** require a specific intent to defraud. The FCA instead imposes liability on any person acting "knowingly," which is defined to include "actual knowledge," "deliberate ignorance," or "reckless disregard of the truth or falsity" of the statement. *See United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr.*, 953 F.3d 1108, 1122 (9th Cir. 2020); 31 U.S.C. § 3729(b)(1). The Ninth Circuit has described the deliberate-ignorance and reckless-disregard standards as reflecting Congress's attempt "to reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and

2

failed to make simple inquiries which would alert him that false claims are being submitted." *Bourseau*, 531 F.3d at 1168.  And reckless disregard in the FCA context generally is considered as "an extreme version of ordinary negligence," *United States ex rel. K&R Ltd. P'ship  v. Mass. Hous. Fin. Agency,* 530 F.3d 980, 983 (D.C. Cir. 2008) (quotation marks and citation omitted).

Collectively, the definitions of "knowingly" reflect Congress's intent that FCA liability attach when parties fail "to make a limited inquiry so as to be reasonably certain" that their statements to the Government are truthful. *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (quoting S. Rep. No. 99-345, at 20 (1986)).  While that inquiry must only be "reasonable and prudent under the circumstances," Congress and the Ninth Circuit have confirmed that "at least some inquiry [must] be made." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1174 (9th Cir. 2016) (quotation marks and citation omitted).

Moreover, as the cases reflect, circumstances matter:  A more demanding inquiry is required when a defendant has a duty to familiarize itself with the legal requirements governing its claims. *See United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001).  That is important here because Sigma, as an importer of record, had an affirmative legal obligation to undertake reasonable efforts to determine whether its products were subject to ADDs.  Instead, the evidence will show that Sigma falsely represented that its Chinese Welded Outlets were not subject to any such ADDs, despite having undertaken no such inquiry whatsoever.  The evidence will show that during the relevant timeframe Sigma's compliance procedures regarding ADDs were either nonexistent or woefully deficient.  As Island's trade expert and licensed customs broker, Kelli Thompson, will explain, importers of record such as Sigma must diligently investigate whether their imported merchandise is subject to duties, including antidumping duties (which are distinct from ordinary tariff classifications and are a priority trade issue for Customs enforcement).

3

Here, however, the evidence will show that Sigma essentially ignored its obligations to ascertain whether its products were subject to ADDs. Sigma produced no documents showing that it conducted any investigation, reached any conclusions, or contacted any brokers or consultants as to whether Welded Outlets (or really, any of its products) were subject to ADDs. Sigma's witnesses readily admit that no one at the company knew of, read, or otherwise analyzed the China Order—let alone any other materials relevant to a responsible ADD inquiry. As Island explained in detail in its most recent motion *in limine*, Sigma's witnesses lack personal knowledge of *any* inquiry being made into whether the company's welded outlets were subject to ADDs. *See* Island's MIL #7, ECF #377. Because the FCA's "reckless disregard" and "deliberate ignorance" standards require defendants to make an inquiry that is reasonable in the circumstances, the record as a whole will show that Sigma's approach to ADDs was not simply negligent but was so wanting as to amount to at least reckless disregard under the FCA.[1]

On top of that, the jury will hear evidence that Sigma knowingly evaded ADDs, and the evidence will show that Sigma misdescribed its welded outlets as "steel couplings" in documentation submitted to CBP. (*See generally* Island's Sep. Stat., ECF #182-1, at ¶¶ 124–133.) In addition, when Sigma learned of the forged fittings petition, it both changed its HTS codes for its imported welded outlets and researched whether it could invoke the butt-weld pipe fitting exemption in the forged fittings petition. Sigma claims the change was an isolated "mistake," but even after conducting the research, Sigma continued to import the products without making any effort to determine if the China Order reached its products.

---

[1] The jury will also hear sufficient evidence to conclude that Sigma was deliberately ignorant of the China Order and the possibility it owed significant ADDs. For example, the testimony of Mark Woehrel regarding the ease with which he found the Sprink-let scope ruling and other ADD materials demonstrating that welded outlets were covered will show that had Sigma exercised basic levels of diligence it would have discovered that it owed significant ADDs.

4

## II.   SIGMA'S LEGAL DEFENSES

Sigma rests its defense primarily on a pair of legal arguments that are improper for the jury.

### A.   Sigma's liquidation argument runs contrary to the Court's prior ruling that liquidation principles do not limit FCA damages.

First, in light of Commerce's July 23, 2021 final report—which was issued after the motion *in limine* deadline—Sigma contends that the final paragraph of the 104-page report somehow nullifies any and all liability and damages in this case. *See* Sigma's *ex parte* Second MSJ, ECF #392.  Sigma argues that Commerce's anticipated instructions to CBP to liquidate (and to lift the suspension the liquidation of) entries pre-dating the initiation of the 2018 scope ruling inquiry "without regard to antidumping duties" absolves Sigma of any wrongdoing.  Sigma is incorrect.

The Court already determined last year that liquidation—that is, the administrative remedy that CBP uses to collect duties—does not "bar[ ] the recovery of damages under the FCA."  MSJ Order, ECF # 270, at 12.  The Court reached that legal conclusion after resolving two antecedent issues.  First, the Court analyzed applicable Customs law and determined that scope rulings have retroactive effect "for purposes of FCA liability" because scope rulings do *not* change (let alone expand) the substantive scope of an antidumping duty order.  *See id.* at 11 (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)).  Thus, when Commerce concludes in a final scope ruling that a product is within scope, it means it has *always* been in scope.  *See id.* (citing *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 961 F. Supp. 2d 1291, 1304 (C.I.T. 2014) (effect of scope ruling is to "confirm[ ] that a product is, and has been, the subject of" an ADD Order)).

Second, as the Court explained, "[l]iquidation is a different animal" than the FCA.  MSJ Order, ECF #270, at 11.  Liquidation does not concern the importer's

intent/scienter, and so Commerce "rationally elected to design a regulatory scheme [*i.e.,* liquidation] that promotes administrative finality," while the FCA's "broad mandate" can reach prior misstatements but only where the importer acted with sufficient knowledge. *Id*.; *see also* United States' Statement of Interest, ECF #254 at 8–13; Island's Supp. MSJ Br., ECF #261, at 3–5; Island's ex parte Opp'n, ECF #395 at 2–7. Sigma's arguments to the contrary would "carve out from the FCA fraud by importers who have not yet received a scope ruling from Commerce . . . a result . . . at odds with the FCA's broad mandate." MSJ Order, ECF #270 at 13. Accordingly, the Court held "damages are not limited by the liquidation rules set forth above." *Id.*

Nothing in the one-paragraph discussion of Commerce's instructions regarding liquidating Vandewater's welded outlet entries casts doubt on the Court's previous legal analysis. Commerce's instructions that CBP liquidate certain earlier entries without regard to antidumping duties comport with current liquidation regulations. Those instructions in no way transform Sigma's statements that no ADD obligation applied into anything other than false declarations. Nor do they excuse Sigma from FCA damages.

Recently, Sigma indicated to Island that it intends to introduce liquidation concepts to the jury, notwithstanding the Court's 2020 MSJ ruling. On August 6, Sigma disclosed graphic materials it intends to show at trial, including a blown-up and highlighted reproduction of the discussion of liquidation found on page 103 of Commerce's recent ruling. *See* Exhibit A (attached). Sigma apparently hopes to argue to the jury that the company had no ADD obligations (or that the government suffered no damages) in light of Commerce's anticipated instructions to CBP.

Island objects to this line of argument as improper for at least two reasons. First, Sigma's interpretation of Commerce's one-paragraph discussion of liquidation runs contrary to the Court's previous rulings that (1) Sigma falsely declared that it had no antidumping duty obligation and (2) "damages are not

6

limited by [Commerce's and CBP's] liquidation rules."  MSJ Order, ECF #270, at 12–13.  Second, whether liquidation principles have any effect on the availability of damages is a question of law for the Court.  Although the jury decides facts in a case, "the judge is the arbiter of the law" and "the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." *United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995) (quotation marks and citations omitted).

The Ninth Circuit's decision in *United States v. Kahre*, 737 F.3d 554 (9th Cir. 2013) aptly illustrates the impropriety of Sigma's intended argument.  The issue in *Kahre* involved assessing the value of gold and silver coins that defendants used to pay wages (and thus avoid reporting payroll and income taxes).  *Id*. at 559. The defendants contended that they lacked "the requisite notice" that the coins were taxable at fair market value as opposed to face value.  *Id*. at 561.  The district court rejected that argument and imposed the fair-market-value valuation as a matter of law under analogous precedents, statutory provisions, and regulations.  *Id*. at 561–62.  The Ninth Circuit affirmed that the district court "properly excluded evidence"—including one of defendants' experts—"that conflicted with its correct legal ruling." *Id*. at 576.[2]

So too here, the Court should exclude evidence and argument that would invite the jury to second guess the Court's determination that liquidation principles are irrelevant to FCA damages (as well as the falsity of Sigma's statements regarding the non-existence of an obligation to pay the ADDs).  This issue is reserved to the Court as a matter of law in part because "judges are better suited than are juries to understand and to interpret agency decisions in light of the governing statutory and regulatory context."  *Merck Sharp & Dohme Corp. v.*

---

[2] These same legal principles further support the Court's reiterated ruling that falsity has been established as a matter of law because that element considers whether the statements "were accurate in light of applicable law."  *U.S. ex rel. Oliver v. The Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999).

7

*Albrecht*, 139 S. Ct. 1668, 1680 (concluding "the judge, not a jury," resolves legal question of agency disapproval in preemption context).

Accordingly, any argument regarding liquidation principles should be excluded as irrelevant to determining whether any *fact* is more or less probable. Fed. R. Evid. 401, 402.  Moreover, any such argument should be excluded under Rule 403 as the legal and technical nature of the argument would seriously risk confusing or misleading the jury as to the applicable FCA law (to say nothing of wasting the jury's and the Court's time).

Island therefore requests that the Court exclude any evidence or argument regarding liquidation principles—whether in connection with the falsity of Sigma's statements, the existence of an obligation, or the amount of damages owed under the FCA—as irrelevant and unduly confusing for the jury.  Fed. R. Evid. 402, 403.

**B.**     **Sigma's reliance on *Safeco* raises threshold questions of law that the Court has not yet resolved.**

Second, at summary judgment (and again today in its trial brief, ECF #401, at 2–6), Sigma spent pages insisting that its made-for-litigation position that Welded Outlets are not Butt Weld Pipe Fittings is "objectively reasonable."   Sigma apparently intends to relitigate whether its Welded Outlets fall within the scope of the China Order in the guise assembling a purported "objectively reasonable" interpretation of the China Order that would exonerate its failure to pay ADDs.  The Court should not permit such argument to the jury because Sigma's proposed defense of "objective reasonableness" under the Supreme Court's Fair Credit Reporting Act decision in *Safeco Insurance. Co. v. Burr*, 551 U.S. 47 (2007) presents three threshold questions of law.

- First, does *Safeco* apply in FCA cases generally (given the different statutory language) or in this case specifically (given the independent obligations on importers of record)?

8

Island and the Department of Justice have contended that *Safeco* has no application in FCA cases given the different statutory language.  But even if *Safeco* applied in some FCA cases, importers of record are under an affirmative legal duty to exercise "reasonable care" when declaring the "value, classification and rate of duty applicable" to imported merchandise.   14 U.S.C. § 1484(a)(1)(B).   Under Ninth Circuit precedent, a defendant can violate the FCA when, despite being under an "obligation to be familiar with the legal requirements," he "fail[s] to inform himself of those requirements."  *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001).  Accordingly, the Supreme Court's decision in *Safeco*, interpreting the FCRA, should not apply to cases brought under the FCA against Defendants who are under independent obligations to inform themselves of the law.

- Second, even if *Safeco* could apply in some FCA cases concerning Customs laws, can Sigma assert a post-hoc interpretation of the China Order that it did not contemporaneously have?

Island and the Government have argued that *Safeco* is inapplicable in cases where the defendant failed to form a contemporaneous opinion regarding the scope of the supposedly ambiguous regulation. *See Halo Elecs. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *see also* United States' Statement of Interest, ECF # 254, at 3–8 (arguing that *Safeco* does not apply to FCA cases and does not apply where the purported interpretation "played no role in the defendant's actual conduct"). Indeed, just last week, one District Judge rejected the same style of argument Sigma advances and noted the lack of any precedent holding "that post-hoc interpretations are acceptable" for purposes of FCA liability under *Safeco* and *Halo Electronics*. *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 2021 WL 3363446, at *9 (D.D.C. Aug. 2, 2021).

- Third, is Sigma's proposed interpretation of the China Order "objectively unreasonable"?

9

"*Safeco* strongly suggests that the issue of whether a defendant's reading of the FCRA was 'objectively unreasonable' is a question of law." *Syed v. M-I LLC*, 2014 WL 4344746, at *2 n.1 (E.D. Cal. Aug. 28, 2014); *see also Shelton v. Hal Hays Constr., Inc.*, 2016 WL 8904414, at *3  (C.D. Cal. July 29, 2016) ("[W]hether a defendant's reading of the FCRA was 'objectively reasonable' is a question of law.").   For instance, is it "objectively reasonable" to rely on technical definitions based on industry standards that are not incorporated into the China Order?  Is it "objectively reasonable" to rely only on HTS tariff classifications, when ADD Orders, including the China Order, routinely disclaim that the written description and not the HTS classification controls?  To the extent the Court has doubts about the reasonableness of Sigma's proffered interpretation, Island submits that the trial evidence will reveal that Sigma's litigation position is unreasonable under applicable Customs law.  In any event, however, the ultimate question is one for the Court, and Sigma should not be permitted to argue the "reasonableness" of its post hoc interpretation to the jury.

The Court has not previously resolved any of these threshold questions, each of which are matters of law.  *See* MSJ Order, # 270, at 14 (assuming "[e]ven if *Safeco* applies in the FCA context" and noting Government's dispute, question of fact remained "as to whether Defendants were 'warned away' from their interpretation of the China Order").  Only if the Court resolves each of the above questions in Sigma's favor could the jury play a role in resolving what the Court deemed a factual question of whether Sigma was "warned away" from its proffered interpretation. *Id*.

## III.   ANTICIPATED EVIDENTIARY ISSUES BASED ON RECENT DEVELOPMENTS

At the final pretrial conference, the Court issued tentative rulings on the parties' motions in limine as follows:

10

**Island's MILs:**

    1. MIL #1: To exclude Defendants' Expert Walter Sperko (ECF #227)

        a. GRANTED as to issues of falsity; DENIED as to issues of scienter

    2. MIL #2: To exclude evidence regarding so-called "objective reasonableness" (ECF #228)

        a. DENIED

    3. MIL #3: To exclude evidence that the Government has not intervened (ECF #229);

        a. GRANTED

    4. MIL #4: To exclude reference to False Claims Act remedies (ECF #230);

        a. GRANTED

    5. MIL #5: To exclude evidence of inability to satisfy a judgment (ECF #231);

        a. GRANTED

    6. MIL #6: To exclude evidence contrary to Court's summary judgment order regarding falsity (ECF #271);

        a. DENIED AS MOOT, as the Court has held falsity is established as a matter of law

    7. MIL #7: To exclude evidence under Rule 406 regarding Sigma's alleged "routine practice" (ECF # 377).

        a. DENIED

**Sigma's MILs (including co-Defendants' joint MIL to exclude Kelli Thompson)**

    1. Defendants' Joint MIL #1: To exclude Island's expert Kelli Thompson (ECF #220);

11

        a.  GRANTED as to testimony on the Mod Act; DENIED as to testimony regarding importers' and brokers' responsibilities/conduct.

2. Sigma MIL #1:  To exclude evidence of Sigma's net worth and total imports (ECF #212);

        a.  GRANTED

3. Sigma MIL #2:  To exclude evidence that Sigma ceased imports (ECF #213);

        a.  GRANTED

4. Sigma MIL #3:  To exclude "double invoicing" evidence (ECF #214);

        a.  GRANTED

5. Sigma MIL #4:  To exclude evidence that Sigma did not employ a professional customs broker (ECF #215);

        a.  DENIED

6. Sigma MIL #5:  To exclude evidence of the Sprink-let scope ruling (ECF #216);

        a.  DENIED

The parties are continuing to work toward minimizing evidentiary disputes in advance of trial.  Island, however, anticipates that certain additional evidentiary issues may arise and wishes to call the Court's attention to the following recent developments.

**1.    Mr. Sperko's "Scienter" Testimony (Rules 702, 402, and 403)**

Island understands the Court's tentative ruling with respect to the testimony of Sigma's proffered expert, Walter Sperko (Island's MIL #1), as permitting testimony that goes to Sigma's knowledge, but prohibiting testimony as to falsity, an element that has been established as a matter of law.  Island respects that ruling, but highlights the difficulty for Sigma to thread that needle.  As Mr. Sperko never

12

consulted with Sigma prior to litigation, he has no first-hand knowledge of Sigma's contemporaneous understanding of the antidumping duty order. The Ninth Circuit has repeatedly confirmed that expert testimony as to the reasonableness of a defendant's understanding of the law should be excluded as a legal conclusion. *See United States v. Rosales*, 7 F. App'x 766 (9th Cir. 2001) ("Rosales's expert appears to have been consulted only for trial and was not involved in the filing of her 1997 [tax] return. Therefore, he too could not have offered any testimony as to her actual confusion or good faith in not reporting the rental income."); *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (excluding expert testimony regarding reasonableness of defendant's belief regarding tax obligations). Island will object if Sigma attempts to elicit any such legal opinions. *See* Sigma's Contentions of Fact and Law, ECF #379, at 5 (previewing that Mr. Sperko will testify that "applying industry standards, Sigma's Unilet, Safelet, and imported grooved outlets are not butt-weld fittings").

### 2.    Sigma's "Routine Practice" (Rules 406, 602)

Island understands the Court's tentative ruling denying Island's motion in limine with respect to Sigma's proposed "routine practice" testimony under Rule 406 (Island's MIL #7). But the Court did not elaborate on the contours of that ruling, and Island anticipates that Sigma's witnesses may improperly rely on matters outside their personal knowledge and may speculate as to what departed employees would have done. Island understands the Court's tentative ruling as permitting Sigma to attempt to lay foundation at trial for a Rule 406 argument. For the reasons Island explained in the motion in limine, however, Island anticipates that the evidence will not satisfy the Ninth Circuit's threshold to qualify as "routine practice" under Rule 406 and expects to re-raise the objection based on trial testimony.

Moreover, Island wishes to alert the Court that separate from Rule 406, Sigma's witnesses offered deposition testimony about Ms. Pat Thakur (the retired

13

imports manager who would have first-hand knowledge about any investigation into ADDs applicable to Unilets in 2013) that ran afoul of Rule 404. For instance, Mr. Bhattacharji said he was "sure [Ms. Thakur] would have looked at [the diligence related to import compliance associated with Unilet products] because she would be responsible after that," and Ms. Velazquez testified that Ms. Thakur "was a very strict woman" who was "on the phone with a broker . . . 95 percent of the time." Testimony about Ms. Thakur's reputation for conscientiousness falls outside the scope of Rule 406 (as it speaks of "character for care," *see* Fed. R. Evid. 406, advisory committee notes, not habit or routine practice) and instead directly conflicts with Rule 404(a)'s prohibition of conformity evidence.

### 3. Island's Trade-Secret Litigation Against Anvil (Rules 402, 403, 608(b))

On July 30, 2021, a jury in the Western District of Tennessee returned a verdict that Island violated federal and state trade secrets laws and awarded Anvil International, LLC (now known as ASC Engineered Solutions LLC) $1.5 million based on expenses Anvil incurred in defending itself in this FCA action. *See ASC Engineered Sols. LLC v. Island Indus., Inc.*, No 2:20-2284 (W.D. Tenn. Jul. 30, 2021), ECF #90 (attached as Exhibit B) ("Anvil Trial").

The existence of the Anvil trial, jury verdict, and judgment are entirely irrelevant to this trial against Sigma. Fed. R. Evid. 402. They do not bear on any fact at issue in this case. They also are not probative of any witnesses' character for truthfulness or untruthfulness. The jury and Court in the Anvil Trial made no finding as to the credibility or truthfulness of Island's witnesses. Under Rule 608(b), extrinsic evidence to prove specific instances of a witness's conduct is inadmissible, and cross-examination is permitted only if probative of truthfulness or untruthfulness. Nothing about the Anvil Trial satisfies these threshold conditions, and, in any event, the unfair prejudice and confusion that would result from introduction of the matter (and the trial-within-a-trial that it would create) would

14

substantially outweigh any probative value.  Fed. R. Evid. 403.  Thus, all mention of the Anvil Trial (for any purpose) should be prohibited.

Dated: August 10, 2021                    MAYER BROWN LLP

                                          */s/Matthew H. Marmolejo*
                                          Kelly B. Kramer
                                          Matthew H. Marmolejo
                                          C. Mitchell Hendy
                                          Attorneys for Relator
                                          ISLAND INDUSTRIES, INC.

15