1   MAYER BROWN LLP
    MATTHEW H. MARMOLEJO (SBN 242964)
2   *mmarmolejo@mayerbrown.com*
    C. MITCHELL HENDY (SBN 282036)
3   *mhendy@mayerbrown.com*
    350 South Grand Avenue, 25th Floor
4   Los Angeles, CA 90071-1503
    Tel:  (213) 229-9500
5   Fax: (213) 576-8185

6   MAYER BROWN LLP
    KELLY B. KRAMER (*pro hac vice*)
7   *kkramer@mayerbrown.com*
    1999 K Street, NW
8   Washington, D.C. 20006
    Tel:  (202) 263-3007
9   Fax: (202) 263-5207

10  Attorneys for Relator
    ISLAND INDUSTRIES, INC.
11

12              **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14

15  UNITED STATES OF AMERICA *ex*          Case No. 2:17-cv-04393-RGK-KS
    *rel.* ISLAND INDUSTRIES, INC.,
16                                         **ISLAND INDUSTRIES, INC.'S**
              Plaintiff,                   **NOTICE OF MOTION AND**
17                                         **MOTION FOR AN AWARD OF**
              vs.                          **ATTORNEYS' FEES, COSTS, AND**
18                                         **EXPENSES UNDER 31 U.S.C.**
    VANDEWATER INTERNATIONAL                **§ 3730(d)(2)**
19  INC.; NEIL RUEBENS; ANVIL
    INTERNATIONAL, LLC; SIGMA             Hearing Date:  April 4, 2022
20  CORPORATION; SMITH COOPER             Time:  9:00am
    INTERNATIONAL; ALLIED RUBBER          Courtroom 850
21  & GASKET COMPANY, and JOHN            Hon. R. Gary Klausner
    DOES Nos. 1-10.,
22
              Defendants.
23

24

25

26

27

28

**TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 4, 2022, at 9:00 a.m., or as soon thereafter as may be heard in Courtroom 850 of the above-entitled court, at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, before the Honorable Judge Klausner, Plaintiff-Relator Island Industries, Inc. will move – and hereby do move – this Court for an order awarding attorneys' fees, costs, and expenses under 31 U.S.C. § 3730(d)(2).

Plaintiff-Relator premises this Motion upon this Notice of Motion, the Memorandum of Points and Authorities attached hereto, declarations and exhibits submitted in support thereof, and such oral and documentary evidence as may be presented at any hearing on this Motion.

Plaintiff-Relator certifies that this Notice and Motion are made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 20, 2021. Counsel for Plaintiff-Relator and Defendants agreed the obligation to confer was met.

Dated:  March 8, 2022                    Respectfully submitted,

                                         MAYER BROWN LLP

                                         */s/ Matthew H. Marmolejo*
                                         Kelly B. Kramer
                                         Matthew H. Marmolejo
                                         C. Mitchell Hendy
                                         Attorneys for Relator
                                         ISLAND INDUSTRIES INC.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

DISCUSSION .................................................................................................. 3

I.    Island Reasonably Incurred $2,709,827.52 in Attorneys' Fees Attributable to Sigma ............................................................................ 3

    A.    Mayer Brown's Hours Are Reasonable ..................................... 4

    B.    Mayer Brown's Rates Are Reasonable ..................................... 8

    C.    Island Is Entitled to No Less Than The Lodestar Amount ...... 10

        1.    Island Obtained the Best Result Possible ..................... 11

        2.    Island's Request Is Far Less Than the Attorneys' Fees Sigma Actually Incurred ........................................ 11

        3.    This Case—Like Many False Claims Act Cases—Presented Many Challenges that Made the Engagement Less "Desirable." ...................................... 12

II.    Island Reasonably Spent $234,944.14 on Non-Fee Expenses Attributable to Sigma ............................................................................ 14

    A.    Reasonable Expert Witness Fees Are Recoverable Under the FCA .................................................................................... 15

    B.    Island's Other Costs and Expenses Were Reasonable ........... 15

        1.    E-Discovery ................................................................. 16

        2.    Travel ........................................................................... 17

        3.    Photocopying ............................................................... 17

        4.    Mediation ..................................................................... 17

        5.    Research (Westlaw/PACER/ImportGenius) ................. 17

        6.    Other Costs and Expenses ........................................... 18

III.    Island Is Entitled to Recover Fees Incurred in Connection with CIT and Commerce Proceedings ....................................................... 18

CONCLUSION ............................................................................................... 19

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*,

5

548 U.S. 291 (2006) ........................................................................ 14

6

*United States ex rel. Begole v. Trenkle*,

7

2012 WL 13071028 (C.D. Cal. Jan. 26, 2012)...................................... 3

8

*Blackwell v. Foley*,

9

724 F. Supp. 2d 1068 (N.D. Cal. 2010) ............................................ 10

10

*Blixseth v. Yellowstone Mountain Club, LLC*,

11

854 F.3d 626 (9th Cir. 2017) .............................................................. 4

12

*Blum v. Stenson*,

13

465 U.S. 886 (1984) ....................................................................... 2, 9

14

*Cabrales v. Cnty. of Los Angeles*,

935 F.2d 1050 (1991) ....................................................................... 19

15

*Camacho v. Bridgeport Financial, Inc.*,

16

523 F.3d 973 (9th Cir. 2008)........................................................... 3, 8

17

*Davis v. City & Cnty. of San Francisco*,

18

976 F.2d 1536 (9th Cir. 1992)........................................................... 15

19

*Democratic Party of Wash. v. Reed*,

20

388 F.3d 1281 (9th Cir. 2004)........................................................... 11

21

*Farrar v. Hobby*,

22

506 U.S. 103 (1992) .................................................................... 10, 11

23

*Grove v. Wells Fargo Fin. Cal. Inc.*,

24

606 F.3d 577 (9th Cir. 2010)............................................................ 17

25

*Hensley v. Eckerhart*,

461 U.S. 424 (1983) ............................................................... 7, 10, 19

26

27

*United States ex rel. Hunt v. Cochise Consultancy, Inc.*,

887 F.3d 1081 (11th Cir. 2018)..................................................... 12, 13

28

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ........................................................................ 10, 11

*Kittok v. Leslie's Poolmart, Inc.*,
    687 F. Supp. 2d 9534 (C.D. Cal. 2009) .................................................... 8

*KKE Architects, Inc. v. Diamond Ridge Dev., LLC*,
    2008 WL 11422047 (C.D. Cal. Apr. 21, 2008) ...................................... 17, 18

*Kulkarni v. Alexander*,
    662 F.2d 758 (D.C. Cir. 1978) ................................................................. 19

*United States ex rel. Lindenthal v. Gen. Dynamics Corp.*,
    61 F.3d 1402 (9th Cir. 1995) .................................................................. 14

*Love v. Mail on Sunday*,
    2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) .......................................... 9

*United States ex rel. Luke v. HealthSouth Corp.*,
    2020 WL 1169393 (D. Nev. March 11, 2020) ........................................ 15

*Masalosalo v. Stonewall Ins. Co.*,
    718 F.2d 955 (9th Cir. 1983) .................................................................. 2

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*,
    793 F. Supp. 2d 1260 (D. Colo. 2011) .................................................... 15

*McCrary v. Elations Co.*,
    2016 WL 769703 (C.D. Cal. Feb. 25, 2016) .......................................... 18

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ................................................................................ 10

*Modar v. Mar. Servs. Corp.*,
    632 F. App'x 909 (9th Cir. 2015) ........................................................... 10

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ............................................................. 4, 7

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*,
    675 F.2d 1319 (D.C. Cir. 1982) .............................................................. 19

*Pearson v. Green Tree Servicing, LLC*,
    2015 WL 632457 (N.D. Cal. Feb. 13, 2015) ........................................... 5

iii

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ............................................................................ 3

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. March 24, 2015) ...................................... 9, 11, 17

*Pierce v. Cnty. of Orange*,
   905 F. Supp. 2d 1017 (C.D. Cal. 2012) ............................................... 8

*Rutti v. Lojack Corp., Inc.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012) ..................................... 17

*In re S. Cal. Sunbelt Devs., Inc.*,
   608 F.3d 456 (9th Cir. 2010) ............................................................ 8

*Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v.*
   *Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) .......................................................... 17

*United States v. Cooper Health Sys.*,
   940 F. Supp. 2d 208 (D.N.J. 2013) ................................................... 3

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ............................................................ 9, 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................ 10

*Williams v. L.A. Sheriff's Dep't*,
   2020 WL 8461695 (C.D. Cal. Dec. 16, 2020) ................................... 8

*Wyatt Tech. Corp. v. Malvern Inst. Inc.*,
   2010 WL 11404472 (C.D. Cal. June 17, 2010) ............................... 15, 17

**Statutes**

31 U.S.C. § 3730(d)(2) .......................................................................... 3, 14

42 U.S.C. § 1983 .................................................................................... 19

**Other Authorities**

Fed. R. Civ. P. 20(a) ............................................................................. 5

Pamela Bucy Pierson, "Trade Fraud: The Wild, New Frontier of
White Collar Crime," 19 Or. Rev. Int'l L. 1, Appendix A (2018) ..................... 14

Press Release, Justice Department's False Claims Act Settlements and
Judgments Exceed $5.6 Billion in Fiscal Year 2021 (Feb. 1, 2022)
(https://www.justice.gov/opa/pr/justice-department-s-false-claims-
act-settlements-and-judgments-exceed-56-billion-fiscal-year) ......................... 13

**Exhibits to the Declaration of Kelly B. Kramer**

Exhibit A:  September 29, 2021 Letter from Albie Lau

Exhibit B:  Profiles of Mayer Brown Attorneys

Exhibit C:  Spreadsheet of C.D. Cal. Time Entries

Exhibit D:  Spreadsheet of Scope Ruling Matter Time Entries

Exhibit E:  Mayer Brown's Historical Rate Chart

Exhibit F:  Expert Kelli Thompson's Invoices


**Exhibits to the Declaration of Robert K. Sall**

Exhibit A:  Resume of Robert K. Sall

Exhibit B:  List of Reviewed Documents

Exhibit C:  Summary Chart of Services in C.D. Cal. Action

Exhibit D:  Summary Chart of Services in Scope Matter

Exhibit E:  White & Case Fee Application in *In re Boy Scouts of Am.*

Exhibit F:  2021 Real Rate Report

Exhibit G:  2020 Real Rate Report

Exhibit H:  *Legal Billing Report*:  By Region (May 2018)

Exhibit I:  *Legal Billing Report*:  By Rate (May 2018)

Exhibit J: *Legal Billing Report:*  By Region (December 2018)

Exhibit K:  *Legal Billing Report:*  By Rate (December 2018)

# INTRODUCTION

Following five years of hard-fought litigation and a three-day jury trial, Island fully prevailed in its False Claims Act case against Sigma Corporation. The journey to judgment was not straightforward. Island first beat back Sigma's motion to dismiss, then its motions to stay proceedings, and its multiple motions for summary judgment. But the jury saw the case for Sigma's liability as clear cut, and, after about an hour of deliberations, returned a unanimous verdict that Sigma knowingly made hundreds of material false statements to the U.S. Government when importing its Chinese Welded Outlets. This Court has now denied Sigma's post-trial motions and entered judgment against Sigma in the amount of $24,256,638.09 in trebeled damages and an additional $1,824,145.00 in civil monetary penalties. *See* December 10, 2021 Order, ECF #441; Final Judgment, ECF #454. There can be no question that Island—acting in the stead of the United States after the Department of Justice chose not to intervene—obtained the very best trial recovery possible: Recovery of every penny requested. Now, as authorized by statute and the judgment, Island seeks reimbursement of the costs of bringing this successful suit, including its reasonable attorneys' fees and expenses. *Id*. (citing 31 U.S.C. § 3730(d)(2)).

Island asks the Court to award $2,944,771.66 in attorneys' fees, costs, and expenses. This request of roughly 11.3% of the total judgment is eminently reasonable and justified, particularly because this was no garden variety dispute. Sigma—represented by skilled and experienced counsel at one of the country's top law firms, White & Case LLP—raised complex legal arguments at every stage of the litigation (often repeatedly) and in multiple venues. As the Court is aware, Sigma spawned (and still maintains) a second front in this FCA skirmish by raising numerous but meritless challenges to the Commerce Department's scope rulings—not only in this Court but also before the Court of International Trade and the agency itself. Island's success in those proceedings was integral to prevailing in this litigation.

Sigma's multi-pronged defense in these venues is also reflective of its distinct manpower advantage that, for most of the dispute, was multiplied several times over, as Sigma's efforts were buttressed by co-defendants who also were represented by some of the country's preeminent law firms.  Even at trial, Sigma was represented by no fewer than four attorneys with active roles, compared to Island's two.

Not only outmanned, Island was also outspent.  One week before trial, Sigma's counsel disclosed to Island in writing that Sigma had "incurred $5.4 million in fees and costs to defend itself, a figure that may approach $6 million should this matter actually be tried."  Declaration of Kelly Kramer ("Kramer Decl."), Ex. A, at 3 (Letter from Albie Lau).  In contrast, Island obtained a complete trial victory (including post-trial motion practice), while incurring total fees and expenses attributable to Sigma of $2,944,771.66—less than half of the amount Sigma apparently spent through trial.  As attested to in the accompanying declaration of Robert Sall, a noted California-based attorney-fee expert, the hours spent on this litigation were reasonable and the rates were well within the range "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Island is not aware of any comparable FCA case in which the relator proceeded to trial on similar theories of liability and prevailed.  Indeed, the judgment against Sigma represents one of the largest FCA recoveries ever secured for duty evasion.  Thus for the reasons below, Island respectfully requests that the Court award reasonable attorneys' fees in the amount of $2,709,827.52 and reasonable costs/expenses in the amount of $234,944.14, yielding a total requested award of **$2,944,771.66**.[1]

---

[1] The Court retains jurisdiction over this motion notwithstanding Sigma's filing of a notice of appeal.  *See Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956–57 (9th Cir. 1983).

## DISCUSSION[2]

### I.   <u>Island Reasonably Incurred $2,709,827.52 in Attorneys' Fees.</u>

As a prevailing plaintiff in a False Claims Act case, Island "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(2); *see also* Judgment, ECF #454. Those attorneys' fees "are calculated using the usual lodestar method." *United States ex rel. Begole v. Trenkle*, 2012 WL 13071028, at \*5 (C.D. Cal. Jan. 26, 2012) (citing *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011)).

The lodestar method—using "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 982 (9th Cir. 2008) (internal quotation marks omitted)—is used to "produce[ ] an award that approximates the fee the prevailing attorney would have received for representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542 (2010). Thus, the fees are to be awarded in addition to the relator's share and irrespective of any contingency agreement. *See* 31 U.S.C. § 3730(d)(2); *United States v. Cooper Health Sys.*, 940 F. Supp. 2d 208, 215–16 (D.N.J. 2013) (collecting cases acknowledging "fee arrangements in *qui tam* litigation which allow lawyers to receive both a statutory fee and a contingency fee without offset").

Applying the traditional model to this case yields a lodestar amount of attorneys' fees of $2,709,827.52. Island is submitting with this motion two detailed sworn declarations, including from its lead trial counsel who saw this litigation through from inception to judgment. These submissions include detailed records

---

[2] Island provides a more comprehensive chronology of the litigation in the declarations filed in support of this application. *See* Kramer Decl., ¶¶ 7–26; Declaration of Robert K. Sall ("Sall Decl."), ¶ 10.

showing the amount of compensable time spent by each timekeeper along with the
dates and descriptions of services performed.

### A.   Mayer Brown's Hours Are Reasonable.

Obtaining a complete victory against Sigma took considerable amounts of
effort and time, but Mayer Brown worked efficiently.  The voluminous records
submitted with this application contain day-by-day and timekeeper-by-timekeeper
entries, presented chronologically since the beginning of this case.  These records
sufficiently justify the fees Island incurred from the inception of this lawsuit in
October 2016 through February 2022.  Kramer Decl., Exs. C & D.  Island is entitled
to recover all of those fees, as the Ninth Circuit advises that a "fee award should
encompass *all aspects* of the civil action."  *Blixseth v. Yellowstone Mountain Club,
LLC*, 854 F.3d 626, 629 (9th Cir. 2017) (emphasis added).

These records document how Island's attorneys spent nearly **6,800 hours**
prosecuting this case against all defendants, of which **2,936.46 of those hours** are
attributable to Sigma (roughly **43%** of all time billed).[3]  Those hours were
reasonable and well spent, as confirmed both by the exceptional outcome at trial and
by the opinion of Robert Sall, an expert on attorneys' fees.  Sall Decl., ¶ 11(A).  Mr.
Sall carefully analyzed the billing records and history of the case and has opined that
"the hours claimed in th[is] motion for the nearly six (6) years of Mayer Brown's
time and effort were reasonable and necessary."  *Id*.  As the Ninth Circuit has
recognized, "[b]y and large, the court should defer to the winning lawyer's
professional judgment as to how much time he was required to spend on the case;
after all, he won, and might not have, had he been more of a slacker." *Moreno v.
City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Notwithstanding the

---

[3] Exhibit C does not include entries that solely concerned the other defendants or
entries that were not included in light of the other adjustments described below.
Thus Exhibits C and D only reflect approximately 5,383 hours of the 6,793 hours
expended on this case to date and, as discussed herein, many of these hours were
devoted to tasks commonly allocable among more than one defendant.

necessity of those hours, Island has voluntarily trimmed this request in at least three significant ways described below.

First, this request does not include work that was unrelated to establishing Sigma's liability.  Kramer Decl., ¶¶ 53, 57.  For example, Island is not seeking reimbursement for time spent on activities solely related to the other defendants (*e.g.*, depositions of SCI and Vandewater witnesses; discovery directed to those parties).  That said, there was obvious and substantial overlap among the defendants both in terms of Island's theories of liability and the Defendants' motion practice.  For instance, the defendants engaged the same expert witness who produced a single expert report.  Island is entitled to recover *all* of its attorneys' fees related to those common activities.  *See Pearson v. Green Tree Servicing, LLC*, 2015 WL 632457, at *10 (N.D. Cal. Feb. 13, 2015) ("A prevailing party may be awarded attorneys' fees for work done on claims against co-defendants—even unsuccessful, dismissed claims—so long as the claims are 'related' to a claim on which the party actually prevails.").[4]  And full recovery of all "common time" fees would be particularly justified here, as Sigma's litigation choices directly led to expenditure of more resources.  For instance, Island intended to file a single, consolidated opposition to Defendant's motions for summary judgment (as it had done with the Court's permission in connection with the motions to dismiss).  But Sigma needlessly objected to Island's hope to streamline this litigation.  *See* Kramer Decl., ¶ 15.[5]

Nevertheless, Island is requesting only a fraction of its attorneys' fees related to work performed that was applicable to its claims against multiple defendants (and

---

[4] Island is cognizant of the Court's ruling on Sigma's severance motion, finding that Rule 20(a)'s joinder requirements were not satisfied.  *See* ECF #359.  But the fees Island allocates to this "common time" remain recoverable because the work done was necessary to advance Island's claims against Sigma.  The allocation reflects that the same work would incidentally benefit the other defendants.

[5] In denying the Defendants' principal motions for summary judgment in a single order, the Court saw the same opportunity to resolve this case efficiently. *See* ECF #270.

has excluded from this request time entries related solely to work with respect to the other defendants).  For the period between the case's inception to the settlement with SCI on October 5, 2020, Island is seeking only 25% of the fees incurred related to the general prosecution of the case (as opposed to Sigma-specific work).  Kramer Decl., ¶ 47.  From October 5, 2020, to April 29, 2021, Island requests 80% of the fees associated with common trial tasks, reflecting the fact that Sigma and Vandewater were the remaining active defendants, the latter of which Island knew to be in financial distress, as confirmed by its subsequent bankruptcy filing.  From April 29, 2021—when Vandewater filed its suggestion of bankruptcy—Sigma was the only active defendant in the case, so no further apportionment is called for.  Kramer Decl., ¶¶ 48–49.[6]  As would be expected in connection with trial preparation, roughly 57% of all of the fees Island attributes to Sigma were incurred since April 2021.

Second, Island is not requesting an award of fees related to work performed by individuals with only a limited connection to this case (*i.e.*, timekeepers who billed fewer than 25 hours attributable to Sigma).  This reduction eliminated the time of 24 different timekeepers who incurred a total of 212.5 hours that would be worth over $131,000 in unallocated fees at the firm's 2022 rates.  This time still contributed to Island's success and would have customarily been billed to the firm's paying clients.  *See* Kramer Decl., ¶ 59.

Third, Mayer Brown has also eliminated all non-legal work, such as time billed by administrative staff (including discovery staff, docket clerks, librarians, etc.) and summer associates—even though the firm customarily bills clients for these services.  Kramer Decl., ¶ 58.  This reduction encompassed 11 additional

---

[6] As the Court is aware, Island's confidential settlement with SCI included an award of attorneys' fees.  The allocations described above ensure that Island is not seeking any recovery of fees, costs, or expenses already allocated and reimbursed as part of that earlier settlement.

timekeepers who incurred a total of about 222 hours of billable time.  Those services are worth over $50,000 at the firm's current rates.  *Id.*

Finally, Mayer Brown used its judgment in proactively eliminating time billed that was arguably excessive or unnecessary.  Kramer Decl., ¶ 41.  All of these adjustments reflect Mayer Brown's "billing judgment" in making a good faith effort to exclude billed time that was excessive, redundant, or unnecessary.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Moreno*, 534 F.3d at 1112 ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.").  All told, Island has not only limited its request to a reasonable proportion of all time spent on this litigation, but Island has also proactively trimmed nearly $200,000 of otherwise compensable services from this request.



The above chart depicts a breakdown of the fees and hours incurred in this litigation (not including the scope ruling matter), as allocated to Sigma.  As the Court can see, the vast majority of fees were predictably incurred in connection with discovery (September 2019 through March 2020), the principal motion for summary

7

judgment (March 2020 through May 2020), and in preparing for and conducting the trial (Summer 2020 and June 2021 through October 2021).   This request also includes time incurred through February 28, 2022, spent preparing this fee application and defending against Sigma's nascent appeal.[7]   *See In re S. Cal. Sunbelt Devs., Inc.*, 608 F.3d 456, 463 (9th Cir. 2010) ("In statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.").   Island intends to make a supplemental fee application at an appropriate time, requesting its fees and expenses after February 28, 2022, including those incurred in the balance of these fee proceedings and the pending appeal.

Island anticipates that Sigma may trot out an argument based on "block billing," contending that the award should be further discounted because of Mayer Brown's practice of recording time on a daily basis, without further breaking down time on individual tasks.   No such reduction is warranted.   Mayer Brown's timekeepers carefully maintained time records that contemporaneously show the discrete tasks performed, often in specific detail.   Island's lead counsel then reviewed those records and exercised professional judgment in adjusting or deleting time entries. Kramer Decl., ¶¶ 38–41.  These records are thus entirely different from the prototypical "block billing" practices in which a reviewer has no ability to determine the specific tasks performed (*e.g.,* entries "for services rendered").   *See, e.g., Williams v. L.A. Sheriff's Dep't*, 2020 WL 8461695, at *7 (C.D. Cal. Dec. 16, 2020) ("The charge of blocked billing does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures.") (internal quotation marks omitted); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp.

---

[7] As required by L.R. 7-3, counsel for the parties met and conferred in an attempt to resolve this fee dispute without motion practice.  The parties were not able to reach agreement, and counsel for Sigma invited Island to prepare and file this motion.

2d 953, 963–64 (C.D. Cal. 2009); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1030–31 (C.D. Cal. 2012); *see also* Sall Decl., ¶ 11(B).

### B.   Mayer Brown's Rates Are Reasonable.

Mayer Brown's rates are "in line with those prevailing" in this district. *Camacho*, 523 F.3d at 980.  The Kramer Declaration describes Mayer Brown's rate determinations and billing practices, which are "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  These rates are the customary rates that Mayer Brown charges other clients for each timekeeper's services.  Kramer Decl., ¶ 43; *see Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *8 n.14 (C.D. Cal. March 24, 2015) ("[E]vidence that an institutional client in a competitive legal market was willing to pay the rates charged without any guarantee of reimbursement is important evidence that the rate was reasonable.").  Island's expert confirms that these rates are commensurate with those of other similarly situated law firms in Los Angeles.[8]  Sall Decl., ¶ 9(J).  These rates are particularly reasonable in light of (1) the size of the damages award; (2) the complex legal and factual issues presented; and (3) the skill, experience, and reputation of the firm (both as a whole and with respect to the specific attorneys involved in the case).  *See Blum*, 465 U.S. at 895 n.11.  On that last point, Mayer Brown's firm size and reputation is significant in assessing the reasonableness of the rates.  This FCA action was complex, and it was entirely reasonable for Island "to hire a nationally renowned law firm—with relatively high hourly rates" in light of that complexity.  *Love v. Mail on Sunday*, 2007 WL 2709975, at *8 (C.D. Cal. Sept. 7, 2007).  Mayer Brown is widely recognized as a preeminent law firm repeatedly named by legal publications "Firm of the Year," and

---

[8]  And to the extent the Court finds it relevant, the rates of Mayer Brown's Washington D.C. lawyers (where much of the work related to the scope ruling proceedings occurred) are also reasonably in line with the rates of comparable lawyers in that geographic area.  *See* Sall Decl., ¶ 9(J).

the firm assigned highly qualified litigators suited to the case's demands. Kramer Decl., ¶¶ 4, 27–35.

This request is based on Mayer Brown's current 2022 rates. The Ninth Circuit has recognized that in years' long litigation it is necessary to compensate the prevailing side for the delay in payment of its fees, and one such method of compensation is to "apply[ ] the attorneys' current rates to all hours billed during the course of the litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994); *Modar v. Mar. Servs. Corp.*, 632 F. App'x 909, 910 (9th Cir. 2015) (quoting *In re Washington Public Power Supply* as establishing that "full compensation *requires charging current rates* for all work done during the litigation" (emphasis added in *Modar*)). Island's work on this litigation dates back to October 2016, and—given Sigma's appeal—the unfortunate reality is that Island and Mayer Brown will not likely receive any payment for many more months. In light of this extended delay (and Island's unqualified success), Island requests that the Court make Island and Mayer Brown closer to whole by using the firm's established current rates. *See Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989) (agreeing that "application of current rather than historic hourly rates" is an "appropriate adjustment for delay in payment"). The use of current rates is particularly justifiable in contingency cases such as this, as fees were not paid "reasonably promptly as the legal services were performed, as would be the case with private billings." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1078 (N.D. Cal. 2010) (discussing *Jenkins*).

## C.     Island Is Entitled to No Less Than The Lodestar Amount.

After calculating the lodestar, the Court considers whether it is appropriate to enhance or reduce the lodestar amount, but there is a "strong presumption" that the lodestar calculation is a reasonable fee and that any adjustment is the exception rather than the rule. *See United Steelworkers*, 896 F.2d at 406. The Ninth Circuit has identified a dozen or more factors relevant to making this inquiry, *see, e.g., Kerr*

*v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975); *see also* Sall Decl., ¶ 8, but the Supreme Court has emphasized that "the most critical factor in determining the reasonableness of a fee award . . . is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992); *Hensley,* 461 U.S. at 436.  Because a party who achieves "excellent results" is entitled to a "fully compensatory fee." *Id.* at 435.  Among the other *Kerr* factors, courts consider the novelty and difficulty of the questions involved, the skill required to perform the services, whether the fee is fixed or contingent, the undesirability of the case, and awards in similar cases.  *Kerr*, 526 F.2d at 69–70.

### 1.  Island Obtained the Best Result Possible.

Island's "degree of success" against Sigma cannot be disputed.  Island received every penny it requested in damages and civil monetary penalties.  This "most critical factor" weighs heavily in favor of maintaining—if not enhancing— the lodestar amount.  *Farrar*, 506 U.S. at 114.

### 2.  Island's Request Is Far Less Than the Attorneys' Fees Sigma Actually Incurred.

The fact that, prior to trial, Sigma already had incurred more attorneys' fees than Island requests here is particularly probative of the reasonableness of the lodestar amount.  To recap, Sigma represented to Island that on the eve of trial it had already incurred $5.4 million in fees and costs and anticipated incurring as much as $6 million after factoring in its trial defense.  Kramer Decl., ¶ 26 & Ex. A.  Island's request (which includes trial and post-trial work) is a veritable bargain in comparison.[9]  The Ninth Circuit recognizes that looking to the losing party's attorneys' fees as "a comparison is a useful guide in evaluating the appropriateness

---

[9]  Island's expert further opines that Mayer Brown's rates were reasonably comparable to (and often considerably less than) those that Sigma's firm, White & Case, has sought in other attorneys' fees requests.  *See* Sall Decl. ¶ 9(F) (noting that White & Case lawyers billed up to $1,725/hour for partners and $1,065/hour for associates).

of the time claimed." *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).  Where a party achieved its success with fewer hours, that "only suggests that [the prevailing party's] billed hours are reasonable." *Perfect 10, Inc.*, 2015 WL 1746484, at *24 (citing *Reed*).

### 3. This Case—Like Many False Claims Act Cases—Presented Many Challenges that Made the Engagement Less "Desirable."

Bringing a False Claims Act case on behalf of a relator entails significant risks and complexities that make such cases less desirable.  First, the contingent nature of this engagement was particularly risky.  In most contingency fee cases, the fee is calculated as a percentage of the *total recovery*.  Not so in FCA cases.  In FCA litigation, plaintiffs' counsel typically receives a percentage of a percentage, because the Government receives at least 70% of the total recovery.  Thus, in an FCA case, any contingency fee would be based on *less than one third of the total recovery* (by statute, the relator's share can never exceed 30%).  To illustrate, if plaintiff's counsel secures a $20 million award in a non-FCA case, counsel stands to earn a $6 million fee (assuming a 30% contingency).  By contrast, if relator's counsel secures a $20 million award, counsel stands to earn, at best, a $1.8 million contingency fee (assuming a 30% contingency fee and the statutory maximum 30% relator share).

Second, because of the structure of the FCA, many relators' counsel decline to pursue cases when, as here, the DOJ does not intervene.  *See, e.g., United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1088 (11th Cir. 2018) ("[W]hen the government declines to intervene, more than 50 percent of the time the relator decides not to proceed.").  Because the costs of litigating FCA cases are substantial and because the attorney's share is based on a percentage of a percentage, many law firms file FCA lawsuits, but they seek to minimize their financial risks by representing the Relator only through the DOJ's intervention decision.  Moreover, many such firms seek to minimize their work during the DOJ investigation phase

while hoping that a DOJ intervention will ensure the case's profitability.  Mayer Brown is not such a firm.

Third, unlike most high-stakes litigations, FCA cases must be filed under seal and remain so for months or even years while the DOJ makes an intervention decision.  *See* January 30, 2019 Order (ECF #34) (unsealing case after 19 month delay).  An aggressive, experienced counsel for relators will spend considerable time and money trying to develop the evidence to encourage the DOJ to intervene.  But the DOJ's investigation period means that a Relator's counsel cannot pursue the action immediately but rather must wait for a considerable period of time all while incurring costs and fees.

Fourth, in cases where the government does not intervene, Relators' counsel must commit substantial resources to pursue the Relator's claims, with no assurance of success.  Indeed, the statistics reflect that continuing to litigate after the DOJ declines to intervene presents real risks, where the odds of prevailing are low. *Cochise*, 887 F.3d at 1087 ("[O]nly about 10 percent of non-intervened cases result in recovery.").  Moreover, even when a non-intervened case is ultimately successful and the costs are reimbursed, Relators' counsel will have in essence provided a substantial, speculative, multi-year, interest-free loan to further the case.

Fifth, in FCA cases based on the Customs law, Relators' counsel must often participate in potentially dispositive collateral litigation before the Court of International Trade ("CIT") or the Department of Commerce ("DOC").   For example, here, Sigma, Vandewater, and SCI are all aggressively litigating the scope of the anti-dumping duty order against certain butt-weld pipe fittings from the People's Republic of China ("China Order"), while variously arguing in this Court that the collateral litigation divested this Court of jurisdiction, precluded any finding of liability, or justified a stay of all proceedings.  The potential for such collateral litigation increases the costs and risks of pursuing an FCA action in the Customs arena.

ISLAND'S MOTION FOR ATTORNEYS' FEES AND COSTS; CASE NO. 2:17-CV-4393-RGK-KS

Sixth, FCA actions premised on Customs fraud historically have not generated settlements or judgments nearly as large as have FCA cases in the health care and defense context.  *See, e.g.,* Press Release, Justice Department's False Claims Act Settlements and Judgments Exceed \$5.6 Billion in Fiscal Year 2021 (Feb. 1, 2022) (https://www.justice.gov/opa/pr/justice-department-s-false-claims-act-settlements-and-judgments-exceed-56-billion-fiscal-year) (announcing total FCA judgments and settlements in the amount of \$5.6 billion, with \$5.0 billion attributable to health care fraud).  Indeed, the combined settlements and judgments achieved in this case make it one of the most successful FCA actions ever filed in the Customs fraud arena.  *See* Pamela Bucy Pierson, "Trade Fraud: The Wild, New Frontier of White Collar Crime," 19 Or. Rev. Int'l L. 1, Appendix A (2018) (reflecting resolution of all trade fraud cases between 2000 and 2016; reporting only one FCA case with larger settlement or judgment than achieved in this action).

\* \* \*

In short, having incurred over \$5.4 million in attorneys' fees even before losing at trial, Sigma is in no position to cast aspersions on Mayer Brown's work.  All of the above confirm that this was a hard-fought and complicated case that Island and Mayer Brown were by no means guaranteed to win.  While the requested fee award of \$2.709 million is considerable, Island—having obtained complete success in a more efficient manner than Sigma—has sought to recover only the fees fairly attributable to Sigma and thus should receive at least the lodestar amount.

## II.     Island Reasonably Spent \$234,944.14 on Non-Fee Expenses Attributable to Sigma.

The FCA provides for broad recovery of all "reasonable expenses which the court finds to have been necessarily incurred."  31 U.S.C. § 3730(d)(2); *see also* Judgment.  Precedent establishes the broad-sweeping nature of the FCA's expense-shifting provision—including all non-fee expenditures beyond those already taxable as costs.  *See Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 297

14

(2006) (noting that statutory term "expenses" "strongly suggests" an "open-ended" meaning, inclusive of "all expenses incurred"); *United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1413 (9th Cir. 1995) (noting FCA expenses are a "category distinct" from costs).

Island requests $234,944.14 in non-fee expenses.  Kramer Decl., ¶¶ 64–69  These expenses were subject to Mayer Brown's ordinary billing practices, negotiated discounts, and invoice scrutiny.  These expenses represent charges that Mayer Brown "typically charge[s] to paying clients," *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), and were entirely reasonable for over five years of investigating and litigating this high-stakes dispute.  Moreover, in light of COVID-19, common expenses such as travel were reduced compared to similar litigation involving multiple parties across the country.

### A.   Reasonable Expert Witness Fees Are Recoverable Under the FCA

In awarding reasonable expenses under the FCA, district courts routinely include expert witness-related expenses.  *See United States ex rel. Luke v. HealthSouth Corp.*, 2020 WL 1169393, at *6 (D. Nev. March 11, 2020) (awarding FCA relators their expert fees as reasonable expenses); *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 793 F. Supp. 2d 1260, 1267 (D. Colo. 2011) (collecting cases awarding expert witness fees under the FCA).  Here, the expert testimony of Kelli Thompson—a former import specialist and course instructor at Customs and Border Protection—was instrumental to Island's case.  Her detailed time records and invoices, paid by Island and Mayer Brown, are included with this submission. Kramer Decl., Ex. F. These expenses include expert fees incurred for preparation and review of an expert report, a two-day deposition, trial preparation, and trial testimony.  The hourly rate charged by Ms. Thompson ($375) was comparable to the rate charged by Defendants' expert, Mr. Sperko ($350).  *Id.* ¶ 14.  These expenses were entirely reasonable.  *See, e.g., Wyatt Tech. Corp. v. Malvern*

*Inst. Inc.*, 2010 WL 11404472, at *5 (C.D. Cal. June 17, 2010) (awarding nearly $80,000 in expert fees at $500/hour in or around 2009).

### B.  Island's Other Costs and Expenses Were Reasonable.

Island also seeks an award of its other reasonable (and thus recoverable) expenses—some of which were paid directly by Island and others advanced by Mayer Brown.  All of these expenses were necessary and reasonable for Island to investigate and pursue this litigation.[10]   The following chart summarizes these expenses, followed by brief descriptions below.

| Expense/Cost | Total | Sigma Allocation |
|---|---|---|
| Experts (Kelli Thompson) | $125,430.43 | $91,953.81 |
| Copying (incl. trial binders) | $22,345.80 | $13,760.53 |
| E-Discovery (LLM/Data Hosting) | $57,756.81 | $26,595.13 |
| Research (Westlaw/PACER/ImportGenius) | $122,976.31 | $36,309.01 |
| Island Travel (investigation/pre-trial) | $48,469.81 | $12,117.45 |
| Island Travel (trial) | $10,695.87 | $10,695.87 |
| Court Costs (incl. mediation) | $9,563.00 | $7,148.00 |
| Travel & Business Meals | $12,276.14 | $11,374.68 |
| Mailing/Shipping/Couriers | $8,464.53 | $3,901.67 |
| Filing Fees | $1,294.00 | $323.50 |
| Telephone Charges | $73.86 | $23.98 |
| Transcripts (depositions) | $14,336.90 | $9,769.44 |
| Transcripts (trial) | $10,374.98 | $10,374.98 |
| Scope Ruling Expenses (research/copying) | $1,004.86 | $596.09 |
| **Total** | **$445,063.30** | **$234,944.14** |

[10] Rather than inundate the Court with more paper in connection with this fee motion, Island has summarized these costs in Mr. Kramer's sworn declaration.  To the extent Sigma wishes to contest these amounts, Island is prepared to confer and produce reasonable backup documentation to substantiate these figures.

### 1.    E-Discovery

Island incurred $57,756.81 in charges associated with its e-discovery vendor (Liquid Litigation Management) and for data storage/hosting fees.  *See* Kramer Decl., ¶ 66(c).  The Sigma allocation of those charges is $26,595.13.  These expenses were reasonable in this complex case, as "e-discovery saves costs overall by allowing discovery to be conducted in an efficient and cost-effective manner." *Perfect 10, Inc.*, 2015 WL 1746484, at *28.

### 2.    Travel

Island and Mayer Brown incurred expenses related to travel throughout the case—including during investigating the case, depositions related to Sigma (or common to all defendants), and to attend trial.  *See* Kramer Decl., ¶ 66(e) & (g). These out of pocket expenses are compensable.  *See Grove v. Wells Fargo Fin. Cal. Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).  Travel was purchased in economy class.

### 3.    Photocopying

Island and Mayer Brown incurred a total of $22,345.80 in photocopying expenses, of which $13,760.53 is attributable to Sigma.  This amount includes both copying Mayer Brown performed (which is customarily charged to clients) and outside vendor copying (when more efficient).  "Because photocopying expenses are typically passed on to the client and are incurred on a transactional basis, they are includable in an attorney's fees award." *KKE Architects, Inc. v. Diamond Ridge Dev., LLC*, 2008 WL 11422047, at *15 (C.D. Cal. Apr. 21, 2008); *see, e.g., Wyatt Tech.*, 2010 WL 11404472, at *3 (awarding nearly $25,000 in copying and document processing costs in 27-month case).

### 4.    Mediation

Island incurred mediation-related expenses relating to failed settlement efforts with Sigma.  The first mediation session with Judge Edward A. Infante (ret.) in April 2020 included all defendants, whereas a subsequent session in August 2021 involved only Sigma and Island.  Kramer Decl. ¶ 63(f).  "[M]ediation… [is] typically

17

recoverable." *Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

### 5. Research (Westlaw/PACER/ImportGenius)

"Reasonable charges for computerized research may be recovered 'as attorneys' fees.'" *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006). Here, Mayer Brown incurred charges for standard Westlaw and LexisNexis research in addition to document retrieval charges from PACER. Island also incurred charges from ImportGenius, a well-known database for import/export records, as part of its investigation into the underlying case. This application seeks an allocated share of those ImportGenius expenses through April 2020. Kramer Decl., ¶ 63(d).

### 6. Other Costs and Expenses

The remaining expense items require little explanation. Fees for court reporters and transcripts for depositions and court hearings are unavoidable and recoverable. *See McCrary v. Elations Co.*, 2016 WL 769703, at *11 (C.D. Cal. Feb. 25, 2016). Likewise, expenses for filing fees, telephone services, and shipment/courier services are recoverable. *Id.*; *KKE Architects*, 2008 WL 11422047, at *15. Finally, Island incurred a minimal amount of expenses ($1,004.86) in connection with its work on the scope ruling matter (discussed in the next section). These expenses were primarily related to legal research on Westlaw but also included limited meals, shipping, copying, and transportation charges. Consistent with its methodology related to commonly applicable tasks, Island has allocated only a portion of these minimal expenses to Sigma. *See* Kramer Decl. ¶ 68.

### III. <u>Island Is Entitled to Recover Fees Incurred in Connection with CIT and Commerce Proceedings.</u>

Sigma's efforts to avoid its FCA liability were not limited to litigating in this Court. After catching wind of this lawsuit, Defendants began a campaign in the Department of Commerce and, unsuccessful there, in the Court of International

Trade, seeking a post hoc ruling that their Chinese Welded Outlets were not subject to the China Order.  Island naturally had a substantial interest in opposing Sigma's attempts in those other forums, and thus submitted various briefs, objections, and other materials to both Commerce and the CIT—demonstrating that Commerce had correctly determined that Sigma's products were subject to the ADD (and have been since the China Order's first imposition).

The attorneys' fees and expenses associated with those efforts are recoverable here.  In considering Supreme Court precedent, the Ninth Circuit has recognized "the general rule that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit." *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1052 (1991) (discussing *Hensley*).[11]  The Ninth Circuit's view is consistent with its sister circuits'.  "Compensable time should not be limited to hours expended within the four corners of the litigation." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1335 (D.C. Cir. 1982); *see also Kulkarni v. Alexander*, 662 F.2d 758, 765–66 (D.C. Cir. 1978).  There can be no dispute that the proceedings in the CIT and Commerce bore directly on Island's success in this litigation.  The Defendants moved to stay this litigation three times on those grounds, and the Court's jury instructions with respect to falsity were premised on the outcome of those proceedings.  *See* Sigma's Motion To Stay (ECF #100); SCI and Vandewater's Renewed Motion to Stay (ECF #168); Motion for Reconsideration (ECF #345); Sigma's Joinder (ECF #347).  Island's work in obtaining a favorable outcome in the CIT and Commerce proceedings was integral to prevailing in this litigation.  Accordingly, this request includes an allocated share of the attorneys' fees and costs related to those related proceedings.  Kramer Decl., ¶¶ 50–52.

---

[11] *Cabrales* was brought under 42 U.S.C. § 1983.  Unlike in FCA cases, an award of attorneys' fees in section 1983 litigation is discretionary.  *Cabrales*, 935 F.2d at 1052.

1

**CONCLUSION**

2     For all these reasons, Island requests that the Court award $2,709,827.52 in

3     reasonable attorneys' fees and $234,944.14 in reasonable costs and expenses.

4     Dated:  March 8, 2022                Respectfully submitted,

5

                                           MAYER BROWN LLP

6

7                                          */s/ Matthew H. Marmolejo*
                                           Kelly B. Kramer

8                                          Matthew H. Marmolejo
                                           C. Mitchell Hendy

9                                          Attorneys for Relator

10                                         ISLAND INDUSTRIES INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28